Exhibit A

**PIRO ZINNA CIFELLI PARIS & GENITEMPO, LLC**
360 Passaic Avenue
Nutley, NJ 07110
Phone: (973) 661-0710
Fax: (973) 661-5157
Alan Genitempo, Esq. – (Id. No. 023181987)
Attorneys for Plaintiff, Sambit Pattanayak

| | |
|---|---|
| SAMBIT PATTANAYAK, : | SUPERIOR COURT OF NEW JERSEY |
| : | LAW DIVISION: HUDSON COUNTY |
| : | DOCKET NO.: HUD-L- |
| Plaintiff, : | |
| : | Civil Action |
| v. : | |
| : | **COMPLAINT AND JURY DEMAND** |
| MASTERCARD, INC. : | |
| : | |
| Defendant, : | |
| : | |

Plaintiff, SAMBIT PATTANAYAK ("Plaintiff"), residing at 101

PARK AVENUE, APT 2D, in the city of Hoboken, County of Hudson and

State of New Jersey, by way of Complaint herein says:

## FACTS RELEVANT TO ALL COUNTS

1.  Defendant MASTERCARD ("Defendant"), is headquartered in 2000 Purchase Street, in the Town of Purchase, County of Westchester, State of New York.

2.  Plaintiff, while a resident of New Jersey, was hired in 2012 as Vice President of Product Management in Mastercard's New York offices.

3.  In October 2015, Plaintiff was transferred to Mastercard's Singapore Branch with his wife, who was also a Vice President at Mastercard at the time.

4.  From October 2015 to March 2017 Plaintiff was reporting to Mr. Richard Crum based in New York office while Plaintiff was based in Singapore.

5.  In April 2017, Plaintiff started a new job as Vice President ("VP") of Client Services within MasterCard Singapore to establish and lead the new APT division in Southeast and South Asia (about 7 countries)

6.  As VP, Plaintiff reported to Scott Setrakian in San Francisco.

7.  From 2017 to 2018, Plaintiff, executed his job duties and responsibilities with strong performance reviews and key revenue achievements.

8.    During this time, between 2017 and 2018, Plaintiff annual compensation was USD $378,160.

9.    However, for nearly two and a half years Plaintiff suffered continuous discriminatory conduct from Mastercard.

10.   Plaintiff's wife was terminated in 2016 after having raised concerns of discrimination and retaliation.

11.   At the time of her termination, Plaintiff and his wife worked for the same division with the same senior leadership and Human Resources managers, Mary Sexton and Meena Wadhera.

12.   Plaintiff is of Indian national origin and a US citizen.

13.   In March 2016, at a group meeting in New York, Mr. David Peraino, who was Plaintiff's superior, singled out Plaintiff and cursed at him using extremely abusive foul language, humiliated him and threatened him. This group meeting included Plaintiff's manager Richard Crum and the head of the department Sachin Mehra (Mr. Peraino's and Mr. Crum's manager. Mr. Crum and Mr. Mehra did nothing to stop the behavior and stayed silent. This behavior was a gross violation of the company's own documented Employee Handbook. In the meeting, Plaintiff was the only employee junior to Mr. Peraino, that was of Indian origin.

14.   Subsequently, immediately after this meeting, Mr. Peraino also cursed at Plaintiff and explicitly threatened Plaintiff in a one-on-one meeting saying, "I am going to come after

3

you". The company has strong written policies against this kind of behavior.

15.   Plaintiff complained to Mr. Richard Crum in person about Mr. Peraino's behavior and threats after the New York meeting in March 2016 and expected that Mr. Crum would look into it.

16.   However, at the end of 2016, Mr. Peraino explicitly pushed for and ensured a poor year-end performance review for Plaintiff (just as he had threatened to do in the March 2016 incident), resulting in Plaintiff receiving a much poorer performance review compared to prior years in the same group. While Plaintiff still received "Meets Expectations" as his performance review, a lot of his accomplishments were ignored in the performance review and the review was peppered with negative feedback with no concrete examples and proof. After receiving the performance review in January 2017, when Plaintiff asked Mr. Crum for specific examples of sub-par performance, Mr. Crum was unable to provide any concrete examples. Plaintiff had documented that he was able to accomplish all of his objectives for the year 2016. However, his superiors also severely reduced his annual bonus and did not give him an annual equity grant (which he had been receiving for multiple prior years).

17.   In February of 2017, Plaintiff reported multiple instances of harassment and discrimination to Human Resources and Employee Relations, occurring since early 2016, related to

national origin by his superior, David Peraino, to Mastercard's Human Resources and Employee Relations groups, based in Mastercard's HQ in New York.

18.   No action was taken on his complaint and Plaintiff was asked to "move forward." When Plaintiff asked repeatedly how can Mastercard ensure this harassment behavior does not continue going forward, Mary Sexton of Human Resources and Lisa Rief of Employee Relations repeatedly asked Plaintiff instead about what the Plaintiff will do to not be a target of this behavior.

19.   Subsequently, Plaintiff's manager, Richard Crum, told him that he and Sachin Mehra would like Plaintiff to seek new employment in Singapore and that Plaintiff should make this his highest priority. Plaintiff then found a new role with Mastercard's APT division as mentioned above and started the new role in April 2017.

20.   In approximately July of 2017, Plaintiff informed his Managers at the APT division, Scott Setrakian and Cathy Baker, along with APT Division Human Resources, that he required a medical leave of absence.

21.   As required under Mastercard's company policies, Plaintiff provided a doctor's letter to confirm a diagnosis of dysthymia, a long-term form of chronic depression, and according to doctor recommendations and company policy, took a two-month medical leave from September to the end of October 2017.

22. Upon Plaintiff's return to work, he requested accommodations based on his chronic medical condition and the resources he was told would be hired when he started the new job.

23. Mastercard not only denied Plaintiff's requests, but provided less support than given to peers with similar responsibilities as well as to subordinates two levels below him.

24. Plaintiff's division was grossly understaffed and overworked compared to similarly situated departments, which exacerbated his medical condition. Specifically, Plaintiff was the sole employee in the Singapore division, whereas similar international region leaders with similar mandates typically had about a dozen employees and a higher Senior Vice President ("SVP") title.

25. After Plaintiff's return from medical leave, his manager Scott Setrakian moved away from the promise he made in May 2017 of making Plaintiff an SVP which is on par with his APT peers of similar responsibilities. Furthermore, while APT had numerous employees of Indian origin at junior levels, there was no one at an SVP level.

26. Mr. Eric Schneider, Plaintiff's dotted-line manager based in Singapore on several occasions referred to Plaintiff as being treated by his division's leadership as the "red-headed stepchild" of the division, meaning Plaintiff was not treated on par with others at his level.

6

27.  However, Plaintiff was able to accomplish all his objectives set out for the year 2017 despite the lack of resources (though exacerbating his own medical condition). Plaintiff received a good performance review and his manager said that the Plaintiff's performance review could be characterized as "upbeat".

28.  In March of 2018, Plaintiff raised concerns to his superiors regarding the lack of hiring or moving of support staff and reduced bonus for the year 2017 despite a strong performance.

29.  In response to his complaint, Plaintiff's manager severely limited communications with him, and began making decisions about Plaintiff's work and projects in his scope without consulting him.

30.  Despite these hurdles, Plaintiff was able to exceed 2018's full-year sales targets within just the first six months of 2018. Additionally, Plaintiff received numerous compliments from his senior APT division and Mastercard Asia Pacific colleagues in 2017 and 2018. Several APT junior resources expressed desire to Human Resources and Plaintiff to move to the Singapore office to work for Plaintiff and support the excelling Singapore office. Such mobility is encouraged and normal within the APT division. Again, this performance came at a significant cost to Plaintiff's health given the lack of support and resources.

31.  In July of 2018, Plaintiff spoke with his manager Mr. Setrakian about a role change and transfer to another division. He

also discussed a transfer to another division with his dotted-line manager Eric Schneider and senior Mastercard executives including Asia-Pacific Head Ari Sarker who were happy with his work in Singapore. This was well received by Mr. Schneider and Mr. Sarker and meetings with potential hiring executives were set up. Suddenly, some of these meetings were then postponed with no explanation.

32. On August 16, 2018, Plaintiff's manager, Mr. Setrakian, and Meena Wadhera, Human Resources, told him that the company was terminating him without any cause and presented for review a grossly inadequate separation agreement which included releasing Mastercard of any liability. Ms. Wadhera was not the Human Resources person in charge of Plaintiff's APT division but was the HR person for Plaintiff's previous division from where he transferred due to harassment and retaliation. Ms. Wadhera was also Plaintiff's wife's Human Resources manager when Plaintiff's wife was working in Singapore.

33. On August 24, 2018, Plaintiff informed Human Resources that he had retained legal counsel and that he had claims against Mastercard under U.S. Equal Employment Opportunity laws.

34. Two days later, on or about August 26, 2018, Plaintiff was terminated without cause. The company retaliated against his action of hiring legal counsel and mentioning claims by even rescinding the initial separation package (which was grossly

inadequate to begin with). Plaintiff suffered great financial cost to himself and his family.

35.   Before his termination, Plaintiff attempted to resolve his grievances with Human Resources directly. When he made a proposal to resolve the above issues, Human Resources told Plaintiff that all proposals would be rejected and that he was to be given only partial and insufficient relocation assistance within tight timeframes to repatriate back to the United States despite the company being aware that Plaintiff had a 4-month old child in August 2017 and that moving a family with two young children with a tight time-frame would be very difficult.

36.   The relocation assistance offered to Plaintiff to move back to the U.S. was a small fraction of the relocation assistance Mastercard provided to him when he was initially transferred from New York to Singapore, and significantly less than what other employees gained when repatriating back to their originating countries.

37.   Mastercard did not provide Plaintiff with any severance package, unemployment compensation, out-placement services, medical insurance and his annual bonus. The company moved him to Singapore with his family where he did not have a strong professional or personal network as he did in his home country (United States) and then left him there without adequate resources to fend for himself, while he was taking care of his family with

young children and battling his chronic health condition of depression. Plaintiff could not even get unemployment benefits provided by his home country (the United States) as he was terminated in Singapore.

**COUNT ONE**

**DISCRIMINATION BASED ON RACE AND NATIONAL ORIGIN IN VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION, N.J.S.A. § 10:5-1 *et seq.***

38.   Plaintiff repeats and reasserts each of the allegations in the preceding paragraphs as if same were set forth at length herein.

39.   Plaintiff was subject to unlawful discrimination based on his race and national origin.

40.   Plaintiff was repeatedly harassed and some of the harassment toward Plaintiff occurred in front of other people including his manager Richard Crum and department head Sachin Mehra.  Plaintiff was the only person junior to the harasser that was of Indian national origin.

41.   Plaintiff complained to his manager Richard Crum about David Peraino's behavior after a meeting where he threatened and humiliated Plaintiff.

42.   Richard Crum did not acknowledge Plaintiffs concerns.

43.   Mr. Peraino explicitly pushed for and ensured a poor year-end performance review for Plaintiff (just as he had threatened to do in the March 2016 incident).

44.   In February 2017, Plaintiff reported multiple instances of harassment and discrimination, occurring since early 2016, related to race and national origin by his superior, David Peraino, to Defendant Mastercard's Human Resources and Employee Relations groups, based in Mastercard's HQ in New York.

45.   In response to Plaintiffs harassment complaint, Mastercard's Human Resources and Employee Relations told Plaintiff to "move forward" and asked to what Plaintiff can do himself to not be a target of such behavior by his superiors. No legitimate investigation was ever conducted.

46.   Subsequently, Defendant blocked Plaintiff from projects and work which pertained to his role and reduced Plaintiffs annual bonus.

47.   APT division's management moved away from the promise made in May 2017 of making Plaintiff an SVP which is on par with his APT peers of similar responsibilities. Furthermore, while APT had numerous employees of Indian origin at junior levels, there was no one at an SVP level.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, jointly and severally, for the following:

1)   compensatory damages;

2)   pre-judgment interest;

3)   punitive damages;

4)     counsel fees;

5)     cost of suit; and

6)     any other relief that the court deems to be just
and equitable.

## COUNT TWO

### CREATION OF A HOSTILE WORK ENVIORNMENT AND DISPARATE TREATMENT DUE TO RACE IN VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION, N.J.S.A. § 10:5-1 *et seq.*

48.  Plaintiff repeats and reasserts each of the allegations in the preceding paragraphs as if same were set forth at length herein.

49.  The Defendants conduct as alleged above constitutes disparate treatment based on the plaintiff's race where the Defendants subjected the Plaintiff, based on his race, to more strenuous workloads, as well as work outside his job description while workers of other race did less strenuous work within their job description.

50.  Upon Plaintiff's complaints to superiors regarding instances of workplace harassment on the basis of his national origin and race, Plaintiff was told to "move forward" and told to reflect upon what Plaintiff can do himself to not be a target of such behavior by his superiors.

51.  After his transfer, Plaintiff's division was grossly understaffed and overworked compared to similarly situated departments and Plaintiff was the sole employee in the Singapore

division, while similar international regions with similar mandates typically had about a dozen employees. Plaintiff was the only person of Indian origin with this type of role.

52. Plaintiff's manager severely limited communications with him and began making decisions about Plaintiffs work and projects in his scope without consulting him. Plaintiff was also locked out of some of his responsibilities.

**WHEREFORE,** the Plaintiff demands judgment against the Defendants, jointly and severally, for the following:

      1) compensatory damages;

      2) pre-judgment interest;

      3) punitive damages;

      4) counsel fees;

      5) cost of suit; and

      6) any other relief that the court deems to be just and equitable.

**COUNT THREE**

**DISABILITY DISCRIMINATION AND HOSTILE WORK ENVIORNMENT IN VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION, N.J.S.A. § 10:5-1 *et seq***

53. Plaintiff repeats and reasserts each of the allegations in the preceding paragraphs as if same were set forth at length herein.

54. The Defendant's conduct as alleged above and at length herein constitutes that it knowingly created a hostile atmosphere

in that it failed to provide Plaintiff the same support systems and employees as similarly situated divisions at Defendant company, forcing Plaintiff to overwork to compensate for the lack of support, and having full knowledge of Plaintiff's disability.

55.   When Plaintiff returned from his medical leave in October 2017, he requested accommodations based on his chronic medical condition and the resources he was told would be hired when he started the new job at Defendant. Defendant Mastercard not only denied Plaintiff's requests but provided less support than provided to peers with similar responsibilities as well as to subordinates two levels below him.   Plaintiff was the sole employee in his division while similarly situated departments employed approximately twelve (12) employees.

56.   After Plaintiff's return from medical leave, his manager Scott Setrakian and APT management moved away from the promise made in May 2017 of making Plaintiff an SVP which is on par with his APT peers of similar responsibilities.

57.   The hostile environment at Defendant company exacerbated Plaintiff's medical condition and culminated in his termination less than one month after Plaintiff finally requested a transfer and role change to mitigate the toll the hostile environment took on his health.

58.   Defendant Mastercard discriminated against the Plaintiff by subjecting Plaintiff to a hostile work environment in the form

of discrimination based on Plaintiff's disability which was severe and pervasive.

59.  As a direct and proximate result of this unlawful discriminatory conduct Plaintiff has suffered and continues to suffer economic and noneconomic damages, including, but not limited to, lost wages, severe mental anguish and emotional distress, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

**WHEREFORE,** the Plaintiff demands judgment against the Defendants, jointly and severally, for the following:

1)  compensatory damages;

2)  pre-judgment interest;

3)  punitive damages;

4)  counsel fees;

5)  cost of suit; and

6)  any other relief that the court deems to be just and equitable.

<u>**COUNT FOUR**</u>

<u>**RETALIATION AND WRONGFUL TERMINATION IN VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION, N.J.S.A. § 10:5-1 *et seq***</u>

60.  Plaintiff repeats, reiterates, and realleges each and every allegation set forth above in paragraphs "1" through "59" with the same force and effect as if more fully set forth herein.

61.  The Defendant's conduct as alleged above constitutes retaliation.

62.  Approximately one month after Plaintiff reported multiple instances of harassment and discrimination to Human Resources and Employee Relations group in February 2017, Plaintiff was told to "move forward" and subsequently expressed that Plaintiff should make it his highest priority to seek other employment.

63.  Plaintiff's wife was terminated with settlement agreement in 2016 following her own allegations. Plaintiff may have been retaliated against as a result of her grievances against the very same division and human resources personnel, Mary Sexton and Meena Wadhera.

64.  Defendant retaliated against Plaintiff by lowering Plaintiff's bonus, and removing some of his benefits.

65.  Defendant significantly docked Plaintiff's pay reducing his annual bonus and totally eliminating his annual equity grant, which Plaintiff has received in each of his prior years.

66.  While in the APT division in Singapore, Defendant took retaliatory action against Plaintiff upon Plaintiffs request for a role change and potential relocation after experiencing workplace harassment on the basis of his race and national origin, and later his attempt to resolve issues with his division being understaffed and being locked out of his responsibilities.

67. Defendant ensured that Plaintiff's division was understaffed, with Plaintiff being the sole employee and other similarly situated divisions having approximately twelve employees.

68. Mr. Eric Schneider, Plaintiff's dotted-line manager based in Singapore on several occasions referred to Plaintiff as being treated by APT as the "red-headed stepchild" of the APT organization, meaning Plaintiff was not treated on par with others at his level.

69. A month after Plaintiff requested a role change due to the repeated harassment in Singapore, Plaintiff was terminated without cause.

70. Before his termination, Plaintiff attempted to resolve his grievances and claims with Human Resources directly with the help of his U.S. counsel. When he made a proposal to resolve the above issues, Human Resources told him that all proposals will be rejected and that he was to be given only partial and insufficient relocation assistance within tight timeframes to repatriate back to the United States. This relocation assistance represented a small fraction of the relocation provided to Plaintiff when he was initially transferred from New York to Singapore, and significantly less than other employees repatriated back to their originating countries.

71.  As a direct and proximate result of Defendant's unlawful and retaliatory conduct Plaintiff has suffered and continues to suffer economic and noneconomic damages, including, but not limited to, lost wages, severe mental anguish and emotional distress, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

72. Defendant's unlawful and retaliatory conduct was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's rights.

**WHEREFORE,** the Plaintiff demands judgment against the Defendants, jointly and severally, for the following:

1)    compensatory damages;

2)    pre-judgment interest;

3)    punitive damages;

4)    counsel fees;

5)    cost of suit; and

6)    any other relief that the court deems to be just and equitable.

### JURY DEMAND

Plaintiff demands trial by jury as to all matters herein.

### DESIGNATION OF TRIAL COUNSEL

Plaintiff hereby designates ALAN GENITEMPO, ESQ. as trial counsel for the within matter.

## DEMAND FOR INSURANCE INFORMATION

Pursuant to R. 4:10(b), demand is hereby made that Defendants disclose to Plaintiff's attorney whether there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy part or all of a judgment and provide Plaintiff's attorney with true copies of such insurance agreements or policies including, but not limited to, any and all declaration sheets.  This demand shall be deemed to include and cover not only primary coverage but also any and all excess, catastrophe and umbrella policies.

## CERTIFICATION

I certify, pursuant to R.4:5-1, that the matter in controversy is not the subject of any other action or arbitration proceeding, now or contemplated, and that no other parties should be joined in this action at this time.

PIRO, ZINNA, CIFELLI,
PARIS & GENITEMPO, LLC
Attorneys for Plaintiff

BY: /s/Alan Genitempo, Esq.
        ALAN GENITEMPO, ESQ.

Dated: August 13, 2020

# Civil Case Information Statement

## Case Details: HUDSON | Civil Part Docket# L-002944-20

**Case Caption:** PATTANAYAK SAMBIT  VS MASTERCARD, INC.

**Case Initiation Date:** 08/13/2020

**Attorney Name:** ALAN JOSEPH GENITEMPO

**Firm Name:** PIRO ZINNA CIFELLI, ET AL

**Address:** 360 PASSAIC AVE

NUTLEY NJ 071102787

**Phone:** 9736610710

**Name of Party:** PLAINTIFF : Pattanayak, Sambit

**Name of Defendant's Primary Insurance Company**
(if known): Unknown

**Case Type:** LAW AGAINST DISCRIMINATION (LAD) CASES

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Are sexual abuse claims alleged by: Sambit Pattanayak?** NO

### THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
#### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Employer/Employee

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**


**Do you or your client need any disability accommodations?** NO
> **If yes, please identify the requested accommodation:**


**Will an interpreter be needed?** NO
> **If yes, for what language:**


**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO


I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

| | |
|---|---|
| 08/13/2020 | /s/ ALAN JOSEPH GENITEMPO |
| Dated | Signed |