**PIRO ZINNA CIFELLI PARIS & GENITEMPO, LLC**
360 Passaic Avenue
Nutley, NJ 07110
Phone: (973) 661-0710
Fax: (973) 661-5157
Alan Genitempo, Esq. – (Id. No. 023181987)
Attorney for Plaintiff, Sambit Pattanayak

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SAMBIT PATTANAYAK, | : | Civil Action |
| | : | |
| | : | DOCKET NO.: 2:29-cv-12540 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MASTERCARD, INC. | : | |
| | : | |
| Defendant, | : | |
| | : | |
| | : | |

---

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR IN THE ALTERNATIVE FOR A LEAVE TO AMEND THE COMPLAINT**

---

### TABLE OF CONTENTS

PRELIMINARY STATEMENT.......................................... 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY...................... 3

LEGAL ARGUMENT................................................. 7

   I.   PERSONAL JURISDICTION IS PROPER BECAUSE DEFENDANT HAS
   SUFFICIENT MINIMUM CONTACTS WITH THE STATE OF NEW JERSEY..... 7

   II. PLAINTIFF'S CHOICE OF FORUM IS APPROPRIATE, AND THE NEW
   JERSEY LAW AGAINST DISCRIMINATION, N.J.S.A. 10:5-1 ET. SEQ.
   APPLIES TO CONDUCT OUTSIDE OF THE STATE OF NEW JERSEY....... 14

CONCLUSION.................................................... 23

**TABLE OF AUTHORITY**

Cases

Acevedo v. Flightsafety Int'l, Inc., 449 N.J. Super. 185, 190 (N.J. App. Div. 2017)................................................. 20

Bane v. Netlink, Inc., 925 F.2d 637, 640 (3d Cir. 1991)................. 11

Bovino v. Brambaugh, 221 N.J. Super. 432, 436 (App. Div. 1987)....7

Buccilli v. Timby, Brown & Timby, 283 N.J. Super. 6 (N.J. App. Div. 1995)................................................. 21

Burger King Corp. V. Rudzweciz, 471 U.S. 462, 472 (1985)................. 8

Calabotta v. Philbro Animal Health Corp., 460 N.J. Super. 38 (App. Div. 2019) ................................................. 2, 16, 17, 21

De James v. Magnificence Carriers, Inc., 654 F.2d 280, 286 (3d Cir.)................................................. 9

Diamler AG v. Bauman, 571 U.S. 117 (2014) ................................................. 9, 10

Dutch Run-Mays Draft, LLC v. Wolf Block, LLP, 450 N.J. Super. 590, 164 A.3d 435 (App. Div. 2017)................................................. 7

Fairfax Fin. Holdings Ltd. v. S.A.C. Capital Mgt., L.L.C., 450 N.J. Super. 1, 48 (N.J. App. Div. 2017)................................................. 20

First Trenton Indem. Co. v. River Imaging, P.A. 2004 WL 3316874 March 2004................................................. 10

Foman v. Davis 371 U.S. 178, 182 (1962) ................................................. 14

Garnes v. Passaic County, 473 N.J. Super. 520, 100 A.3d 557 (App. Div. 2014)................................................. 16

Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984) ................................................. 9

Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)................. 7, 8

Ketcham v. Charles R. Lister Int'l, 167 N.J. Super. 5, 9 (App. Div. 1979)................................................. 11

Ketcham v. Charles R. Lister Int'l, inc., 167 N.J. Super. 5, 7 (App. Div. 1979)................................................. 8

Maniscalco v. Brother Int'l Corp., 709 F.3d 202, 210 (3d Cir. 2013)................................................. 18

Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007)................. 8, 9

McCourt v. A.O. Smith Water Prods. Co., No. 14-221, 2015 WL 4997403 (D.N.J. Aug. 20, 2015)................................................. 12, 13

Otsuka Pharm. Co. v. Mylan Inc., 106 F.3d 456, 469-70 (D.N.J. 2015)................................................. 10, 11

Perry v. Ethan Allen, Inc., 115 F. 3d 143 (2d Cir. 1997)................. 18

Pinker v. Roche Holdings Ltd, 292 F.3d 361, 368 (3d Cir. 2002).. 13

Printing Mart-Morristown v. Sharp Electronics, 116 N.J. 739, 771-2 (1989)................................................. 14, 15

Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987) ................................................. 8

*Telebright Corporation Inc. v. Director, New Jersey Division of Taxation*, 424 N.J. Super. 384 (App. Div. 2012) ................................... 12

*Trevejo v. Legal Cost Control, Inc.*, No. A-1377-16T4, 2018 WL 1569640 (N.J. App. Div. Apr. 2, 2018) .................................... 16, 23

*Valentzas v. Colgate-Palmolive Company*, 109 N.J. 189, 192 (1988) ..................................................................................................... 14, 15

*Van Zant v. KLM Royal Dutch Airlines*, 80 F. 3d 708, 715 (2d Cir. 1996) ......................................................................................... 18

*W. Africa Trading & Shipping Co., et al. v. London Int'l Group, et al.*, 968 F. Supp. 996, 1001 (D.N.J. 1997) ....................................... 13

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98, (1980) ....................................................................................... 9

**Statutes**

N.J.S.A. § 10:5-4 ................................................................................ 16, 17

N.J.S.A. 10:5-1 .............................................................................. 1, 14, 18

**Rules**

Fed. R. Civ. P. 15(a) ............................................................................ 14

R. 4:6-2(e) ............................................................................................ 14

**PRELIMINARY STATEMENT**

Plaintiff, Sambit Pattanayak (hereinafter "Plaintiff") submits this legal brief in support of his opposition to Defendant MasterCard, Inc.'s ("Defendant") Motion to Dismiss Plaintiff's Complaint. This action arises out of the unlawful discrimination and termination faced by Plaintiff as a result of his race, national origin, and disability, in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 et seq.

Plaintiff, a citizen of the State of New Jersey, was hired by Defendant, a business entity incorporated in the state of New York, in 2012 as Vice President of Product Management in Mastercard's New York office. Defendant, a global payment technology solutions company, conducts business and employs persons in countries and cities all across the globe, including within the State of New Jersey. According to Defendant's published Annual Report regarding its business: "We operate a unique and proprietary global payments network, our core network, that links issuers and acquirers around the globe to facilitate the switching of transactions, permitting account holders to use a Mastercard product at millions of acceptance locations worldwide. We enable transactions for our customers through our core network in more than 150 currencies and in more than 210 countries and territories. Our range of payment capabilities extend beyond our core network into real-time account-based payments." It is clear from the Defendant's list of

office locations that it does not have offices in 210 countries and territories or every state of the United States. Rather, Defendant serves customers in these locations through extensive business travel of employees as well as virtually/remotely via phone and internet.

Crucially, Defendant has continuous and systematic contacts with the State of New Jersey, engages in significant business within the State of New Jersey, and derives a significant portion of its revenue from Financial Institution customers, many of which are located within New Jersey. Additionally, New Jersey's long arm statute authorizes the exercise of personal jurisdiction to the fullest limits of due process. Thus, Defendant's continuous and systematic contacts with the State of New Jersey, as well as its "economic entry" into New Jersey, render it foreseeable a Plaintiff bring suit against Defendant within the State of New Jersey.

Defendants motion to dismiss is improperly premised on the notion that the wrongful conduct must have to occur in the State of New Jersey. Pursuant to New Jersey case law, jurisdiction "can extend in appropriate circumstances to plaintiffs who reside or work outside of [New Jersey]." Calabotta v. Philbro Animal Health Corp., 460 N.J. Super. 38 (App. Div. 2019).

Thus, Choice of Law factors weigh heavily in favor of applying the NJLAD to Plaintiff's discrimination claims because, among other reasons, Defendant has significant contacts with the State

2

of New Jersey and employs New Jersey residents who often work from home. Accordingly, Plaintiff respectfully requests Defendant's Motion to Dismiss be denied, as Plaintiff has properly brought suit in the appropriate jurisdiction.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

In 2012, while a resident of New Jersey, Plaintiff was hired as Vice President of Product Management in Mastercard's New York Offices. (Compl. ¶ 2[1]). Approximately three years later, in October of 2015, Plaintiff was transferred to Mastercard's Singapore Branch, but continued reporting to his supervisor. This supervisor was initially based in the New York office until mid-2015 and then relocated himself to Florida. (Compl. ¶ 3-4). In March 2016, at a group meeting with his manager, the Head of Division, and colleagues in New York, Plaintiff's superior cursed at him using extremely abusive foul language, humiliated him and threatened him. (Compl. ¶ 13). Subsequently after this meeting, Plaintiff's superior explicitly threatened him in a one-on-one meeting saying, "I am going to come after you." (Compl. ¶ 14). Plaintiff complained about his superior's behavior and threats to his manager, but nothing was done about it. (Compl. ¶ 15).

At the end of 2016, Plaintiff's superior pushed for, and ensured, a poor year-end performance review for Plaintiff, just as

---

[1] See, Plaintiff's Complaint attached to the Certification of Alan Genitempo ("Genitempo Cert.") at **Exhibit "A"**.

he had threatened to do so in March 2016. (Compl. ¶ 16).
Additionally, Plaintiff's superiors severely reduced his annual
bonus and did not give him an annual equity grant, which he has
been receiving for multiple prior years. Id.

After receiving his 2016 performance review and compensation
details documents in February 2017, Plaintiff reported the
multiple instances of harassment and discrimination to Human
Resources and Employee Relations based in Mastercard's
Headquarters in New York. (Compl. ¶ 17).  No action was taken on
Plaintiff's complaint, and instead Plaintiff was asked to "move
forward." (Compl. ¶ 18). In an effort to ensure he would not have
to face anymore harassment, Plaintiff inquired repeatedly how
Mastercard could ensure this unlawful behavior does not continue
going forward. Id. Human Resources and Employee Relations
responded to Plaintiff's concern by telling Plaintiff what **he** will
do to **not** be a target of this behavior. Id.

 Subsequently Plaintiff's managers told him that they would
like him to seek new employment in Singapore. (Compl. ¶ 19). In
April 2017, Plaintiff began a new position as Vice President in a
new division in Mastercard called Applied Predictive Technologies
division ("APT") and head this division in Southeast Asia region.
(Compl. ¶ 5). During this time Plaintiff reported to his supervisor
who was based in San Francisco. (Compl. ¶ 6).  In September 2017
to the end of October 2017, Plaintiff took a two-month medical

leave in accordance with company policy. (Compl. ¶ 21). Upon Plaintiff's return to work, he requested accommodations based on his chronic medical condition, but was denied. (Compl. ¶ 22).

Plaintiff also inquired about the resources he was told would be hired when he started his new position but was also confronted with non-committal responses. Id. Plaintiff was the sole employee in the Singapore division, while similar international region leaders with similar mandates typically had about a dozen employees and a higher title of Senior Vice President. (Compl. ¶ 24). Due to Plaintiff's division being grossly understaffed and overworked, Plaintiff's medical condition was exacerbated. (Compl. ¶ 22).

On several occasions Plaintiff's dotted line manager referred to Plaintiff as being treated by his division's leadership as the "red-headed stepchild," meaning that he was not treated on par with others at his level. (Compl. ¶ 26). In March of 2018, Plaintiff raised concerns to his superior regarding the lack of hiring or transfer of support personnel previously committed, and Plaintiff's reduced bonus for the year of 2017 despite a strong performance. (Compl. ¶ 28). In response to his concerns, Plaintiff's managers began to severely limit communications with him and began making decisions about Plaintiff's work and projects in his scope without consulting him. (Compl. ¶ 29). Despite these hurdles, Plaintiff was able to exceed 2018's full year sales targets within just the first six months of 2018. (Compl. ¶ 30).

In July of 2018, Plaintiff spoke with his dotted-line manager and other superiors about a role change and transfer to another division. (Compl. ¶ 31).  This conversation was well received by Plaintiff's dotted-line manager and senior Mastercard executives who were happy with his work, and meetings with potential hiring executives were set up. Id. However, the meetings were suddenly postponed without explanation, and on August 16, 2018, Plaintiff's manager and Human Resources representative from his **previous** division, told him that the company was terminating him without cause.  Plaintiff was presented with a grossly inadequate separation agreement releasing Mastercard of any liability. (Compl. ¶ 32). On August 24, 2018 Plaintiff informed Human Resources that he had retained counsel. Two days later, Plaintiff was terminated, and the company rescinded the initial separation agreement. (Compl. ¶ 33).

Plaintiff was subsequently left with insufficient relocation assistance to return back to the United States, a tight timeframe to make the move with two young children, one of which was only 4 months old and advised by his pediatrician to not undertake such a long journey. (Compl. ¶ 35). Additionally, Mastercard did not provide Plaintiff with adequate resources to fend for himself and his family. (Compl. ¶ 36).  Plaintiff did not receive a severance package, unemployment compensation, or out-placement services. (Compl. ¶ 37).

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or around January 29, 2019. The matter went to mediation, and the EEOC's efforts to mediate the claims were unsuccessful. Plaintiff was issued a Notice of Right to Sue on or around August 8, 2020. Plaintiff filed the subject Complaint on August 13, 2020 in the Superior Court of New Jersey, Hudson County. On or around September 14, 2020, Plaintiff received notice that Defendant removed the matter to this Court[2].

**LEGAL ARGUMENT**

## I.  PERSONAL JURISDICTION IS PROPER BECAUSE DEFENDANT HAS SUFFICIENT MINIMUM CONTACTS WITH THE STATE OF NEW JERSEY

Personal Jurisdiction hinges on one basic notion, whether "maintenance of the suit [would] offend traditional notions of fair play and substantial justice" in light of defendant's "minimum contacts" with the forum state. Bovino v. Brambaugh, 221 N.J. Super. 432, 436 (App. Div. 1987), Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). It is well established that New Jersey's long arm statute authorizes the "exercise of personal jurisdiction to the fullest limits of due process." Dutch Run-Mays Draft, LLC v. Wolf Block, LLP, 450 N.J. Super. 590, 164 A.3d 435 (App. Div. 2017).

---

[2] See, Defendant MasterCard's Exhibit B.

Personal jurisdiction may be exercised "wherever possible with a liberal and indulgent view, if the facts reasonably support the presence of the flexible concepts of 'fair play and substantial justice'" Ketcham v. Charles R. Lister Int'l, inc., 167 N.J. Super. 5, 7 (App. Div. 1979). The exercise of personal jurisdiction is entirely appropriate here, as Defendant has sufficient minimum contacts with the forum state, that being New Jersey.

In formulating the minimum contacts analysis, the United States Supreme Court posited that a non-resident Defendant's enjoyment of the privilege and benefit of conducting business in the forum state entails a concomitant obligation to possibly litigate within that forum. International Shoe, 326 U.S. at 317. This requisite of a volitional contact underlies a defendant's reasonable expectation that he or she has a " 'fair warning' " of being subject to a suit in that state. Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007) (citing, Burger King Corp. V. Rudzweciz, 471 U.S. 462, 472 (1985).

As Defendant acknowledges, an important threshold issue in this regard is the distinction between general and specific jurisdiction, and the related level of minimum contacts which each standard invokes. Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987). Specific jurisdiction is a less onerous standard of minimum contact that can be satisfied by sporadic contacts or even isolated activity purposely directed

at the forum state. <u>Helicopteros Nacionales de Columbia, S.A. v. Hall</u>, 466 <u>U.S</u>. 408, 414-15 (1984); <u>De James v. Magnificence Carriers, Inc.</u>, 654 <u>F.2d</u> 280, 286 (3d Cir.). Plaintiff does not suggest that Defendant is subject to specific jurisdiction in New Jersey; however, given Defendants extensive contacts with the forum state, general jurisdiction may be asserted.

General jurisdiction is based on the Defendant's systematic and continuous contacts with the forum. <u>Marten v. Godwin</u>, 499 <u>F.3d</u> 290, 296 (3d Cir. 2007). Unlike specific jurisdiction, general jurisdiction may be exercised even when the Plaintiff's claim does not "arise out of or is unrelated to the defendants contacts with the forum." The minimum contacts requirement is satisfied "so long as the contacts resulted from the defendants purposeful contacts[.]" <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 <u>U.S</u>. 286, 297-98, (1980).

In the instant case, Defendant does have "continuous and systematic contacts," even if, as it contends, that it has no offices in the forum state. While the Supreme Court emphasized in <u>Diamler AG v. Bauman</u> that a Defendant's place of incorporation and principle place of business is standard for finding general jurisdiction, the Court also recognized that a Defendant's "operations in a forum *other* than its formal place of incorporation or principal place of business" may render the corporation at home

in that state. Diamler AG v. Bauman, 571 U.S. 117 (2014) (emphasis added).

Here, Defendant engages in significant business with the State of New Jersey and derives a significant portion of its revenue from Financial Institutions, many of which are in New Jersey. For example, amongst the many Financial Institutions in New Jersey, Defendant has a direct relationship with Credit Union of New Jersey, North Jersey Federal Credit Union and Provident Bank. (See, Genitempo Cert. at **Exhibit "B"**). Mastercard also conducts business in New Jersey with national Financial Institutions (*e.g.* Capital One, Bank of America) operating in New Jersey.

Additionally, Mastercard works with New Jersey operating Financial Institutions to enable thousands of New Jersey businesses to accept payments on Mastercard branded cards. "The substantial quantity of . . . business revenue derived solely from New Jersey . . . warrants a finding of general jurisdiction alone." First Trenton Indem. Co. v. River Imaging, P.A. 2004 WL 3316874 March 2004 at *17[3].

In Otsuka Pharm. Co. v. Mylan Inc. the Court held that general jurisdiction is appropriate where the Defendant has registered to do business in the forum state, by appointing an in-state agent

---

[3]See, Genitempo Cert. at **Exhibit "E"**

for service of process, and most importantly by actually engaging in a *substantial amount of business* in New Jersey. Otsuka Pharm. Co. v. Mylan Inc., 106 F.3d 456, 469-70 (D.N.J. 2015)(emphasis added). The Court also noted that "the majority of federal Courts of Appeals to have considered the question have concluded that compliance with registration statutes may constitute consent to personal jurisdiction. Id. *See also* Bane v. Netlink, Inc., 925 F.2d 637, 640 (3d Cir. 1991)(holding that the defendant corporation's authorization to do business in Pennsylvania amounted to "consent to be sued in Pennsylvania courts").

To conduct business in the forum state, Defendant was subject to registration with the Division of Revenue and Enterprise Services. (See, Genitempo Cert. at **Exhibit "C"**). Additionally, Defendant's extensive business with Financial Institutions is made possible because it often sends personnel based from its New York office to work with customers. Moreover, "some courts have found sufficient contacts for personal jurisdiction 'where virtually any form of economic entry into the state was evident.'" Ketcham v. Charles R. Lister Int'l, *167* N.J. Super. 5, 9 (App. Div. 1979).

New Jersey state has become a customer itself through the creation of the "New Jersey Debit MasterCard," a "prepaid debit card designed specifically" for New Jersey to obtain child support payments. (See, Genitempo Cert. at **Exhibit "D"**). It is clear that Defendant's contacts with New Jersey are the result of its own

efforts to solicit business in this state. As such, Defendant made "economic entry" into New Jersey.

New Jersey Courts' willingness to assert jurisdiction over out of state employers is not new. In 2012, the Appellate Division held that a foreign company, with no official operations in New Jersey, was "doing business in New Jersey" because it employed a single telecommuting employee who worked from home in New Jersey. *See* Telebright Corporation Inc. v. Director, New Jersey Division of Taxation, 424 N.J. Super. 384 (App. Div. 2012). In Telebright the Defendant employer, a corporation incorporated in Delaware with offices in Maryland, allowed the plaintiff-employee to produce work remotely. Id. at 388. The court found that the Defendant was doing business in New Jersey despite having only *one* employee located here. Id. at 390-391 (emphasis added). The Court noted that "[t]he due process clause is concerned with the fairness of exercising a state's authority over a business, that is, whether the business should know, based on its activity within the state, that it can expect to be regulated by that state." Id. at 391.

In the instant case, Defendant cites McCourt v. A.O. Smith Water Prods. Co[4]. to support its proposition that this Court found that even where Defendant had minimal employees working in the forum, general jurisdiction was improper. McCourt v. A.O. Smith

---

[4] *See*, Genitempo Cert. at **Exhibit "F"**

Water Prods. Co., No. 14-221, 2015 WL 4997403 (D.N.J. Aug. 20,
2015).  In McCourt, however, the court noted that Defendant had
not "engaged in substantial amount of business in this State." Id.
Distinguishable from the facts of the present case, Defendant's
connections with the State are not just the *vast* number of
employees who *reside* and routinely work from home. As previously
demonstrated, Defendant's connections to the State also include
its substantial business dealings in New Jersey. Accordingly,
Defendant has consented to general jurisdiction through its
continuous and systematic contacts with New Jersey.

        However, to the extent that this Court is inclined to find
that it does not have personal jurisdiction over Defendant,
Plaintiff respectfully requests the opportunity to conduct
jurisdictional discovery, so as to better evaluate Defendants
potential contacts with New Jersey. Pinker v. Roche Holdings Ltd,
292 F.3d 361, 368 (3d Cir. 2002)(stating that "[a]lthough the
plaintiff bears the burden of demonstrating facts that support
personal jurisdiction, courts are to assist the plaintiff by
allowing jurisdictional discovery unless the plaintiff's claim is
"clearly frivolous." See also, W. Africa Trading & Shipping Co.,
et al. v. London Int'l Group, et al., 968 F. Supp. 996, 1001
(D.N.J. 1997) (denying defendant's motion to dismiss where the
plaintiffs' "request for jurisdictional discovery is critical to

the determination of whether [the court can] exercise personal jurisdiction over the defendant.").

Alternatively, Rule 15(a) provides that "leave to amend shall be freely given when justice so requires'." Fed. R. Civ. P. 15(a), See generally, Foman v. Davis 371 U.S. 178, 182 (1962)(finding that "[i]f the underlying facts or circumstances relied upon by plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.") Thus, upon the Court finding Plaintiff is not subject to general jurisdiction provided by New Jersey's long arm statute, Plaintiff respectfully requests the opportunity to amend its Complaint.

**II. PLAINTIFF'S CHOICE OF FORUM IS APPROPRIATE, AND THE NEW JERSEY LAW AGAINST DISCRIMINATION, N.J.S.A. 10:5-1 ET. SEQ. APPLIES TO CONDUCT OUTSIDE OF THE STATE OF NEW JERSEY**

The universal standard for granting a Motion to Dismiss for failure to state a claim pursuant to R. 4:6-2(e) is a rigorous one. The test for determining whether a Motion to Dismiss should be granted is whether a cause of action is suggested by the facts. Valentzas v. Colgate-Palmolive Company, 109 N.J. 189, 192 (1988). Trial courts are suggested to "approach with great caution applications for dismissal" and that such motions "should be granted only in the rarest of instances." Printing Mart-Morristown v. Sharp Electronics, 116 N.J. 739, 771-2 (1989)(emphasis added). As stated in the seminal case, Printing Mart, a court's inquiry is limited to the legal sufficiency of the facts alleged on the face

of the complaint and is not nor can it be concerned with whether
the allegations will ultimately be proven. Id. at 746.

Every litigant who has a bona fide cause of action should
generally be given the opportunity for full exposure of his case.
Valentzas, 109 N.J. at 192. Furthermore, the court is tasked to
"search the complaint with depth and liberality to ascertain
whether the fundament of a cause of action may be gleaned, even
from an obscure statement of a claim, opportunity being given to
amend, if necessary." Printing Mart, 116 N.J. at 746. In this
regard, "plaintiffs are entitled to every reasonable inference of
fact and "the examination of a complaint's allegations of fact
required by the afore stated principles should be one that is, at
once, painstaking and undertaken with a generous and hospitable
approach." Id.

In light of the standard above, Defendant's motion to dismiss
should be denied. Given the liberal reading a Complaint is to be
given by the Court, the Complaint, on its face, sets forth a cause
of action under NJLAD on the basis that Defendant discriminated
against Plaintiff, despite being an out of state employee. Thus,
Plaintiff respectfully requests Defendant's motion to dismiss be
denied.

The primary objective of NJLAD is to diminish the evils of
discrimination not just in New Jersey, but in all states. See,
Garnes v. Passaic County, 473 N.J. Super. 520, 100 A.3d 557 (App.

Div. 2014). It is well established that "the NJLAD should be liberally construed in order to advance its beneficial purposes." Calabotta v. Philbro Animal Health Corp. 460 N.J. Super. 38, 61 (2019). As the NJLAD is to be liberally construed to effectuate its broad remedial purpose, Plaintiff's NJLAD claims must remain.

Contrary to Defendant's contentions, Courts have noted that the language of NJLAD does not explicitly require that the employment of the individual be in New Jersey. As noted in Trevejo v. Legal Cost Control, Inc.[5], a case concerning the reach of NJLAD to out of state workers, "the NJLAD is a remedial statute that has been broadly construed to protect not only 'aggrieved employees,' but also to protect the publics strong interest in a discrimination-free workplace." Trevejo v. Legal Cost Control, Inc., No. A-1377-16T4, 2018 WL 1569640 (N.J. App. Div. Apr. 2, 2018)(citing Hoag v. Brown, 397 N.J. Super. 34, 47, 935 A.2d 218 (App. Div. 2007)).

Further, as previously mentioned, "the NJLAD's broad and strong language provides ample support for Plaintiff's position that he may bring claims under the statute, despite the fact that he worked for defendants out of state." 460 N.J. Super. at 64. N.J.S.A. § 10:5-4 provides, "[a]ll persons shall have the opportunity to obtain employment . . . without discrimination . .

---

[5] See, Genitempo Cert. at **Exhibit "G"**

. this opportunity is recognized and declared to be a civil right."
See N.J.S.A. § 10:5-4.

Additionally, Courts have recognized that the "statutes plain language notably does not limit the definition of 'person' to New Jersey residents or *employees*." 460 N.J. Super. at 64. (emphasis added). In Calabotta, the Court held that a careful examination of the NJLAD's text and extensive legislative history detects no legislative intent to limit the statutes protections to . . . those employees who perform all of their employment functions in New Jersey. Id. The Calabotta court further instructed that whether the NJLAD applies to a nonresident's claims, "turns upon a weighing of the multiple choice-of-law factors" set forth in [the Restatement Second] §§ 6, 145 and 146. Id.

Defendant's simplistic approach to the application of the NJLAD to an out of state employee has been rejected by the New Jersey Appellate Division. As explained in Calabotta, this Court should apply New Jersey choice-of-law analysis, as adopted by the New Jersey Supreme Court, to evaluate whether the choice-of-law factors weigh in favor of applying the NJLAD to Plaintiff's discrimination claims. As discussed below, the Restatement Second choice-of-law factors weigh heavily in favor of applying the NJLAD to Plaintiff's claims.

First, a court must determine whether an actual conflict of law exists between the forum state and any other interested states.

Maniscalco v. Brother Int'l Corp., 709 F.3d 202, 210 (3d Cir. 2013). Here, there is an actual conflict because, in comparison to the New York Human Rights Law ("NYSHRL"), the NJLAD is considered one of the strongest state laws in the country in PREVENTING discrimination. Procedurally, NJLAD allows a plaintiff to file directly in court, provides for individual liability, and has no cap on punitive damages. See, N.J.S.A. 10:5-1 et seq.

Additionally, unlike the NJLAD, under the NYSHRL, an employee must demonstrate that: (1) his/her workplace was permeated with discriminatory intimidation that was **_sufficiently severe or pervasive to alter their work conditions_** and, (2) a specific basis existed for imputing the conduct to the employer. Van Zant v. KLM Royal Dutch Airlines, 80 F. 3d 708, 715 (2d Cir. 1996) (emphasis added)

Notably, this standard has made it very difficult for employees to successfully plead a hostile work environment. That is because, to be successful, employees have been required to show that a single incident was extraordinarily severe or that a series of incidents were continuous enough to be deemed pervasive. Perry v. Ethan Allen, Inc., 115 F. 3d 143 (2d Cir. 1997).

The second part of the test requires a court to determine which state has the "most significant relationship" that relate to the particular claim. As discussed below, the test weighs heavily

18

in favor of applying the NJLAD to Plaintiff's discrimination claims.

First, a "Choice-of-law analysis begins with . . .the presumption that the law of the state where the injury occurs applies." 460 N.J. Super. at 70. However, "that presumption may be overcome if some other state has a more significant relationship with the parties based on an assessment of each state's contacts[.]" Id.

Determining the "place of injury" can be difficult to ascertain where an employer takes a tangible employment action against an employee who resides in another state. Id. at 71. Here, much of the discrimination did not occur in one specific location, but rather occurred while Plaintiff was employed in different parts of the United States, as well as Singapore. Additionally, Plaintiff's managers and Human Resources personnel during the discrimination period were also based in different parts of the United States and abroad, such as Florida, California, New York, New Jersey (home and home office of key superior named in the Complaint), Virginia, Missouri and Singapore. Given the global nature of Defendant's company, Plaintiff, as well as other individuals named in the complaint, constantly traveled for business. It was during Plaintiff's extensive travels that some of the Defendant's discriminatory conduct toward Plaintiff took place.

Considering the virtual nature in which the company's employees conduct business and the various locations of the individuals involved at the time of the discriminatory conduct, New Jersey has the most significant relationship to Plaintiff's discrimination claims given that it is his home state. Thus, Defendant cannot provide any legal basis for the Court to conclude that the injury occurred in New York.

Further, the "needs of the interstate and international systems" will be furthered if the law of the state where employees reside governs the claims arising out of the relationship with employer. Specifically, applying the law of the state would promote "uniformity in the law applicable to the same group of [residents and remote] employees." 460 N.J. Super. at 70.

Next, the "relevant policies of the forum" are also furthered here since the NJLAD is a "remedial legislation, intended 'to eradicate the cancer of discrimination[,]' protect employees, and deter employers from engaging in discriminatory practices." Id. (quoting Acevedo v. Flightsafety Int'l, Inc., 449 N.J. Super. 185, 190 (N.J. App. Div. 2017)). NJLAD protection is appropriate to resident employees who occasionally or constantly perform work for an employer because the goals of NJLAD would be furthered. See, Fairfax Fin. Holdings Ltd. v. S.A.C. Capital Mgt., L.L.C., 450 N.J. Super. 1, 48 (N.J. App. Div. 2017) ("When 'the purposes sought to be achieved by a local statute or common law rule would be

furthered by its application to out-of-state facts, however, this is a weighty reason why such application should be made.'"").

In contrast, the "relevant policies of other interested states," here, New York, would not be impacted if New Jersey law is applied. The NJLAD offers more protections, and therefore any interest that New York has in protecting its residents from discriminatory conduct would not be compromised by the application of the NJLAD.

Defendant cites to several cases in support of its argument that the NJLAD does not apply to Plaintiff's discrimination claims. However, Defendants' motion to dismiss, as well as the cases cited therein, all rely on misconstrued language from <u>Buccilli v. Timby, Brown & Timby</u>, 283 <u>N.J. Super</u>. 6 (<u>N.J. App. Div. 1995</u>). <u>Defs.</u>' <u>Br.</u> at p. 8. It is also to be noted that the cases cited by Defendant are unpublished and, thus, do not constitute precedent. <u>R.</u> 1:36-3; <u>Defs.</u>' <u>Br.</u> at pp. 8.

In <u>Calabotta</u>, The New Jersey Appellate Division explicitly clarified that its earlier decision, <u>Buccilli v. Timby, Brown & Timby</u>, "should not be misread to impose a bright-line choice-of-law principle that all employment discrimination claims must be governed by the law of the state where a plaintiff exclusively or principally worked." 460 <u>N.J. Super</u>. at 69.

Crucially, <u>Buccilli</u> is factually distinguishable to the present matter, as in <u>Buccilli</u>, the "defendants' business was

located in Pennsylvania, and there was **no nexus** to New Jersey other than Ms. Buccilli's residency in [New Jersey]." Id. (emphasis added). Here, the Plaintiff's residence is one of numerous connections the Defendant has to the state of New Jersey. Even if the alleged discriminatory, harassing, and retaliatory conduct occurred out of the country, New Jersey has the most significant interest in the matter at hand. Defendants motion to dismiss does not account for the fact that during his employment with Defendant, Plaintiff held a residence in, and commuted from the State of New Jersey. Additionally, one of the key individuals named in Plaintiff's complaint, who engaged in the harassment and threats toward Plaintiff, also resided in New Jersey at the time.

Lastly, the Defendants nexus with New Jersey include the remote nature of many of Defendants employees and the ample amount of business it expressly aims and intentionally directs toward the State of New Jersey. Based on the facts, uniformity would be best achieved by applying the law of the State where many employees not only reside, but also happen to work. Thus, Plaintiff should be entitled to all the legal protections this State provides to its residents.

Alternatively, if this Court cannot decide based on the pleading that the NJLAD should apply to Plaintiff's discrimination claims, at the very least Plaintiff should be granted the opportunity to conduct discovery before this Court dismisses his

NJLAD claims. See Trevejo, 2018 WL 1569640, at *4 ("determining who may be entitled to protection under the NJLAD is a novel question of law that involves highly significant policy considerations. *Discovery yet to be completed may shed light on the matter.*") (emphasis added).

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests Defendant's motion to dismiss Plaintiff's complaint be denied.

Respectfully Submitted,


BY: **/s/ALAN GENITEMPO, ESQ.**
Alan Genitempo, Esq.

Dated: October 19, 2020