**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| SAMBIT PATTANAYAK, | X<br>:<br>: |
| Plaintiff, | :<br>: |
| -against- | :<br>: |
| MASTERCARD, INC., | :<br>: |
| Defendant. | :<br>: |
|  | :<br>X |

Case No. 2:20-cv-12640

**DEFENDANT MASTERCARD INTERNATIONAL INCORPORATED'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

JACKSON LEWIS P.C.
666 Third Avenue, 29th Floor
New York, New York 10017

John A. Snyder

ATTORNEY FOR DEFENDANT
MASTERCARD INTERNATIONAL
INCORPORATED

i

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ..........................................................................................1

ARGUMENT .........................................................................................................................1

I.   Plaintiff's Opposition Fails to Establish That This Court Has General Jurisdiction
     Over Defendant. ............................................................................................................ 2

     A.   Defendant Does Not Have "Continuous and Systematic Contacts" With
          New Jersey To Justify This Court's Exercise of Personal Jurisdiction Over It. ........... 2

     B.   Mastercard Did Not Consent To Personal Jurisdiction in New Jersey When
          It Registered To Do Business in This State. ................................................................. 5

II.  Plaintiff's Claims Are Not Subject To The NJLAD. ............................................... 6

     A.   The Federal Case Law Make Clear That The NJLAD Does Not Apply To
          Conduct Occurring Outside the State of New Jersey .................................................... 6

     B.   Alternatively, Under a Choice of Law Analysis, New York Law, Rather
          Than New Jersey Law, Should Apply. ......................................................................... 9

III. Plaintiff Should Not Be Permitted To Conduct Jurisdictional Discovery, And
     The Court Should Deny Plaintiff's Request To Amend His Complaint. ............................. 11

CONCLUSION .....................................................................................................................12

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

Barth v. Walt Disney Parks & Resorts U.S., Inc.,
    697 Fed. Appx. 119 (3d Cir. 2017)......................................................................15

Bowswell v. Cable Servs. Co.,
    2017 U.S. Dist. LEXIS 100708 (D.N.J. June 29, 2017) ..........................................9

Buccilli v. Timby, Brown & Timby,
    283 N.J. ............................................................................................................11, 12

Calabotta v. Phibro Animal Health Corp.,
    460 N.J. Super. 38 (App. Div. 2019) ............................................................... *passim*

Daimler AG v. Bauman,
    571 U.S. 117 (U.S. 2014).................................................................................5, 6, 7

Display Works, LLC v. Bartley,
    182 F. Supp. 3d 166 (D.N.J. 2016) ........................................................................9

Drayage Express, LLC v. Int'l First Serv. United States,
    2017 U.S. Dist. LEXIS 47999 (D.N.J. Mar. 29, 2017)...........................................6

First Trenton Indem. Co. v. River Imaging, P.A.,
    2004 WL 3316874 (N.J. Super. Mar. 22, 2004) ......................................................8

Forero v. APM Terminals,
    2019 U.S. Dist. LEXIS 201438 (McNulty, J.)..........................................................6

Gray v. Apple Inc.,
    2016 U.S. Dist. LEXIS 101870 (D.N.J. Aug. 3, 2016) (McNulty, J.)..........................6, 7, 8, 9

Hernandez v. Office of the Comm'r of Baseball,
    2019 U.S. Dist. LEXIS 115474 (S.D.N.Y. Jul. 11, 2019) ....................................14

Kubin v. Orange Lake Country Club, Inc.,
    2010 U.S. Dist. LEXIS 107860 (D.N.J. Oct. 8, 2019).............................................9

Laverty v. Cox Enters,
    2019 U.S. Dist. LEXIS 13588 (Jan. 29, 2019) .....................................................15

McGovern v. Southwest Airlines,
    2013 U.S. Dist. LEXIS 3095 (D.N.J. Jan. 8, 2013) ...............................................14

Otsuka Pharm. Co. v. Mylan, Inc.,
    106 F. Supp. 3d 456 (D.N.J. 2015) ........................................................................8

Peikin v. Kimmel & Silverman, P.C.,
    576 F. Supp. 2d 654 (D.N.J. 2008) ...................................................................11

Rampersad v. Dow Jones & Co.,
    2020 U.S. Dist. LEXIS 18216 (D.N.J. Jan. 31, 2020) ............................................12

Robins v. Max Mara, U.S.A., Inc.,
    924 F. Supp. 460 (S.D.N.Y. 1996) ...................................................................14

Trevejo v. Legal Cost Control, Inc.,
    2018 N.J. Super. Unpub. ...............................................................................10

**Statutes**

Federal Case Law ....................................................................................................10

Federal Rules of Civil Procedure .........................................................................1, 16

Defendant Mastercard International Incorporated, incorrectly named in this action as "Mastercard, Inc." ("Defendant" or "Mastercard"), submits this reply memorandum of law in further support of its motion to dismiss Plaintiff Sambit Pattanayak's ("Plaintiff") Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff's opposition papers fail to show that this Court can properly exercise personal jurisdiction over Mastercard in this matter.  Because Defendant is based in and headquartered in New York, and has no substantial connection to New Jersey, this case belongs in New York.  Plaintiff relies on New Jersey *state* law precedent and outdated legal theories to argue that this Court should deny Defendant's motion to dismiss Plaintiff's Complaint.  As the *federal* case law makes clear, Defendant does not have such continuous and systematic contacts with New Jersey such that it can be considered "at home" in this state for purposes of personal jurisdiction. Further, Plaintiff's reliance on the choice of law doctrine is irrelevant to whether the NJLAD should apply in this case.  Finally, allowing Plaintiff to conduct jurisdictional discovery and/or to amend his Complaint would be futile, as Plaintiff does not state with any specificity how doing so will alter the personal jurisdiction analysis.

For the reasons set forth in Defendant's moving papers, and for the reasons set forth below, the Court should grant Defendant's Motion to Dismiss Plaintiff's Complaint and deny Plaintiff's request to conduct jurisdictional discovery and amend his Complaint.

## ARGUMENT

**I.   Plaintiff's Opposition Fails to Establish That This Court Has General Jurisdiction Over Defendant.**[1]

### A.   Defendant Does Not Have "Continuous and Systematic Contacts" With New Jersey To Justify This Court's Exercise of Personal Jurisdiction Over It.

The place of a company's incorporation and principal place of business are the paradigm bases for general jurisdiction. <u>Daimler AG v. Bauman</u>, 571 U.S. 117, 137 (U.S. 2014). As noted in Defendant's motion to dismiss, Defendant is neither incorporated nor headquartered in New Jersey. Since Mastercard is neither incorporated nor has its principal place of business in New Jersey, the only way for this Court to exercise general personal jurisdiction is for Plaintiff to plead facts to establish that Mastercard's contacts with New Jersey "are so 'continuous and systematic' as to render them essentially 'at home' in the forum state." <u>Id</u>. at 139. Because Plaintiff's opposition fails to sufficiently establish such contacts, this Court cannot exercise general jurisdiction over Defendant. <u>See</u> <u>Forero v. APM Terminals</u>, 2019 U.S. Dist. LEXIS 201438, at *9 (D.N.J. Nov. 19, 2019) (McNulty, J.) (dismissing the plaintiff's complaint where she failed to "plead facts that establish that [the defendant's] contacts with New Jersey" were continuous and systematic "as to render them essentially at home in" New Jersey.).

As the federal case law makes clear, exercise of general jurisdiction over a defendant *in every state* in which a corporation engages in "substantial, continuous and systematic course of business" is "unacceptably grasping." <u>Daimler</u>, 571 U.S. at 117. Plaintiff relies on facts, which are both outside of the pleadings and irrelevant to the case at hand, to allege that Mastercard has substantial contacts with New Jersey. Specifically, Plaintiff references Defendant's business

---

[1] Plaintiff acknowledges in his Opposition Brief that he is not suggesting that Defendant is subject to specific jurisdiction in New Jersey.

dealings with the Credit Union of New Jersey and the fact that Mastercard enables businesses located in New Jersey to accept payments on Mastercard-branded cards. However, "[i]t is well-established that unrelated business contacts . . . without more, do not create personal jurisdiction." Drayage Express, LLC v. Int'l First Serv. United States, 2017 U.S. Dist. LEXIS 47999, at *8 (D.N.J. Mar. 29, 2017) (citing Daimler, 571 U.S. at 757). The contacts with the forum do not warrant jurisdiction over a non-resident corporation in a cause of action unrelated to those transactions. See Daimler, 571 U.S. at 757; see also Gray v. Apple Inc., 2016 U.S. Dist. LEXIS 101870, *9 (D.N.J. Aug. 3, 2016) (McNulty, J.) (finding that the defendant's contacts in New Jersey, including 12 stores, customers and sales amounting to $182.8 billion, were not enough to establish continuous and systematic contacts such that they should be subject to personal jurisdiction in this state.). Plaintiff's reliance on these facts conflates the concepts of general and specific jurisdiction. As the Court noted in Daimler,

> "General jurisdiction . . . calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved."

> Id. at 139.

Plaintiff's claims in the present action arise out of his employment relationship with Mastercard and have no connection to the revenue derived in this State, relationships with New Jersey Credit Unions or customers located in New Jersey. Indeed, as this Court noted in Gray "if these contacts mean that [Defendant] is subject to jurisdiction here, then it probably would be subject to jurisdiction everywhere." Gray, 2016 U.S. Dist. LEXIS 101870, at *9. Plaintiff's claims are unrelated to Mastercard's business contacts in this state and "do not displace the paradigm,

default rule of Daimler." Id.  Therefore, the Court cannot find systematic and continuous contacts sufficient to exert general jurisdiction over Defendant.

Even if Mastercard's business contacts were related to Plaintiff's claims, Plaintiff still cannot show that these business transactions rise to the level of "substantial contacts" such that this Court's exercise of personal jurisdiction would be appropriate.  Plaintiff's opposition relies on facts alleged outside of the pleadings to argue that Mastercard's revenue and New Jersey customer base constitute "significant business" within the State of New Jersey.  In quoting New Jersey *state* case law, which does not constitute precedent in this *federal* case, Plaintiff states that "[t]he substantial quantity of . . . business revenue derived solely from New Jersey . . . warrants a finding of general jurisdiction alone." First Trenton Indem. Co. v. River Imaging, P.A., 2004 WL 3316874, at *15 (N.J. Super. Mar. 22, 2004).  Plaintiff's reliance on First Trenton is misplaced.  In that case, the issue was whether there was personal jurisdiction over an individual corporate director for fraudulent activity directed at the state.  Id.  The company had a principal place of business in New Jersey, and the alleged fraudulent activity took place at the facilities located there. Id.  The facts of First Trenton are clearly distinguishable from the case at hand where ***none*** of the alleged discrimination took place in New Jersey and Mastercard's principal place of business is in ***New York***.

Plaintiff's reliance on Otsuka Pharmacy for the proposition that Defendant has such substantial contacts to render it "at home" in this state is similarly misguided.  As the Court in that case noted, it is only the "exceptional case" in which a court may exercise general jurisdiction over a corporation in a forum other than its "formal place of incorporation or principal place of business." Otsuka Pharm. Co. v. Mylan, Inc., 106 F. Supp. 3d 456, 465 (D.N.J. 2015).  In Otsuka Pharmacy, the defendant's "fractional revenue generation in New Jersey, 'frequent' litigation in

this District, in addition to the physical presence of various [] subsidiaries in this State" was not enough to constitute the "functional equivalent of incorporation or principal place of business" for purposes of general jurisdiction.  Id. at 466.  Rather, the court in that case relied on the outdated consent-by-registration theory to establish general jurisdiction – a theory which is not only completely irrelevant to the facts in this case but, as noted below, has since been abandoned by New Jersey courts. Id.

This Court's decision is Gray is on point and dispositive of the issue presented in this case.  The plaintiff in Gray alleged he was a resident of New Jersey.  The defendant Apple is a California corporation with its principal place of business in California and operates 500 retail stores in many states, including California and New Jersey.  In support of personal jurisdiction over Apple in New Jersey, the plaintiff proffered that Apple had 12 stores in New Jersey, that it ships its products to New Jersey, and that its sales to New Jersey customers amounted to $182.8 billion.  Your Honor stated that "[i]f these contacts mean that Apple is subject to jurisdiction here, then it probably would be subject to jurisdiction everywhere . . . The plaintiff has not set forth sufficient facts to indicate that Apple is 'at home' in New Jersey or 'exceptional' indications that it should reasonably expect to be haled into a New Jersey court…." and granted Apple's motion to dismiss for lack of personal jurisdiction.  Gray, 2016 U.S. Dist. LEXIS 101870, at *9.  Defendant respectfully submits that Plaintiff similarly has failed to proffer sufficient facts to indicate that Mastercard is "at home" in New Jersey or "exceptional" indications that it should reasonably expect to be haled into a New Jersey court.

**B.      Mastercard Did Not Consent To Personal Jurisdiction in New Jersey When It Registered To Do Business in The State.**

Plaintiff argues that when a company registers to do business in New Jersey, they automatically consent to jurisdiction in this state.  Despite Plaintiff's argument to the contrary, the

consent-by-registration theory has been critiqued, rejected and abandoned by this Court on numerous occasions since the Otsuka Pharmacy ruling.  See, e.g., Display Works, LLC v. Bartley, 182 F. Supp. 3d 166, 179 (D.N.J. 2016) (holding that a corporation did not consent to jurisdiction in New Jersey merely by registering to do business there because, unlike the Pennsylvania registration statute, the New Jersey statute does not expressly state that a corporation consents to jurisdiction when it registers to do business in this state.); Bowswell v. Cable Servs. Co., 2017 U.S. Dist. LEXIS 100708, at *6 (D.N.J. June 29, 2017) (concluding the defendant's registration to do business in New Jersey did not mean it consented to general jurisdiction there.); Kubin v. Orange Lake Country Club, Inc., 2010 U.S. Dist. LEXIS 107860, at *3 (D.N.J. Oct. 8, 2019) ("Filing a certificate to do business in New Jersey [is] insufficient to establish general jurisdiction . . .").  Therefore, the Court should not find that Mastercard's registration in this State automatically subjects it to general jurisdiction here.

In conclusion, this Court cannot properly exercise personal jurisdiction over Defendant because the alleged conduct giving rise to this litigation occurred outside of this state, Defendant's contacts within this forum are not so continuous and systematic to render them "at home" in New Jersey and Mastercard did not consent to jurisdiction by registering to do business in this state.

## II.     Plaintiff's Claims Are Not Subject To The NJLAD.

### A.     The Federal Case Law Make Clear That The NJLAD Does Not Apply To Conduct Occurring Outside the State of New Jersey.

Plaintiff contends that "courts have noted that the language of the NJLAD does not explicitly require that the employment of the individual be in New Jersey."  In support of that assertion, Plaintiff relies exclusively on state law precedent with facts that are easily distinguished from the case at hand.

In <u>Trevejo</u>, which Plaintiff relies on for the assertion that the NJLAD should be broadly construed to apply to the case at hand, the court set out to determine whether the term "inhabitant" includes employees who reside outside the State of New Jersey but who "experience discrimination ***in this State***." <u>Trevejo v. Legal Cost Control, Inc.</u>, 2018 N.J. Super. Unpub. LEXIS 727 at *4 (N.J. App. Div. Apr. 2, 2018) (emphasis added). The plaintiff in <u>Trevejo</u> was an out-of-state resident who conducted employment activities and actually experienced the alleged discriminatory conduct in this state. Unlike the plaintiff in <u>Trevejo</u>, Plaintiff did not work for Defendant in New Jersey and did not experience any of the alleged discriminatory conduct in this state. The issue in the present case is not whether Plaintiff is an "inhabitant" of New Jersey, but rather whether the Court can exercise personal jurisdiction over an out-of-state defendant for alleged conduct that occurred entirely outside of this state.

The state court in <u>Calabotta</u> made similar arguments in determining whether the NJLAD applies to non-resident's claims. <u>Calabotta v. Phibro Animal Health Corp.</u>, 460 N.J. Super. 38, 45 (App. Div. 2019). There, the plaintiff was an Illinois resident working for a New Jersey-based employer with its headquarters located in this state. <u>Id</u>. at 44. Notably, the plaintiff in that case alleged two instances of discrimination: (1) when the company refused to consider him for promotion ***in New Jersey***; and (2) when the company subsequently terminated his employment. <u>Id</u>. at 51. The "pivotal question posed" in that case was "whether New Jersey law . . . or Illinois law applies to each of this Illinois resident's claims against a ***New Jersey-based parent company*** and its officials." <u>Id</u>. at 53 (emphasis added). These facts are not analogous to the present case where Plaintiff alleges that he was a resident of New Jersey but did not experience ***any*** of the alleged discriminatory conduct by his out-of-state employer in New Jersey.

As Defendant noted in its motion to dismiss, there is extensive federal case law dismissing NJLAD claims because "New Jersey law regulates conduct in New Jersey, ***not outside the state***." Peikin v. Kimmel & Silverman, P.C., 576 F. Supp. 2d 654, 657-58 (D.N.J. 2008) (emphasis added). Plaintiff relies on language from Calabotta to state that the law set forth in Buccilli v. Timby, Brown & Timby*, 283 N.J. Super. 6 (N.J. App. Div. 1995)* "should not be misread to impose a bright-line choice-of-law principle that all employment discrimination claims must be governed by the law of the state where a plaintiff exclusively or principally worked." Calabotta, 460 N.J. Super. at 69. However, immediately before making that assertion, the court in Calabotta specifically distinguished the facts of that case to those in Buccilli. The court observed that

> "the present facts are the converse of Buccilli. Here, Plaintiff resides *outside* of this state, and the defendant company is based *in* New Jersey. Unlike Ms. Buccilli, plaintiff worked for the company in his state of residence but sought a promotion to a position in New Jersey. He contends the discriminatory conduct by defendants occurred in New Jersey, whereas in Buccilli the alleged discriminatory conduct took place in Pennsylvania."

Id. The facts in the present case are more analogous to those in Buccilli. Plaintiff did not experience *any* discriminatory conduct in New Jersey, and Mastercard is headquartered with its principal place of business outside of this state. Like the defendant in Buccilli, the only nexus between Mastercard and New Jersey is Plaintiff's residence.[2] Therefore, unlike Calabotta, no choice of law analysis is required, and the Court should look to the federal case law to dismiss Plaintiff's claims under the NJLAD.

---

[2] Plaintiff's bare assertion that Plaintiff's residence is "one of numerous connections the Defendant has to the state of New Jersey" is unfounded. See Dkt. No. 10 at p. 22. Plaintiff only asserts that he commuted from the state of New Jersey during his employment with Defendant and that some unnamed individual in Plaintiff's Complaint also resided in New Jersey at that time. As his Complaint makes clear, Plaintiff lived in and was employed by Mastercard in the Republic of Singapore and New York during the relevant time period and reported to supervisors in Singapore, New York and San Francisco. See Dkt. No. 1, Exhibit A at ¶¶ 4-6. Upon information and belief, Plaintiff is still not a resident of New Jersey.

**B.**      **Alternatively, Under a Choice of Law Analysis, New York Law, Rather Than New Jersey Law, Should Apply.**

Even if the choice of law doctrine did apply to the present case, the factors weigh in favor of applying New York law.  Under the Second Restatement approach, the court must first "ask whether an actual conflict exists between the laws of New Jersey and another state." Rampersad v. Dow Jones & Co., 2020 U.S. Dist. LEXIS 18216, at *9 (D.N.J. Jan. 31, 2020).  If such conflict exists, then the court must consider "whether New Jersey public policy requires the application of [New Jersey] substantive law."  Id.  Finally, "[i]f no such directive exists, either through explicit statutory directive or by a process of interpretation and construction, a court presiding over an employment discrimination claim must apply the New Jersey law" only if "New Jersey has the 'most significant relationship' to the matter in light of the factors set forthin the Restatement (Second) of Conflict of laws."  Id.  Significantly in the present case, New Jersey has little interest in resolving a case where the plaintiff was ***not*** a resident in this state at the time the alleged discrimination took place and where all of the alleged conduct took place in Singapore and New York.

As Plaintiff notes, the standards of the NJLAD and NYSHRL were different at the time the alleged conduct took place.[3]  Therefore, the court must determine which state had the most significant relationship to this claim, utilizing the several factors listed in the Second Restatement.[4]

---

[3] Although the standard under the NYSHRL was amended in 2019, at the time of the alleged discrimination in this case, it was analyzed under the traditional "severe or pervasive" standard.

[4] In order to determine which state has a more significant relationship with the parties, courts look to each states' contacts under Sections 145 and 6 of the Second Restatement.  The factors under Section 6 include "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies  underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied."  Second Restatement § 6.  Section 145, meanwhile analyzes each states' contacts with the issue, including "(a) the place where the injury

As Plaintiff concedes, the choice of law analysis begins with the presumption that "the law of the state where the injury occurs applies." Calabotta, 460 N.J. Super. 56. Plaintiff argues that because of the alleged "virtual nature" of his employment with Defendant, New Jersey has the most significant relationship to the claims, as it is his home state. However, this claim is nonsensical when **none** of the alleged injurious conduct took place in New Jersey and Plaintiff was **not** even a resident of New Jersey when the alleged discriminatory conduct took place, as he was residing in Singapore.

Even considering the other Second Restatement factors, the Court should apply New York law. Plaintiff relies on the decision in Calabotta to argue that New Jersey has the most significant relationship to the alleged discriminatory actions in this case. However, as the court in Calabotta noted, its decision was "heavily influenced by the fact that the new position sought by plaintiff and other potential applicants was going to be located in [New Jersey]". Calabotta, 460 N.J. Super. at 70. Specifically, when the court stated that application of the NJLAD would promote "certainty, predictability and uniformity," it did so in the context of discrimination in **hiring decisions**, as "it makes sense to have all applications treated under one set of state laws." Id. They further noted that "it would be unwieldy for an employer to have each applicant's quest for the post individually governed by the law of the state or country which he or she presently happens to live." Id. These facts are distinct from the case at hand. Plaintiff was not an applicant to a New Jersey-based employer. Rather, he was a New Jersey resident, temporarily living in Singapore, employed by Mastercard in New York. Mastercard employs thousands of individuals throughout

occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Second Restatement §145(2).

the United States and abroad.  To apply the law of each employee's residence would certainly not promote uniformity, certainty or predictability and would undeniably yield unwieldy results.

Additionally, the "relevant policies of the forum" would not be furthered here. There are essentially "no cases applying the NJLAD to out-of-state employers unless the Plaintiff has significant employment responsibilities in New Jersey."  McGovern v. Southwest Airlines, 2013 U.S. Dist. LEXIS 3095, *6 (D.N.J. Jan. 8, 2013).  Employers should not have to "comply with several different legal regimes merely because they may have employees that reside in different states."  Id.  Additionally, New York has a strong interest in the outcome of cases where the employer's principal place of business is located in New York and the alleged discriminatory acts were perpetrated in New York.  See, e.g., Hernandez v. Office of the Comm'r of Baseball, 2019 U.S. Dist. LEXIS 115474, at *8 (S.D.N.Y. Jul. 11, 2019) ("Thus, Ohio has no particular interest in this suit, especially compared to New York, which has a strong interest in enforcing employment law with respect to organizations headquartered within its boundaries."); Robins v. Max Mara, U.S.A., Inc., 924 F. Supp. 460, 465 (S.D.N.Y. 1996) ("As the claim's only apparent connection with New Jersey is that Robins is a New Jersey resident . . . New York is more intimately concerned with the outcome of the . . . litigation.").

Under this choice of law analysis, it is clear that Plaintiff's claims should be heard in federal court in New York applying New York law.

### III.    Plaintiff Should Not Be Permitted To Conduct Jurisdictional Discovery, And The Court Should Deny Plaintiff's Request To Amend His Complaint.

Plaintiff argues that if this Court cannot decide whether to dismiss the Complaint, then he is entitled to discovery on jurisdictional issues.  The Court should deny this request, as "jurisdictional discovery is not warranted unless the plaintiff 'presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between [the

party] and the forum state . . .'" <u>Laverty v. Cox Enters</u>, 2019 U.S. Dist. LEXIS 13588, at *14 (Jan. 29, 2019) (quoting <u>Toys "R" Us v. Step Two, S.A.</u>, 318 F.3d 446, 456 (3d Cir. 2003)). Additionally, "a plaintiff may not 'undertake a fishing expedition based solely upon bare allegations, under the guise of jurisdictional discovery.'" <u>Id</u>. (quoting <u>Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA</u>, 623 F.3d 147, 157 (3d Cir. 2010)). Here, as in other cases where plaintiffs fail to allege with any particularity facts suggesting general jurisdiction over a defendant, jurisdictional discovery would be futile. <u>See</u>, <u>e.g.</u>, <u>Id</u>. at *15; <u>Barth v. Walt Disney Parks & Resorts U.S., Inc.</u>, 697 Fed. Appx. 119, 120 (3d Cir. 2017). Plaintiff fails to state what additional discovery would be needed in order to determine whether this Court may exercise general jurisdiction over Defendant or whether the NJLAD should apply to Plaintiff's case.

Similarly, Plaintiff did not provide a proposed amended complaint nor any basis for extending leave to amend his Complaint. <u>See</u> <u>Id</u>. at *16 ("Without having been provided a proposed amended complaint or at least a description of how amendment would confer personal jurisdiction, this Court has 'nothing upon which to exercise its discretion' to permit a curative amendment."). Therefore, the Court should deny Plaintiff's requests to conduct jurisdictional discovery and/or amend his Complaint.

## <u>CONCLUSION</u>

Based on the Defendant's memorandum of law in support of its motion to dismiss Plaintiff's Complaint and the foregoing, Defendant respectfully requests that the Court dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and (6).


Dated:  New York, New York
        October 26, 2020

Respectfully submitted,

JACKSON LEWIS P.C.
*ATTORNEY FOR DEFENDANT*
666 Third Avenue, 29th Floor
New York, New York 10017
(212) 545-4000


By:   */s John Snyder*_____
       John A. Snyder, Esq