Exhibit A

A Neutral

As of: October 22, 2020 1:04 PM Z

# *Forero v. APM Terminals*

United States District Court for the District of New Jersey

November 19, 2019, Decided; November 19, 2019, Filed

Civ. No. 18-13754 (KM)(CLW)

**Reporter**

2019 U.S. Dist. LEXIS 201438 *; 2019 WL 6168031

DOHENY FORERO, Plaintiff, v. APM TERMINALS, SUNRISE METALS, INC., TAL INTERNATIONAL, CAI INTERNATIONAL, CSX TRANSPORTATION, A.P. MOLLER-MAERSK A/S. XYZ COMPANIES 1-10. JOHN DOES 1-10, Defendants.

**Subsequent History:** Summary judgment granted by *Forero v. APM Terminals, 2020 U.S. Dist. LEXIS 107154 (D.N.J., June 18, 2020)*

For APM TERMINALS, Cross Defendant: JOHN E. KAWCZYNSKI, LEAD ATTORNEY, FIELD WOMACK & KAWCZYNSKI, LLC, SOUTH AMBOY, NJ.

**Judges:** Kevin McNulty, United States District Judge.

**Opinion by:** Kevin McNulty

## Core Terms

loaded, Transportation, notice

**Counsel:** **[*1]** For DOHENY FORERO, Plaintiff: BRUCE S. GATES, LEAD ATTORNEY, BAYONNE, NJ.

For SUNRISE METALS, INC., Defendant: ALYRA N. LIRIANO, CONNELL FOLEY LLP, NEWARK, NJ; PATRICK EUGENE DURING, BRYAN PAUL COUCH, Connell Foley, Newark, NJ.

For CSX TRANSPORTATION, Defendant: JEFFREY SHAWN POLLACK, LEAD ATTORNEY, HARRY M. BYRNE, DUANE MORRIS, LLP, PHILADELPHIA, PA; JOHN PATRICK KAHN, Duane Morris LLP, Cherry Hill, NJ.

For SUNRISE METALS, INC., Cross Defendant, Cross Claimant: ALYRA N. LIRIANO, CONNELL FOLEY LLP, NEWARK, NJ; BRYAN PAUL COUCH, Connell Foley, Newark, NJ.

## Opinion

**KEVIN MCNULTY. U.S.D.J.**:

Before me is the motion of defendant CSX Transportation ("CSX") to dismiss plaintiff Doheny Forero's second amended complaint. CSX moves to dismiss on three grounds: (1) lack of personal jurisdiction; (2) failure to timely file the complaint; and (3) failure to plead facts in conformity with *Rule 8*.

For the reasons outlined below, I will grant CSX's motion to dismiss.

### I. Background

On or about May 29, 2015, plaintiff Doheny Forero was operating a hustler **[*2]** forklift owned by her employer, APM Terminals when she attempted to make a left turn. (DE 20-3 at 2). Forero asserts that as she turned the forklift, the containers shifted and fell to the ground, overturning the forklift and injuring her. (*Id.*).

On May 26, 2017, the plaintiff, through her counsel,

Andrew R. Topazio, Esq., filed a complaint in the Superior Court of New Jersey, Law Division, Union, New Jersey, case number UNN-L-2019-17. (DE 20-3). Forero named APM Terminals, as well as corporate and individual John Does, as defendants.

On July 30, 2018, new counsel for plaintiff, Bruce S. Gates, Esq., filed an amended complaint asserting nearly identical allegations. (DE 1). Count 1 was still asserted against APM Terminals. This time, however, plaintiff named as defendants under Count 2 Sunrise Metals, Inc., TAL International, and CAI International. Plaintiff alleged that these three defendants "owned and/or maintained the containers and were responsible for the safe loading of the contains involved in the accident" and failed to properly and safely load the containers and therefore contributed to the events that injured her. (*Id.* at 9). CSX was not named as a defendant in the amended complaint. **[*3]**

On September 11, 2018, Sunrise Metals, Inc., removed this civil action. (DE 1).

On January 29, 2019, plaintiff filed a second amended complaint (DE 22).

Count 1, asserted against APM Terminals, alleges that as a result of the accident, Forero sustained severe and permanent injuries. (*Id.* at 2). APM is alleged to have "owned, operated and maintained the hustler and bluebird."[1] Count 1 does not appear to assert a theory of liability; rather it states that APM would know "who owned, maintained and/or loaded the containers and the entities responsible for the safe loading of the containers within the appropriate weight limits." This count "demands information" as to those entities. (*Id.* at 3).

Count 2 is directed against those unknown persons and entities, designated as John Does 1-10 and XYZ Companies 1-10, as well as named defendants TAL International, CAI International, CSX Transportation, and A.P. Moller-Maersk A/S. improperly and unsafely loaded the containers and therefore contributed to the events that injured her. (*Id.*).

The second amended complaint also asserts, for the first time, the following jurisdictional allegations:

> The events constituting the cause of action herein arise from or are related **[*4]** to the fact that the

defendants as aforesaid through their actions and those of their agents, servants and employees were through their business activities present on the date and place of the injurious events. Defendants caused the containers to be unsafely loaded and inspected and thereby and in that fashion through the expected and commonplace stream of commerce this led to and resulted in the events as aforesaid and the injuries of the Plaintiff. The defendants purposely availed themselves of the benefits and privilege of doing business in New Jersey through continuous and systematic general business contacts in this state, inasmuch as defendants are in the business of having their goods or the goods of others placed in containers and/or in the business of transporting same for their commercial benefit and accomplishing same by travelling in the State of New Jersey.

(*Id.* at 3-4).

On April 22, 2019, defendant CSX filed a motion to dismiss the second amended complaint. (DE 32).

Plaintiff failed to file any opposition to CSX's motion to dismiss by May 6, 2019.

As a result, this Court issued an Order to Show Cause on September 10, 2019 (DE 52), stating that unless plaintiff filed an opposition with **[*5]** 21 days, with a motion to file out of time, CSX's motion to dismiss the second amended complaint could be treated as unopposed and granted.

Plaintiff did not respond or otherwise update this Court in response to the Order to Show Cause. Although the Order to Show Cause warned that the motion to dismiss could be treated as unopposed, I will nevertheless analyze the merits.

## II. Argument

CSX's motion asserts three grounds for dismissal. First, says CSX, plaintiffs general allegations are insufficient to establish a basis for this Court to assert personal jurisdiction over CSX. (DE 32-1 at 10-15). Second, plaintiff's complaint is time-barred as to CSX. (*Id.* at 17-20). Third, the complaint fails to plead its claims with the requisite specificity. (*Id.* at 20-22).

### a. Personal Jurisdiction

---

[1] The "hustler" is the forklift. The "bluebird" is not described, but it may refer to a brand of floor scrubber.

First, I find that this Court cannot exercise personal jurisdiction over CSX.

To assess whether a court has personal jurisdiction over a defendant, a district court must undertake a two-step inquiry. *IMO Indus., Inc. v. Kiekert, AG, 155 F.3d 254, 258-59 (3d Cir. 1998)*. First, the court is required to use the relevant state's long-arm statute to see whether it permits the exercise of personal jurisdiction. *Id.*; *Fed. R. Civ. P. 4(k)*. "Second, the court must apply the principles of due process" under the federal Constitution. **[*6]** *WorldScape, Inc. v. Sails Capital Mgmt, No. 10-cv-4207, 2011 U.S. Dist. LEXIS 86643, 2011 WL 3444218, at *3 (D.N.J. Aug. 5, 2011)* (citing *IMO Indus., 155 F.3d at 259*).

In New Jersey, the first step collapses into the second because "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Miller Yacht Sales, 384 F.3d at 96* (citing *N.J. Ct. R. 4:4-4(c)*). Accordingly, personal jurisdiction over a non-resident defendant is proper in this Court if the defendant has "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Provident Nat'l Bank v. Cat Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987)* (quoting *Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)*) (internal quotation marks omitted).

There are two kinds of personal jurisdiction that allow a district court to hear a case involving a non-resident defendant: general and specific. A court may exercise general jurisdiction over a foreign corporation where "the defendant's contacts with the forum are so 'continuous and systematic' as to render them essentially 'at home' in the forum state." *Senju Pharm. Co., Ltd. v. Metrics, Inc., 96 F. Supp. 3d 428, 435 (D.N.J. 2015)* (citing *Daimler AG v. Bauman, 571 U.S. 117, 139, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014)*; *Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011)*; *Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984))*. "With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Daimler AG, 571 U.S. at 137* (citation omitted).

In contrast to general jurisdiction, specific jurisdiction relies **[*7]** on the defendant's forum-related activities that give rise to the plaintiffs' claims. To determine whether this court may exercise personal jurisdiction, this court must engage in a fact-intensive analysis. *Strategic Prods. & Servs., LLC v. Integrated Media Techs., Inc., No. CV1800694KSHCLW, 2019 U.S. Dist. LEXIS 79319, 2019 WL 2067551, at *7 (D.N.J. May 10, 2019)*.

"'A *Rule 12(b)(2)* motion, such as the motion made by the defendants here, is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies. Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence.'" *Patterson v. FBI, 893 F.2d 595, 603-04 (3d Cir. 1990)* (quoting *Time Share Vacation Club v. Atl. Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984))*.

CSX asserts that it is not subject to general jurisdiction because it is not "at home" in New Jersey—it requests that the court take judicial notice that it is incorporated in Virginia and has its principal place of business in Florida. (DE 32-1 at 12.) CSX also contends that it is not subject to specific jurisdiction because there are no well-pleaded facts that establish any specific contact on CSX's part with New Jersey. (*Id.* at 13-15). As noted above, plaintiff failed to file a response and thus it has not submitted **[*8]** any jurisdictional evidence.

I take judicial notice of the fact that CSX is incorporated in Virginia and has its principal place of business in Florida. "A court may take judicial notice of an adjudicative fact if that fact is not subject to reasonable dispute. *See Fed. R. Evid. 201(b)*. A judicially noticed fact must either be generally known within the jurisdiction of the trial court, or be capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Werner v. Werner, 267 F.3d 288, 295 (3d Cir. 2001)*. Here CSX's statements as to its place of incorporation and its principal place of business can be readily confirmed from reliable sources. (*See* DE 32-1 at 12 ("*In re Paulsboro Derailment Cases, No. 13-cv-784, 2013 U.S. Dist. LEXIS 181812, 2013 WL 6903958, at *1 & n.3 (D.N.J. Dec. 31, 2013)* (noting CSXT is Virginia corporation with principal place of business in Florida); Virginia State Corporation, Business Entity Details for CSXT, available at https://sccefile.scc.virginia.gov/Business/0050336 [stating that CSX is a Virginia corporation with its principal office in Jacksonville Florida]; CSXT's 2019 SEC Form S-3, available at:

https://www.sec.gov/Archives/edgar/data/88128/000119312519036213/d625324ds3asr.htm [same]")).

Because CSX is neither incorporated **[*9]** nor has its principal place of business in New Jersey, the only way for this court to exercise general personal jurisdiction is for plaintiff to plead facts that establish that CSX's contacts with New Jersey "are so 'continuous and systematic' as to render them essentially 'at home' in the forum state." *Daimler AG, 571 U.S. at 139.* Forero has failed to do so. The second amended complaint contains no allegations that even suggest that CSX has such extensive contacts with New Jersey so as to render it at home in New Jersey. (DE 22 at 3-4). Therefore, this Court does not have general personal jurisdiction over CSX.

Nor does the second amended complaint plead facts that would entitle this court to exercise specific jurisdiction. "The inquiry as to whether specific jurisdiction exists has three parts. First, the defendant must have 'purposefully directed [its] activities' at the forum. Second, the litigation must 'arise out of or relate to' at least one of those activities. And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'" *O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 317 (3d Cir. 2007)* (citations omitted).

Here, the second amended complaint attempts to plead **[*10]** jurisdiction by claiming the following:

Defendants caused the containers to be unsafely loaded and inspected and thereby and in that fashion through the expected and commonplace stream of commerce this led to and resulted in the events as aforesaid and the injuries of the Plaintiff. The defendants purposely availed themselves of the benefits and privilege of doing business in New Jersey through continuous and systematic general business contacts in this state, inasmuch as defendants are in the business of having their goods or the goods of others placed in containers and/or in the business of transporting same for their commercial benefit and accomplishing same by travelling in the State of New Jersey.

(DE 22 at 3-4). To begin with, these allegations are suspiciously generic and seem to be directed at defendants generally, rather than any particular defendant.

As to the first prong, there are no allegations that support an inference that CSX purposefully directed any activity to the State of New Jersey. There are no allegations that, for example, CSX was "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular **[*11]** advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty., 480 U.S. 102, 112, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987).* Forero's sole attempt to plead jurisdictional facts offers nothing more than vague and conclusory "stream of commerce" allegations that CSX (by virtue of its inclusion in the list of "defendants") generally availed itself of the privilege of doing business in New Jersey. (*Id.*). That is insufficient to establish purposeful availment.

Even accepting this general allegation as true, Forero's complaint still fails to satisfy prong 2 — that CSX's forum activity resulted in harm to Forero. "For specific jurisdiction, a defendant's general connections with the forum are not enough. As we have said, [a] corporation's 'continuous activity of some sorts within a state ... is not enough to support the demand that the corporation be amenable to suits unrelated to that activity." *See Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty., 137 S. Ct. 1773, 1783, 198 L. Ed. 2d 395, (2017)* (citations omitted). Here, the allegations at most suggest (though not in a very factual way) that CSX has some business in New Jersey; they do not establish that the accident at issue here occurred because of CSX's forum related activities.

Because plaintiff has not **[*12]** pled any facts establishing the first or second prongs of the specific jurisdictional analysis, this Court does not have personal jurisdiction over CSX and all claims against CSX are dismissed.

### b. Group Pleading

In the alternative, I consider CSX's argument that the second amended complaint engages in impermissible group pleading in violation of *Federal Rule of Civil Procedure 8.* (DE 32-1 at 20-21).

*Rule 8(a)* does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly, 550 U.S. 544,*

*555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*; *see Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008)* (*Rule 8* "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation omitted)). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly, 550 U.S. at 570*; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank, 712 F.3d 165, 169 (3d Cir. 2013)*.

That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (citing *Twombly, 550 U.S. at 556*). While "[t]he plausibility standard is **[*13]** not akin to a 'probability requirement'... it asks for more than a sheer possibility." *Id.*

*Rule 12(b)(6)* provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp., 654 F.3d 462, 469 n.9 (3d Cir. 2011)*. For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey, 760 F.3d 297, 302 (3d Cir. 2014)*.

Count two of Forero's second amended complaint contains the kind of group pleading that has led courts in this district to dismiss complaints in the past. This type of pleading fails to satisfy *Rule 8* "because it does not place Defendants on notice of the claims against each of them." *Sheeran v. Blyth Shipholding S.A., 2015 U.S. Dist. LEXIS 168019, 2015 WL 9048979, at *3 (D.N.J. Dec. 16, 2015)* (citing *Ingris v. Borough of Caldwell, 2015 U.S. Dist. LEXIS 74255, 2015 WL 3613499, at *5 (D.N.J. June 9, 2015)* ("[T]o die extent Plaintiff seeks to lump several defendants together without setting forth what each particular defendant is alleged to have done, he has engaged in impermissibly vague group pleading."); *Shaw v. Hous. Auth. of Camden, 2012 U.S. Dist. LEXIS 112655, 2012 WL 3283402, at *2 (D.N.J. Aug. 10, 2012)* (dismissing complaint because it failed to contain allegations showing how each defendant was liable and noting that "[e]ven under the most liberal notice pleading requirements of *Rule 8(a)*, a plaintiff must differentiate

between defendants.")).

This complaint **[*14]** vaguely asserts that all five Count 2 defendants "owned and/or maintained the containers and were responsible for the safe loading of the containers involved in the accident" (DE 22 at 3). But it cannot readily be extracted from this general catchall allegation what each defendant is alleged to have done, including at what point each defendant was responsible for maintaining and loading the containers or what each defendant supposedly failed to do that ultimately resulted in the harm caused to plaintiff. In particular, CSX could not, from reading this complaint, glean what it is that it supposedly did that would create liability.

I will therefore additionally dismiss the claim against CSX for failure to state a claim.

I do not reach the statute of limitations issue, which might require factual development—if the court had personal jurisdiction, and if the complaint otherwise stated a claim against CSX.

### III. Conclusion

For the reasons set forth above, CSX's motion to dismiss (DE 32) is **GRANTED** without prejudice to the submission, within 30 days, of a properly supported motion to amend the complaint. Should plaintiff fail to file a motion to amend within 30 days, this dismissal shall be **[*15]** converted into a dismissal with prejudice. An appropriate order follows.

Dated: November 19, 2019

/s/ Kevin McNulty

**Kevin McNulty**

**United States District Judge**

### ORDER

**THIS MATTER** having come before the Court on the motion (DE 32) of defendant CSX Transportation to dismiss the second amended complaint for lack of personal jurisdiction and failure to state a claim, *see Fed. R. Civ. P. 12(b)(1)* & *(6)*; and the plaintiff having failed to respond or otherwise oppose the motion; and the plaintiff having failed to respond to an order to show cause requiring a response; and the Court having nevertheless considered the merits of this unopposed motion; for the reasons stated in the accompanying

Opinion, and good cause appearing therefor;

**IT IS** this 19th day of November 2019,

**ORDERED** that CSX Transportation's motion (DE 32) to dismiss the second amended complaint is **GRANTED**. This dismissal is without prejudice to the submission within 30 days of a properly supported motion to amend the complaint. Should plaintiff fail to file a timely motion to amend, this dismissal shall be converted into a dismissal with prejudice.

/s/ Kevin McNulty

**Kevin McNulty**

**United States District Judge**

 Last updated  October 19, 2020   09:16:28 pm GMT

# *Drayage Express, LLC v. Int'l First Serv. United States*

United States District Court for the District of New Jersey

March 29, 2017, Decided; March 29, 2017, Filed

Civil Action No. 3:15-cv-03597 (FLW)(LHG)

**Reporter**
2017 U.S. Dist. LEXIS 47999 *

DRAYAGE EXPRESS, LLC, Plaintiff, v. INTERNATIONAL FIRST SERVICE USA d/b/a GLOBAL WINE LOGISTICS, ANITA MCNEIL, BANKERS INSURANCE COMPANY, SELI INTERNATIONAL, et al., Defendants.

**Notice:** NOT FOR PUBLICATION

**Prior History:** *Drayage Express, LLC v. Int'l First Serv. USA, 2016 U.S. Dist. LEXIS 160377 (D.N.J., Nov. 18, 2016)*

## Core Terms

Wine, discovery, invoices, transportation, facie, regularly, entity, but-for, ports

**Counsel:** **[*1]** For DRAYAGE EXPRESS, LLC, Plaintiff: JOHN M. CINTI, LEAD ATTORNEY, REGER RIZZO & DARNALL LLP, MT. LAUREL, NJ; THOMAS MC ALLISTER KRICK, LEAD ATTORNEY, REGER RIZZO DARNALL LLP, MOUNT LAUREL, NJ.

For BANKERS INSURANCE COMPANY, Defendant: ADAM RAFE SCHWARTZ, SCOTT AARON LEVIN, LEAD ATTORNEYS, MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP, MORRISTOWN, NJ.

For SELI INTERNATIONAL, Defendant: LARRY E.

HARDCASTLE, LEAD ATTORNEY, LANCIANO & ASSOCIATES LLC, PENNINGTON, NJ.

For Saverglass Inc., Defendant: ANTHONY LONGO, CAROLL MCNULTY AND KULL, BASKING RIDGE, NJ.

**Judges:** Honorable Freda L. Wolfson, United States District Judge.

**Opinion by:** Freda L. Wolfson

## Opinion

**WOLFSON, United States District Judge**:

Before the Court is the motion of Defendant Seli International ("Seli"), pursuant to *Fed. R. Civ. P. 12(b)(2)*, to dismiss the Complaint of Plaintiff Drayage Express, LLC ("Plaintiff"), for lack of personal jurisdiction. For the that reasons the follow, the Court finds that it lacks personal jurisdiction over Defendant Seli, and, therefore, grants Seli's motion to dismiss.

### I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

The following facts are taken from the Amended Complaint unless otherwise noted. The Plaintiff is a limited liability company. Am. Compl., ¶ 1. Plaintiff's **[*2]** "main" business office is located in the State of

2017 U.S. Dist. LEXIS 47999, *2

Pennsylvania. *Ibid.*[1] Defendant Seli is a business entity organized and existing under the laws of France. Am. Compl., ¶ 5. Seli's corporate address and principal place of business are in France, and Seli also maintains an office and place of business in the State of New York. *Ibid.* "Defendants, Seli and Seli USA regularly arrange for importation of goods into the United States and regularly conduct business at the ports located in Newark, NJ." *Id.* at ¶ 7.

Defendant Saverglass, Inc. ("Saverglass"), is a New Jersey entity, whose principal place of business is in the State of New Jersey. *Id.* at ¶8. Saverglass designs and manufacturers high-end and luxury glass bottles for alcoholic beverages, including wine and spirits. *Id.* at ¶ 9. In 2013, Saverglass retained Seli to provide logistics services for the importation of goods into the United States through the port of Charleston, South Carolina. *Id.* at ¶ 10.

Defendant International First Service USA d/b/a Global Wine Logistics ("Global Wine") is a New Jersey entity, the last known principal place of business of which was located in New Jersey. *Id.* at ¶ 2. After having contracted with Saverglass, [*3] Seli retained Global Wine to "handle the domestic leg of the importation of goods." *Id.* at ¶ 11.[2] Global Wine, in turn, retained the

Plaintiff to accomplish "the actual movement of the goods in the United States." *Id.* at ¶ 14. Seli was aware that Plaintiff was handling the overland transportation of the goods. *Id.* at ¶ 16.

From October 2013 through January 2014, the Plaintiff transported the subject goods to their destination. *Id.* at ¶ 17. The Plaintiff invoiced Global Wine for its services, but Global Wine did not pay the invoiced amounts in full or at all. *Id.* ¶ 18-19. As of the date of the filing of the Amended Complaint, Plaintiff recorded an outstanding balance of $165,320.00 in unpaid invoices. *Id.* at ¶ 19. Defendant Anita McNeil has represented to Plaintiff that Plaintiff's invoices were not paid by Global Wine because Global Wine's invoices to its "customers" had not been paid. *Id.* at ¶ 44.

Plaintiff filed the original Complaint in this case on May 28, 2015. Plaintiff filed a five count Amended Complaint, on February 10, 2016. Seli is named as a Defendant only in Count V. Count V does not set forth a specific legal cause of action, claiming only that Defendants Seli, [*4] Seli USA, and Saverglass are "jointly liable" to Plaintiff for the unpaid balance of Plaintiff's invoices to Global Wine. *Id.* at ¶ 43. As Plaintiff does not allege the existence of a contract between Plaintiff and Seli, the Court, reading the Amended Complaint in the light most favorable to Plaintiff, interprets Plaintiff's claim as an equitable action.[3]

## II. STANDARD OF REVIEW

A motion to dismiss for lack of personal jurisdiction is governed by *Federal Rule of Civil Procedure 12(b)(2)*. The plaintiff has the burden to prove facts sufficient to establish personal jurisdiction by a preponderance of the evidence. *Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 146 (3d Cir.1992)*; *Pro Sports Inc. v. West, 639 F.Supp.2d 475, 478 (D.N.J. 2009)*; *Ameripay, LLC v. Ameripay Payroll, Ltd., 334 F.Supp.2d 629, 632 (D.N.J. 2004)*. When, as in this case, "the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes

---

[1] "[T]he citizenship of partnerships and other unincorporated associations is determined by the citizenship of [their] partners or members. The state of organization and the principal place of business of an unincorporated association are legally irrelevant. Accordingly, the citizenship of an LLC is determined by the citizenship of its members. For complete diversity to exist, all of the LLC's members must be diverse from all parties on the opposing side." *Lincoln Ben. Life Co. v. AEI Life, LLC, 800 F.3d 99, 105 (3d Cir. 2015)* (internal quotations omitted). Although Plaintiff brings this case under the Court's diversity jurisdiction, Plaintiff has not alleged the citizenship of the members of its LLC. The parties, however, do not dispute this Court's subject matter jurisdiction, and the Case Information Statement avers that complete diversity of the parties exists.

[2] In briefing, Defendant Seli concedes that it "may" have hired Global Wine. Defendant's Mot. Br. at 2. In the Amended Complaint, Plaintiff is similarly vague in alleging that "Seli, Seli USA, *and/or* Saverglass" hired Global Wine. Am. Compl., ¶ 11. Construing the pleadings in the light most favorable to Plaintiff, however, the Court will consider Plaintiff's allegations as stating that Seli hired Global Wine. If read in the alternative, that Seli, Seli USA, *or* Saverglass hired Global Wine, implying that one or more of the Defendants may not have, there would potentially be no claim against Seli in this case, as Plaintiff's

theory of liability is clearly premised on the fact that Seli's failure to pay its counterparty Global Wine is the root cause of Global Wine's failure to pay Plaintiff. *Id.* at ¶¶ 40-44.

[3] Defendant Seli chooses to interpret Count V as a claim for unjust enrichment, but the Court does not reach the issue as it does not adjudicate Plaintiff's claim against Seli on the merits.

drawn in its favor." *Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004)*; *see also Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330-31, 51 V.I. 1219 (3d Cir. 2009)*; *Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 457 (3d Cir. 2003)*. The Plaintiff must, however, still "'prov[e] by affidavits or other competent evidence that jurisdiction is proper.'" *Metcalfe, 566 F.3d at 330* (quoting *Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996)*). "In other words, 'bare pleadings alone' are insufficient to withstand a motion to dismiss for lack of personal jurisdiction." *Cerciello v. Canale, 563 F. Appx. 924, 925 n.1 (3d Cir. 2014)* (citation omitted); *see also Patterson by Patterson v. F.B.I., 893 F.2d 595, 604 (3d Cir. 1990)* (holding that a plaintiff "must **[*5]** sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence; reliance on the bare pleadings is not enough."), *cert denied*, 498 U.S. 812, 111 S. Ct. 48, 112 L. Ed. 2d 24 (1990).

The Amended Complaint in this case invokes the Court's subject matter jurisdiction on the basis of diversity of citizenship among the parties. A federal court sitting in diversity must follow a two-step inquiry to determine personal jurisdiction: first, the court must apply the forum state's long-arm statute and, second, the court must apply the *Due Process Clause of the United States Constitution*. *IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 258-59 (3d Cir. 1998)*. In this District, this inquiry is reduced to a single step because New Jersey's long-arm statute permits jurisdiction to the full extent of the *Due Process Clause*. *Miller, 384 F.3d at 96*; *IMO Indus., 155 F.3d at 259*. The *Due Process Clause* allows a court to exercise personal jurisdiction over a defendant if the defendant has "certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)*. "Once the plaintiff has shown minimum contacts, the burden shifts to the defendant, who must show that the assertion of jurisdiction would be unreasonable." *Ameripay, 334 F. Supp. 2d at 633* (citing *Mellon Bank (East) PFSF, Nat'l Assoc. v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992))*.

"There are two distinct theories under which personal jurisdiction can arise: general and specific." *Allaham v. Naddaf, 635 F. App'x 32, 37-38 (3d Cir. 2015)*. Plaintiff **[*6]** argues only for the existence of specific jurisdiction in this case, and requests, if the Court finds specific jurisdiction to be absent, that the Court grant jurisdictional discovery concerning general jurisdiction over Defendant Seli. The Court considers Plaintiff's specific jurisdiction and jurisdictional discovery arguments in turn.

## III. ANALYSIS

### A. Specific Jurisdiction

#### 1. Threshold Matters

##### a. Plaintiff's Failure to Provide Competent Evidence

At the outset, the Court observes that, in opposition to Defendant Seli's motion, Plaintiff has broken with the well-established precedents in the Third Circuit, and chosen not to offer any affidavits or other competent evidence that jurisdiction is proper, instead relying upon the allegations in the Amended Complaint alone. *Metcalfe, 566 F.3d at 331*. Defendant too has declined to offer additional facts beyond the Amended Complaint in support of its motion. This Court's determination of whether Plaintiff has established a prima facie case for personal jurisdiction, therefore, is confined to the allegations of the Amended Complaint, presenting Plaintiff with a significant hurdle in meeting its burden. *See, e.g., Patterson, 893 F.2d at 604*, (plaintiff "must sustain its burden of proof in establishing **[*7]** jurisdictional facts through sworn affidavits or other competent evidence; *reliance on the bare pleadings is not enough*.") (emphasis added).

##### b. General Jurisdiction Not Alleged or Argued

As another threshold matter, in opposition to Defendant Seli's motion, Plaintiff does not claim to have set forth a prima facie case of general jurisdiction. Plaintiff's Opp. Br. at 5. Even if Plaintiff had attempted to do so, it is clear on face of the Amended Complaint that the Court does not possess general jurisdiction over Seli. General jurisdiction refers to a court's power to "hear any and all claims" against an out-of-state defendant when its "affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State." *Daimler AG v. Bauman, U.S. , 134 S.Ct. 746, 751, 187 L. Ed. 2d 624 (2014)*; *see also Goodyear Dunlop Tires Operations, S.A. v.*

*Brown, 564 U.S. 915, 131 S.Ct. 2846, 2851, 180 L. Ed. 2d 796 (2011)*. For a corporation the "paradig[m] . . . bases for general jurisdiction" are its place of incorporation and principal place of business. *Daimler AG, 134 S.Ct. at 760* (citation omitted). However, that does not mean that "a corporation may be subject to general jurisdiction *only* in a forum where it is incorporated or has its principal place of business." *Ibid.* The question is "whether that corporation's 'affiliations with the State are so 'continuous [*8] and systematic' as to render [it] essentially at home in the forum State.'" *Id.* (quoting *Goodyear, 134 S.Ct. at 2851*). *See also Display Works, LLC v. Bartley, 182 F. Supp. 3d 166, 173 (D.N.J. 2016)* (same). Still, it is only in an "exceptional case" that "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler AG, 134 S. Ct. at 761 n. 19*.

The only allegations that could reasonably be construed to attempt to support general jurisdiction in this case are Plaintiff's claim that "Defendants, Seli and Seli USA regularly arrange for importation of goods into the United States and regularly conduct business at the ports located in Newark, NJ," and Plaintiff's claim that Seli contracted with Saverglass and Global Wine, two New Jersey entities. Am. Compl., ¶¶ 7, 10, 11. It is well-established that unrelated business contacts, like those alleged for the importation of goods to Newark, without more, do not create personal jurisdiction. *Daimler AG, 134 S. Ct. at 757* (purchase contracts, "even if occurring at regular intervals" were "not enough to warrant a State's assertion of *in personam* jurisdiction over a nonresident corporation "in a cause of action not related to those purchase transaction[s].") (quoting **[*9]** *Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 418, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984))*. Moreover, even faced with contracts related to, but not serving as the basis of the plaintiff's underlying claim, like Seli's contracts with Saverglass and Global Wine in this case,[4] courts cannot find general jurisdiction in the absence of supporting facts or allegations showing *continuous contacts. See, e.g., Kabbaj v. Simpson, 547 F. App'x 84, 87 (3d Cir. 2013)* ("Furthermore, while [plaintiff] asserted that [defendant] has continuous contacts with Delaware because of his contract . . . [with] another Delaware corporation, merely

contracting with a Delaware corporation does not provide the necessary connection for the exercise of jurisdiction. . . . "[N]othing in the record suggests that [defendant] makes regular sales or earns substantial revenue from [products] sold and shipped to Delaware. At all events, [plaintiff] has failed to demonstrate that [defendant] has continuous and systematic contacts with Delaware permitting an exercise of general jurisdiction."). Accordingly, as the Third Circuit has observed, where, as here, "a defendant's contacts 'plainly [do] not approach' the quantity required for general jurisdiction, this Court need not inquire as to the other means by which a defendant can satisfy general jurisdiction." *Allaham v. Naddaf, 635 F. App'x 32, 38 (3d Cir. 2015)*.

## 2. Specific [*10]  Jurisdiction Not Proven

In the absence of "continuous and systematic" contacts warranting the exercise of general jurisdiction, a plaintiff may rely on "specific jurisdiction" where the cause of action is related to, or arises out of, the defendant's contacts with the forum. *IMO Indus., 155 F.3d at 259* (citing *Helicopteros, 466 U.S. at 414 n.8*). Plaintiff contends that there is specific jurisdiction over Seli in this case. Establishing specific jurisdiction under the *Due Process Clause* requires satisfaction of a three-part test. *O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 317 (3d Cir. 2007)*; *Oticon, Inc. v. Sebotek Hearing Sys., LLC, 865 F.Supp.2d 501, 510 (D.N.J. 2011)*.

First, the defendant must have "purposefully directed [its] activities" at the forum. *Burger King v. Rudzewicz, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)* (quotation marks omitted). Second, the litigation must "arise out of or relate to" at least one of those activities. *Helicopteros, 466 U.S. at 414*; *Grimes v. Vitalink Communications Corp., 17 F.3d 1553, 1559 (3d Cir. 1994)*. And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" *Burger King, 471 U.S. at 476* (quoting *Int'l Shoe, 326 U.S. at 320*).'

### a. Purposeful Direction of Minimum Contacts

The first prong of the test for specific jurisdiction requires Defendant to have purposefully directed his activities at New Jersey. The "purposefully directed" contacts must be created by the defendant himself with the forum state, not by the Plaintiff or a third party.

---

[4] I explain why the contracts with the New Jersey entities are not the basis of Plaintiff's claims in my consideration of specific jurisdiction, *infra*.

*Walden v. Fiore, U.S. , , 134 S.Ct. 1115, 1122, 188 L.Ed.2d 12 (2014)*. The court must bear in mind that the defendant **[*11]** must have "'purposefully avail[ed] [himself] of the privilege of conducting activities within the forum'" before specific jurisdiction arises. *O'Connor, 496 F.3d at 317* (quoting *Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958))*. "[P]hysical presence in the forum is no[t] . . . determinative" "mail and wire communications can constitute purposeful contacts when sent into the forum." *Telcordia Tech Inc. v. Telkom SA Ltd., 458 F.3d 172, 177 (3d Cir. 2006)*.

Here, Plaintiff contends that Seli purposely availed itself of the protections and jurisdiction of this Court when it "reached into New Jersey and hired Global Wine, . . . a New Jersey company to facilitate the transportation of goods." Opp. Br. at 5.[5] Plaintiff's specific jurisdiction argument thus relies exclusively on the alleged fact that Seli "purposely and intentionally contracted with a New Jersey entity." *Id.* at 7. In support of its argument, Plaintiff relies upon the decision of the Western District of Pennsylvania in *Zippo Mfg. Co. v. Zippo Dot Com. Inc., 952 F. Supp. 1119 (W.D. Pa. 1997)*, as favorably reviewed by the Third Circuit in *Toys "R" Us, 318 F.3d at 454*. Plaintiff contends that these cases stand for the proposition that "the defendant's intentional choice to conduct business with the residents of the forum state," should be the pivotal inquiry in specific jurisdiction analysis. Opp. Br. at 7. Plaintiff, however, reads too much into these decisions.

The district court in *Zippo* held that "even **[*12]** a single contact *can be* sufficient" to establish personal jurisdiction, because "[t]he test has always focused on the 'nature and quality' of the contacts with the forum and not the quantity of those contacts." *Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1127 (W.D. Pa. 1997)* (emphasis added). That court did not hold, as Plaintiff suggests, that so long as a defendant's single business contact with the forum is sufficiently intentional and deliberate that contact *is sufficient* to establish specific jurisdiction. The portion of the Third Circuit's

---

[5] Defendant's motion confines its discussion of the first-prong specific jurisdiction analysis to a different contract, contending that Seli's "only connection with New Jersey is its contract with New Jersey resident Saverglass." Mot. Br. at 10. As the Court observed above, however, construing the pleadings in the light most favorable to Plaintiff, and being mindful of Plaintiff's initial burden, the Court evaluates Plaintiff's argument that the Seli-Global Wine contract is the relevant connection to the forum, not the Seli-Saverglass contract.

decision in *Toys "R" Us*, citing *Zippo*, clearly explains this distinction.

> Thus far, [plaintiff] has not shown that [defendant] maintained the type of contacts that supported jurisdiction in [a prior Third Circuit case]—*i.e.*, that the defendant intentionally and knowingly transacted business with residents of the forum state, *and had significant other contacts with the forum* besides those generated by its web site. This limited record does not provide an occasion for us to spell out the exact mix of Internet and non-Internet contacts required to support an exercise of personal jurisdiction. That determination should be made on a case-by-case basis by assessing the "nature and quality" of the contacts. *Zippo, 952 F. Supp. at 1127* (quoting **[*13]** *Int'l Shoe, 326 U.S. at 320, 66 S.Ct. 154, 90 L. Ed. 95*).

*Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 453 (3d Cir. 2003)* (emphasis added). Accordingly, in addition to dealing with an issue of internet contacts not relevant to this case, the Third Circuit was clear that its prior precedent found specific jurisdiction where the plaintiff showed both that the defendant intentionally and knowingly transacted business with residents of the forum state and that the defendant had significant other contacts with the forum. Plaintiff would have this Court focus exclusively on the former and fails to supply competent evidence of the latter.

Since *Toys "R" Us*, the Third Circuit has more fully explained the additional factual showing required of plaintiffs where minimum contacts with the forum are premised on a contract alone. The law is well-settled that "[t]he mere existence of a contract is insufficient to establish minimum contacts." *Budget Blinds, Inc. v. White*, 536 F.3d 244, 261 (3d Cir. 2008). Plaintiff may, however, prove sufficient contacts with the forum state on the basis of a single contract by providing factual support for the "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Ibid.* See also *LaSala v. Marfin Popular Bank Pub. Co., 410 F. App'x 474, 477 (3d Cir. 2011)* (although plaintiffs asserted that defendant contracted with a New Jersey resident, **[*14]** "they provide[d] no further allegations regarding what obligations were undertaken as part of the . . . relationship, where these obligations were negotiated, or where they were to be performed. . . . The District Court did not err in determining that [plaintiffs] had not established a prima facie case of personal jurisdiction based upon a purposeful availment

theory.").[6]

In opposition to Defendant Seli's motion, Plaintiff has declined to provide the Court with additional relevant facts along these lines. There are no facts regarding where the agreements were negotiated, or where, specifically, they were to be performed, or any other course of dealing between the parties. Indeed, those facts that are alleged in the Amended Complaint weigh against finding contacts with New Jersey, most saliently the fact that Seli's contract with Global Wine appears to have concerned the domestic transportation of goods arriving at the port of Charleston, South Carolina, not Newark, New Jersey. ¶¶ 10, 11. It is never alleged in the Complaint that the goods transported ever entered this State, nor that any other part of the performance of the Seli-Global Wine contract took place here. **[*15]** *See, e.g.*, ¶ 11 & 14 (Global Wine was hired to handle "domestic" transportation of goods and later contracted with Plaintiff for transportation of goods within the "United States," not specifying New Jersey); ¶ 17 (Plaintiff transported goods to their "destination," again not specifying any connection to the forum).

In the absence of any competent evidence from Plaintiff, therefore, the Court finds that Plaintiff has failed to set forth a prima facie case that Defendant Seli's alleged contract with Global Wine alone establishes the minimum contacts with New Jersey necessary to

_____

[6] This Court observes that all of the "single contract" cases in this Circuit fundamentally rely upon the Supreme Court's holding in *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478-79, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)*, where the Court held that "[i]f the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot," and instead endorsed a "highly realistic" approach that recognizes that a contract is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Ibid.* The Court concluded that "[i]t is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Ibid. Burger King* and many of its progeny deal with single contracts between the defendant and the plaintiff in a given case. The facts of the present case thus present an even more attenuated argument for specific jurisdiction as Plaintiff relies upon a contract between defendants made prior to the contract between Plaintiff and Global Wine under which Plaintiff is allegedly owed money.

support specific jurisdiction.

### b. Arising Out of or Relating To Contacts with the Forum

"[T]he second element of *O'Connor*, . . . requires a showing that the plaintiffs' claims must 'arise out of or relate to' at least one of the contacts with the forum. While not adopting a bright-line test to determine if this element is satisfied, [the Third Circuit] ha[s] nevertheless held that satisfying this element 'requires a closer and more direct causal connection than that provided by the but-for test.'"[7] *HS Real Co., LLC v. Sher, 526 F. App'x 203, 206 (3d Cir. 2013)* (quoting *O'Connor, 496 F.3d at 323*). In other words, the second-prong analysis of courts in this Circuit "begins with but-for causation, but does not **[*16]** end there." *Colvin v. Van Wormer Resorts, Inc., 417 F. App'x 183, 187 (3d Cir. 2011)* (quotation omitted). "The inquiry is fact-sensitive, and should "hew closely to the reciprocity principle upon which specific jurisdiction rests." *Ibid.* (quotation omitted).[8]

Plaintiff contends that "[t]he present litigation arises directly out of Movant's agreement with a New Jersey entity," namely Seli's contract with Global Wine. Opp. Br. at 8. Seli's contract with Global Wine is, technically, a "but-for" cause of Plaintiff's alleged injury in that if not for Seli's contracting with Global Wine to provide transportation services, Global Wine would never **[*17]** have contracted with Plaintiff to provide those services,

_____

[7] As the name indicates, the "but-for" "standard is satisfied when the plaintiff's claim would not have arisen in the absence of the defendant's contacts." *O'Connor, 496 F.3d at 319*.

[8] In *O'Connor*, the Third Circuit explained the reciprocity principle as follows:

> With each purposeful contact by an out-of-state resident, the forum state's laws will extend certain benefits and impose certain obligations. . . . The relatedness requirement's function is to maintain balance in this reciprocal exchange. In order to do so, it must keep the jurisdictional exposure that results from a contact closely tailored to that contact's accompanying substantive obligations. The causal connection can be somewhat looser than the tort concept of proximate causation, . . . but it must nonetheless be intimate enough to keep the quid pro quo proportional and personal jurisdiction reasonably foreseeable.

*O'Connor, 496 F.3d at 323*.

and Plaintiff would never have accumulated unpaid invoices. The Seli-Global Wine contract, however, fails to reach the level of "more direct causal connection" required to establish specific jurisdiction. Although Count V of the Complaint, the only Count raised against Defendant Seli, purports to be based on some theory of shared liability among defendants to pay for Plaintiff's services, the only contractual obligation to pay Plaintiff that the Amended Complaint identifies is the obligation of Global Wine in its contract with Plaintiff, not Seli in its contract with Global Wine. Moreover, in Count V, Plaintiff does not purport to be able to enforce the Seli-Global Wine agreement as a signatory or third-party beneficiary. Simply stated, Count V does not purport to be a contract claim at all. Plaintiff has thus not presented any legally cognizable theory of how its equitable claim against Seli in Count V "arises from" Seli's contract with Global Wine.

Plaintiff perhaps attempts to provide such a theory on a narrower basis with its allegation that Defendant Anita McNeil represented to Plaintiff that Plaintiff's invoices were not [*18] paid by Global Wine because Global Wine's invoices to its "customers" had not been paid. Am. Compl. at ¶ 44. Presuming that "customers," a term undefined in the Amended Complaint, refers to, among others, Seli, then Plaintiff's theory would be that but for Seli's failure to pay Global Wine, Global Wine would have paid Plaintiff. The Court must first observe that while this theory is heavily implied in the Amended Complaint and Plaintiff's opposition to the present motion, it is never clearly articulated, and on that basis alone fails to establish a prima facie case of specific jurisdiction. Even allowing Plaintiff to argue by implication, however, Plaintiff's theory fails even the "but-for test" of causation. There are simply too many intervening factors, most important among which are Global Wine's independent agency in determining whether and how much to pay Plaintiff and the independent agency of Global Wine's other customers in determining whether and how much to pay Global Wine, to say that but for Seli's individual failure to pay Global Wine, Plaintiff would have been paid some amount of its outstanding invoices. This Court thus need not determine whether Seli's alleged failure [*19] to pay reaches the "something more" level of causation required for specific jurisdiction under *O'Connor*, because Plaintiff's allegations do not meet the more inclusive "but-for test" that the Third Circuit has found inadequate and overly broad.

As neither of the other two prongs are met, the Court does not consider whether an exercise of specific jurisdiction in this case would comport with notions of fair play and substantial justice. *Burger King, 471 U.S. at 476.* Accordingly, the Court finds that Plaintiff has failed to state a prima facie case that Count V arises out of or relates to Defendant Seli's contract with Defendant Global Wine. Plaintiff therefore has failed to meet its burden on Defendant's 12(b)(2) motion, and the Complaint against Seli will be dismissed for lack of personal jurisdiction.

**B. Jurisdictional Discovery**

Plaintiff contends that if Plaintiff's position on specific jurisdiction is determined by this Court to be insufficient, then jurisdictional discovery into the presence of general jurisdiction over Seli should be permitted. Opp. Br. at 9. "The Supreme Court instructs that 'where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues.'" [*20] *Metcalfe, 566 F.3d at 336* (quoting *Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 n. 13, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978)).* Jurisdictional discovery may be particularly appropriate where the defendant is a corporation. *Metcalfe, 566 F.3d at 336.*

In explaining the applicable standard, the Third Circuit has further held that if "'the plaintiff's claim is not clearly frivolous [as to the basis for personal jurisdiction], the district court should ordinarily allow discovery on jurisdiction in order to aid the plaintiff in discharging that burden.'" *Metcalfe, 566 F.3d at 336* (quoting *Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances, 723 F.2d 357, 362 (3d Cir. 1983)).* "If a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state,' the plaintiff's right to conduct jurisdictional discovery should be sustained." *Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003)* (modifications in original) (quoting *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir.1992)).*

"A plaintiff may not, however, undertake a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery." *Eurofins Pharma US Holdings v. BioAlliance Pharma SA, 623 F.3d 147, 157 (3d Cir. 2010).* "[A] mere unsupported allegation that the defendant 'transacts business' in an area is 'clearly frivolous.'" *Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 107 F.3d 1026, 1042 (3d Cir. 1997).* Here, as discussed above, the only facts alleged in

support of either specific or general jurisdiction in this case, other than Defendant Seli's contracts **[\*21]** with its New Jersey-based codefendants, is the lone allegation that "Defendants, Seli and Seli USA regularly arrange for importation of goods into the United States and regularly conduct business at the ports located in Newark, NJ." Am. Compl., ¶ 7. This lone, unsupported statement does not merit a fishing expedition into Seli's operations. Although the Court is mindful of the permissive standard for the grant of jurisdictional discovery, I find that this is one of the facially insufficient cases in which such discovery into Plaintiff's conclusory allegation would be unwarranted. *See, e.g.*, *Kabbaj v. Simpson, 547 F. App'x 84, 86 n.5 (3d Cir. 2013)* ("The District Court's denial of . . . discovery was not an abuse of discretion because . . . [plaintiff] failed to make out a prima facie case that could justify jurisdictional discovery."). Plaintiff's request for jurisdiction discovery is therefore denied.

## IV. CONCLUSION

For the foregoing reasons, Defendant Seli's motion to dismiss, pursuant to *Fed. R. Civ. P. 12(b)(2)* is granted.

Dated: 3/29/2017

/s/ Freda L. Wolfson

The Honorable Freda L. Wolfson

United States District Judge

**End of Document**

ℹ️ Cited
As of: October 22, 2020 1:03 PM Z

## *Gray v. Apple Inc.*

United States District Court for the District of New Jersey

August 3, 2016, Decided; August 3, 2016, Filed

No. 13-cv-7798 (KM) (MAH)

**Reporter**
2016 U.S. Dist. LEXIS 101870 *

TERELL GRAY, Plaintiff, v. APPLE INCORPORATED, et al., Defendants.

**Notice:** NOT FOR PUBLICATION

## Core Terms

venue, omissions, convenience

**Counsel:** **[*1]** For TARGET, Movant: CHRISTOPHER EUGENE MCINTYRE, LEAD ATTORNEY, FISHMAN MCINTYRE P.C., EAST HANOVER, NJ.

For TERELL GRAY, Plaintiff: JAVONNA C. BAKER, TRACEY S. COSBY, LEAD ATTORNEYS, EAST ORANGE, NJ.

For APPLE, INCORPORATED, also known as APPLE, INC., Defendant: JILL LEIGH BERRY, THOMAS M. CRISPI, LEAD ATTORNEYS, SCHIFF HARDIN LLP, NEW YORK, NY.

For KELLEY DORGAN, GREG HOPSON, Defendants: JILL LEIGH BERRY, LEAD ATTORNEY, SCHIFF HARDIN LLP, NEW YORK, NY.

**Judges:** Hon. Kevin McNulty, United States District Judge.

**Opinion by:** Kevin McNulty

## Opinion

**KEVIN MCNULTY, U.S.D.J.:**

This matter comes before the Court on the motion (ECF No. 46) of defendant Apple Incorporated to dismiss the Amended Complaint ("AC", ECF No. 4) for lack of personal jurisdiction and failure to state a claim or, in the alternative, to transfer venue to the Northern District of California, pursuant to *28 U.S.C. § 1404*. Because Mr. Gray has failed to meet his burden of establishing personal jurisdiction, and because everything significant about this case arises from an altercation between the plaintiff, Mr. Gray, and the employees of an Apple store in Berkeley, California, the action will be dismissed and venue will be transferred.[1]

### I. The Amended Complaint

The plaintiff, Terell Gray, is a resident of Essex County, New Jersey. (AC ¶ 1) He is African-American, a fact of relevance to his claims. Apple, Inc. is a California corporation with its principal place of business at Cupertino, California. Apple operates approximately 500 retail stores in many states, including California and

_____

[1] Apple originally moved to dismiss in May **[*2]** 2014. Thereafter, Mr. Gray's counsel withdrew, and considerable delay ensued. Eventually, the Court issued an order to show cause why the action should not be dismissed for want of prosecution. In November 2015, plaintiff secured substitute counsel, and the court instructed Apple to refile its motion.

New Jersey. (AC ¶ 2) Defendants Kelley Dorgan and Greg Hopson (who have not been served) are employees or managers of the Apple Store in Berkeley, California. (AC ¶¶ 4, 5) Berkeley is a city in California; defendant Timothy Kaplan is a police officer of the Berkeley Police Department. (AC ¶¶ 6, 7) Subject matter jurisdiction is premised on diversity of citizenship and an amount in controversy in excess of $75,000. (AC ¶¶ 11, 12)See _28 U.S.C. § 1332_. I note, however, that the complaint also asserts federal civil rights claims, giving rise to federal question **[*3]** jurisdiction. _See 28 U.S.C. § 1331_ (federal question subject matter jurisdiction).

The complaint alleges that in December, 2012, Mr. Gray bought an Apple MacBook computer at Best Buy. It arrived, he alleges, with a cracked screen. He telephoned his complaint to Apple and received a case number. On December 31, 2012, he went to the Apple store in Berkeley, California to return or exchange the computer. (AC ¶¶ 18-22)

He approached an employee and sought to return the computer; the employee refused. The implication is that the employee concluded or assumed that the computer was stolen. Two police officers approached. They asked the Apple employee if he wished for Mr. Gray to leave, and the employee said yes. Mr. Gray was escorted from the store and handcuffed. He was taken to John George Hospital, a psychiatric institution, and later released. The complaint alleges on information and belief that a white customer returned a computer to the store at about the same time, without incident. (AC ¶¶ 24-39)

Upon his release from the hospital, on January 1, 2013, Mr. Gray returned to the Apple store. The police were called again, based on the belief that the computer was stolen. Mr. Gray was held for several days, **[*4]** and then transferred again to John George Hospital for over two weeks. On his release, he decided to travel to New Jersey. There, he followed up with physicians and was committed to Trenton Psychiatric Hospital for two months. (AC ¶¶ 40-45)

In New Jersey, an unnamed woman successfully exchanged the same MacBook computer at an Apple store. (AC ¶ 46)

The complaint alleges claims of discrimination under _42 U.S.C. § 1983_, _42 U.S.C. § 1981_, _42 U.S.C. § 1982_, _42 U.S.C. § 1985(3)_, and the California Human Rights Law, as well as tort claims of false imprisonment, assault and battery, negligent hiring, training and supervision, and

intentional infliction of emotional distress.[2]

## II. Discussion

### A. Personal jurisdiction

Once a defendant files a motion to dismiss for lack of personal jurisdiction pursuant to _Federal Rule of Civil Procedure 12(b)(2)_, the plaintiff bears the burden of establishing sufficient facts to show that jurisdiction exists. _Marten v. Godwin, 499 F.3d 290, 295-96 (3d Cir. 2001)_. Absent discovery and an evidentiary hearing, a court must accept the plaintiff's allegations as true and construe **[*5]** disputed facts in favor of the plaintiff, _Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 368 (3d Cir. 2002)_; _see also Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004)_ (plaintiff "need only establish a prima facie case of personal jurisdiction").[3] Here, because I resolve this issue without discovery or an evidentiary hearing, I construe the allegations and facts proffered in the light most favorable to the plaintiff.

> Nevertheless, "the plaintiff bears the burden of showing the basis for jurisdiction," _Graphics Props. Holdings, Inc. v. ASUS Computer Int'l, 70 F. Supp. 3d 654, 659, 2014 WL 4949589, at *2 (D. Del. 2014)_, and must establish "with reasonable particularity sufficient contacts between the defendant and the forum state." _Mellon Bank (E) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir.1992)_.

---

[2] Plaintiff acknowledges that Counts 1, 5, 6, and 7 (_§ 1983_, California Human Rights Law, false imprisonment, assault and battery) are not directed at Apple, but at the Berkeley police, and consents to their dismissal as against Apple. (Pl. Brf., ECF no. 48 at 6)

[3] Once a _Rule 12(b)(2)_ motion to dismiss has been made, the court must examine any evidence presented with regard to disputed factual allegations. _See, e.g., Eurofins Pharma US Holdings v. BioAlliance Pharma SA, 623 F.3d 147, 155-56 (3d Cir. 2010)_ (examining the evidence supporting the plaintiff's allegations). "Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." _Patterson v. FBI, 893 F.2d 595, 603-04 (3d Cir. 1990)_ (quoting _Time Share Vacation Club v. Atl. Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984)_).

*Otsuka Pharmaceutical Co. v. Mylan Inc., 106 F. Supp. 3d 456, 461-62 (D.N.J. 2015)*.

To assess whether it has personal jurisdiction over a defendant, a district court must undertake a two-step inquiry. *IMO Indus., Inc. v. Kiekert, AG, 155 F.3d 254, 259 (3d Cir. 1998)*. First, the court is required to use the relevant state's long-arm statute to see whether it permits the exercise of personal jurisdiction. *Id.*; *Fed. R. Civ. P. 4(k)*. "Second, the court must apply [*6] the principles of due process" under the federal Constitution. *WorldScape, Inc. v. Sails Capital Mgmt., Civ. 10-4207, 2011 U.S. Dist. LEXIS 86643, 2011 WL 3444218 (D.N.J. Aug. 5, 2011)* (citing *IMO Indus., 155 F.3d at 259*). In New Jersey, the first step collapses into the second because "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Miller Yacht Sales, 384 F.3d at 96* (citing *N.J. Ct. R. 4:4-4(c)*). Accordingly, personal jurisdiction over a non-resident defendant is proper in this Court if the defendant has "'certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Provident Nat'l Bank v. Cal. Fed. Say. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987)* (quoting *Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945))*.

There are two kinds of personal jurisdiction that allow a district court to hear a case involving a non-resident defendant: specific and general. *See Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-415 n. 9, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)*. Specific jurisdiction arises from the acts that give rise to the particular claim asserted; general jurisdiction exposes the defendant to jurisdiction for any and all claims.

Specific jurisdiction relies on the defendant's forum-related activities that give rise to the plaintiff's claims. *See Helicopteros, 466 U.S. at 413-14*. Establishing specific jurisdiction requires a three-part inquiry: (1) whether the defendant purposefully directed its activities [*7] at the forum; (2) whether the litigation arises out of or relates to at least one of the contacts; and (3) whether the exercise of jurisdiction otherwise comports with traditional notions of fair play and substantial justice. *O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007)*. Plaintiff does not argue that the court possesses specific jurisdiction, and the issue may be disposed of quickly. The refusal to exchange the computer and the detention of the plaintiff

took place at the Apple store in Berkeley, California. Every allegedly wrongful act by Apple and its employees took place in California. No allegedly wrongful act took place in New Jersey.

What Mr. Gray is claiming is that this court possesses general jurisdiction over Apple because of its nationwide business activities.[4] To support general jurisdiction, the defendant's "contacts [with the forum state] need not relate to the subject matter of the litigation," *Ameripay, LLC v. Ameripay Payroll, Ltd., 334 F. Supp. 2d 629, 633 (D.N.J. 2004)*, but must rise to "a 'very high threshold of business activity,'" *id. at 633* (quoting *Compagnie des Bauxites de Guinea v. Ins. Co. of N. America, 651 F.2d 877, 891 (3d Cir. 1981))*.

Just how high was recently [*8] established by the U.S. Supreme Court in the watershed case of *Daimler AG v. Bauman,     U.S.    , 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014)*. *Daimler* held that it is not sufficient for corporate defendants be engaged in a "substantial, continuous, and systematic course of business" in the forum state. That formulation, said the Court, "is unacceptably grasping." *Id. at 761*. Rather, the court must determine "whether that corporation's 'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State.'" *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796 (2011))*. For a corporation, what does "at home" mean? *Daimler* "d[id] not foreclose the possibility that in an exceptional case ... a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Id. at 761 n.19*. The clear implication of is that, except perhaps in an "exceptional case," a corporation will be deemed to be "at home" only in its state of incorporation and its principal place of business. These "paradigm," "easily ascertainable" forums "afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims." *Id. at 760*. Courts [*9] within this district, interpreting *Daimler*, have agreed. *Display Works, LLC v. Bartley, 182 F. Supp. 3d 166, No. CV 16-583, 2016 U.S. Dist. LEXIS 55136, 2016 WL 1644451, at *3-4 (D.N.J. Apr. 25, 2016)*; *Otsuka, 106 F. Supp. 3d at 464-*

---

[4] The relevant point of plaintiff's brief, Point VI, is entitled "Defendant's Motion to Dismiss the Complaint for Lack of Personal Juridiction Must be Denied as General Jurisdiction is Found". (Pl. Br., ECF no. 50 at 16)

*65*.

Plaintiff proffers that Apple has 12 stores in New Jersey, that it ships its products here, and that its sales to New Jersey customers amount to $182.8 billion, according to a 2015 press release. (ECF no. 50 at 17)[5] If these contacts mean that Apple is subject to jurisdiction here, then it probably would be subject to jurisdiction everywhere. The only contact between this case and New Jersey is that the plaintiff, following the California events giving rise to the action, traveled back to New Jersey and sued here. The plaintiff has not set forth sufficient facts to indicate that Apple is "at home" in New Jersey or "exceptional" indications that it should reasonably expect to be haled into a New Jersey court (especially with respect to the on-site conduct of its store employees in California). In my view, these business contacts, although obviously substantial, continuous, and systematic, do not displace the paradigm, default rule of *Daimler*.

Apple's motion to dismiss for lack of personal jurisdiction is therefore granted. The matter, however, is not free from doubt. Although plaintiff does not say so in so many words, I cannot ignore that, measured by market capitalization, Apple is the largest publicly traded corporation in the world, and that its national, not to say global, presence is pervasive.[6] I therefore consider in the alternative the transfer of venue to the Northern District of California.


**B. Transfer of Venue**

The venue analysis gets me to much the same place. First, I optionally transfer venue from this district, which does not have personal jurisdiction, to the Northern District of California, which indisputably does. Second, I find that venue in this district is improper, and transfer the case on that basis. And third, I grant Apple's motion for a discretionary transfer of venue.

─────────────────────────────

[5] Plaintiff also cites two cases in which Apple has been sued in the District of New Jersey. However persuasive as evidence of "contacts," these do not constitute precedent **[*10]** for the assertion of general jurisdiction. As Apple points out, both were patent cases in which the infringement occurred in New Jersey, so they do not support general jurisdiction. (Def. Reply Brf., ECF no. 51 at 9)

[6] *See* FT 500, *www.ft.com/cms/s/2/* lfda5794-169f-11e5-b07f-00144feabdc0.html#axzz4GHZ5J0vN.


**1. Transfer based on lack of personal [*11] jurisdiction**

First, "[a] court without personal jurisdiction over the defendants or venue over a case has the option of dismissing the action or transferring the case to another district pursuant to *28 U.S.C. § 1406(a)*." *China Am. Co-op. Auto., Inc. v. Estrada Rivera Enterprises Corp., No. 07-5156, 2008 U.S. Dist. LEXIS 5928, 2008 WL 305744 (D.N.J. Jan. 28, 2008)* (citing *Goldlawr v. Heiman, 369 U.S. 463, 82 S. Ct. 913, 8 L. Ed. 2d 39 (1962)*).

Because the withdrawal of plaintiff's counsel has caused significant delay, which I do not wish to compound, I will transfer venue to minimize the time lag of refiling and starting over in the proper forum. Should the plaintiff decline to prosecute the case in California, dismissal is easily accomplished, but he will have had his chance.


**2. Transfer based on improper venue**

Second, and in the alternative, I find *sua sponte* that venue is improper in this district, and transfer for that additional reason.

*28 U.S.C. § 1391(b)* instructs that a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which any action may otherwise be brought as provided in this section, **[*12]** any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Alternatives (1) and (3) appear to have no application here. I consider, however, whether New Jersey is "(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." *Id.*

The Third Circuit has repeatedly held that "in determining whether a substantial part of the events or omissions giving rise to a cause of action occurred in a specific jurisdiction, [t]he test . . . is not the defendant's contacts' with a particular district, but rather the location of those events or omissions giving rise to the claim." *Bockman v. First Am. Mktg. Corp., 459 F. App'x 157,*

2016 U.S. Dist. LEXIS 101870, *12

*161 (3d Cir. 2012)* (not precedential; quoting *Cottman Transmission Systems, Inc. v. Martino, 36 F.3d 291, 294 (3d Cir. 1994))*. "'Pin assessing whether events or omissions giving rise to the [plaintiffs] claims are substantial, it is necessary to look at the nature of the dispute.'" *Id.* (quoting *Cottman, 36 F.3d at 295*). The Third Circuit has "observed that the venue provision 'favors the defendant in a venue dispute by requiring that the events or omissions supporting a claim be substantial, and that Islubstantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real **[*13]** relationship to the dispute." *Id.* (quoting *Cottman, 36 F.3d at 294* and citing *Leroy v. Great W. United Corp., 443 U.S. 173, 183-84, 99 S. Ct. 2710, 61 L. Ed. 2d 464 (1979))*.

Of course, a substantial part of the events in suit may have occurred in more than one district. The test still requires, however, that the New Jersey events or omissions have been "substantial." "Events or omissions that might only have some tangential connection with the dispute in litigation are not enough. Substantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute." *Cottman Transmission Sys., Inc. v. Martino, 36 F.3d 291, 294 (3d Cir. 1994)*.

Surveying a handful of cases decided by sister circuits, *Cottman* concluded:

> The test for determining venue is not the defendant's 'contacts' with a particular district, but rather the location of those "events or omissions giving rise to the claim," theoretically a more easily demonstrable circumstance than where a "claim arose." Although the statute no longer requires a court to select the "best" forum, the weighing of "substantial" may at times seem to take on that flavor.

*Id. Accord Bockman v. First Am. Mktg. Corp., 459 F. App'x 157, 161 (3d Cir. 2012)*. In addition, the Third Circuit instructed that when "assessing whether events or omissions giving rise to the claims are substantial, it is necessary to look at the nature of the **[*14]** dispute." *Cottman Transmission Sys., 36 F.3d at 295*. *See also Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 357 (2d Cir. 2005)* ("for venue to be proper, *significant* events or omissions *material* to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere").

Here, the venue test is not met. All of the events occurred in and around the Apple store in Berkeley, California. They did not involve anything remotely connected to New Jersey, did not arise from any sale of a product in New Jersey, and did not involve Apple's New Jersey operations in any way. The only connection between New Jersey and the events of the case is that, after the events in suit occurred in California, Mr. Gray traveled back to New Jersey and sued Apple here.

Mr. Gray alleges that, sometime after he returned to New Jersey, an unidentified person successfully returned the MacBook to an Apple store in New Jersey. That incident may furnish an instructive comparison, but it is no part of the events giving rise to his claim.

Venue is improper here. For the reasons stated above, I opt not to dismiss but to transfer venue to the Northern District of California pursuant to *28 U.S.C. § 1406(a)*.

### 3. Transfer for convenience of parties and witnesses

Finally, Apple moves to transfer venue under **[*15]** *28 U.S.C. § 1404(a)*. As a third alternative, I would grant that motion as well.

*Section 1404(a)* provides: "For the convenience of parties and witnesses, in the interest of justice, a ... court may transfer any civil action to any other district or division where it might have been brought." *28 U.S.C. § 1404(a)*. "*Section 1404(a)* transfers are discretionary determinations made for the convenience of the parties and presuppose that the court has jurisdiction and that the case has been brought in the correct forum." *Lafferty v. St. Riel, 495 F.3d 72, 76 (3d Cir. 2007)*. A court may make a discretionary *Section 1404(a)* determination, however, without first establishing personal jurisdiction. *See Lafferty, 495 F.3d at 80* (citing the holding in *United States v. Berkowitz, 328 F.2d 358 (3d Cir. 1964)* "that a *§ 1404(a)* transfer was available even though there was no personal jurisdiction.").

The Third Circuit, as well as courts within this Circuit considering motions for permissive transfer, have been guided by a number of non-exclusive public and private interest factors:

> The private interests have included: plaintiff's forum preference as manifested in the original choice, the defendant's preference, whether the claim arose elsewhere, the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but

only to the extent that the witnesses may actually **[\*16]** be unavailable for trial in one of the fora, and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion, the local interest in deciding local controversies at home; the public policies of the fora, and the familiarity of the trial judge with the applicable state law in diversity cases.

*Jumara v. State Farm Ins. Co., 55 F.3d 873, 879-80 (3d Cir.1995)* (internal citations omitted).

There is no dispute that venue would be proper in the Northern District of California under *28 U.S.C. § 1391(b)(1)*, *(2)*, or *(3)*, and that that court, no less than this, would possess subject matter jurisdiction under *28 U.S.C. §§ 1331* and *1332*. The plaintiff's choice of forum is New Jersey, but that arises solely from the happenstance that he moved back here after the events in suit. All, or virtually all, of the relevant facts concern events that occurred in Berkeley, California. Defendant's choice of forum is therefore not arbitrary, but is entitled to some weight. The defendants—including store employees, **[\*17]** and the police, who apparently have not even been served—are all located in California. The fact witnesses, or substantially all of them, are in California and subject to subpoena there. So, for what it is worth, are the documents (although modern communications have dissipated the significance of this factor). The law applicable to the tort claims will surely be California law, and California has a substantial interest in adjudicating this local event, involving a business and the conduct of a police department. On the other side is the obvious inconvenience to plaintiff (although that arose from his decision to move back to New Jersey before filing), and the extremely disparate financial resources of the parties. The public factor relating to expeditiousness and the enforceability of judgment also points to transfer: I refer to the fact that *in personam* is, at the very least, debatable. *See Schwilm v. Holbrook, 661 F.2d 12, 16 (3d Cir.1981))*. Other factors seem neutral.

All in all, the discretionary factors establish that the Northern District of California is a far more convenient venue than the District of New Jersey for litigation of this action. Pursuant to *28 U.S.C. § 1404(a)*, Apple's motion

to transfer venue is granted.

### III. Conclusion

Apple's motion **[\*18]** is **GRANTED** and venue is transferred to the Northern District of California pursuant to *28 U.S.C. §§ 1404* and *1406*.

Dated: August 3, 2016

/s/ Kevin McNulty

**Hon. Kevin McNulty**

**United States District Judge**

### ORDER

This matter comes before the Court on the motion (ECF No. 46) of defendant Apple Incorporated to dismiss the Amended Complaint ("AC", ECF No. 4) for lack of personal jurisdiction and failure to state a claim or, in the alternative, to transfer venue to the Northern District of California, pursuant to *28 U.S.C. § 1404*; and the plaintiff, Terrel Gray, by his counsel, Javonna C. Baker, Esq., having filed a response (ECF no. 50, as revised); and the defendant having submitted a reply (ECF no. 51); and the court having reviewed the submissions and the entire case file without oral argument, pursuant to *Fed. R. Civ. P. 78*; for the reasons expressed in the accompanying Opinion, and good cause appearing therefor;

IT IS this 3d day of August, 2016

ORDERED, pursuant to *28 U.S.C. § 1404(a)* and *28 U.S.C. § 1406(a)*, that venue of this action is transferred to the United States District Court for the Northern District of California.

The clerk shall close this District's case and transfer the file to the U.S. District Court for the Northern District of California.

/s/ Kevin McNulty

**Hon. Kevin [\*19]  McNulty**

**United States District Judge**

 Positive
As of: October 21, 2020 3:39 PM Z

## *Boswell v. Cable Servs. Co.*

United States District Court for the District of New Jersey

June 28, 2017, Decided; June 29, 2017, Filed

Civil Action No. 16-4498

**Reporter**
2017 U.S. Dist. LEXIS 100708 *; 2017 WL 2815077

NEWTON BOSWELL, Plaintiff v. CABLE SERVICES COMPANY, INC., KAREN FISCHER, JOSEPH CASCHERA, PAULETTE HENSLER, JOHN DOES 1-10, JANE DOES 1-10 (said names being fictitious and unknown), ABC COMPANY 1-10 (said names being fictitious and unknown), Defendants.

**Notice:** NOT FOR PUBLICATION

## Core Terms

Cable, registration, registered, appointment, flagger, quotation, hired

**Counsel:** **[*1]** For NEWTON BOSWELL, Plaintiff: ELDRIDGE HAWKINS, EAST ORANGE, NJ.

For CABLE SERVICES COMPANY, INC., KAREN FISCHER, JOSEPH CASCHERA, PAULETTE HENSLER, Defendants: GEORGE KAROUSATOS, LEAD ATTORNEY, BIANCAMANO & DI STEFANO, PC, EDISON, NJ.

**Judges:** John Michael Vazquez, United States District Judge.

**Opinion by:** John Michael Vazquez

## Opinion

**John Michael Vazquez, U.S.D.J.**

### I. INTRODUCTION

This matter comes before the Court on the above-captioned Defendants' motion to dismiss for lack of personal jurisdiction, to transfer due to improper venue, and to dismiss Plaintiffs claim under the New Jersey Law Against Discrimination ("LAD") for failure to state a claim. D.E. 4. The Court reviewed all submissions made in support and opposition, and considered the motion without oral argument pursuant to *L. Civ. R. 78.1(b)*. For the reasons that follow, Defendants' motion to dismiss for lack of personal jurisdiction is granted. As a result, the Court does not reach the motion to dismiss for improper venue or for failure to state a claim.

### II. FACTS[1] AND PROCEDURAL HISTORY

Defendant Cable Services Company, Inc. ("Cable Services" or "Defendant") is incorporated in Pennsylvania and has its principal place of business in Pennsylvania. D.E. 4-7 ("Fischer Cert.") **[*2]** ¶ 7; D.E. 4-4. Defendant Karen Fischer has always worked in Cable Services' office in Williamsport, Pennsylvania and, at all relevant times, been a Pennsylvania resident. D.E. 9-1 ("Fischer Supp. Cert.") ¶¶ 4-5. Defendants

---

[1] The facts of this matter derive from the Complaint and the affidavits submitted in support and opposition to this motion. As this is a motion to dismiss for lack of personal jurisdiction, the Court looks to facts beyond those alleged in the Complaint. *See Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996).*

Case 1:21-cv-02657-GBD   Document 12-1   Filed 10/26/20   Page 23 of 53

Page 2 of 7
2017 U.S. Dist. LEXIS 100708, *2

Joseph Caschera and Paulette Hensler no longer work for Cable Services, but at all relevant times, worked out of Cable Services' Williamsport, Pennsylvania office and were Pennsylvania residents.[2] Fischer Cert. ¶¶ 10, 12; Fischer Supp. Cert. ¶¶ 7-12. Plaintiff is a New Jersey resident. D.E. 5 at 5.

On December 7, 2009, Defendant Cable Services Company, Inc. ("Cable Services" or "Defendant") hired Plaintiff Newton Boswell to work as a "lineman." Compl. at 2. Cable Services is a full service provider of telecommunications that specializes in broadband infrastructure design and installation in the United States. Fischer Cert. ¶ 6. Plaintiffs duties as a lineman consisted of "installing lock boxes, frame poles strand and cables at job sites throughout the Pennsylvania and New York area." *Id.* ¶ 16. In 2010, Plaintiffs earnings were exclusively from jobs he performed in Pennsylvania. *Id.* at ¶ 18. In 2011, the majority of Plaintiff's job assignments were in New York, but [*3] some were in Pennsylvania. *Id.* ¶ 19. Thus, although Plaintiff lived in New Jersey, his work for Cable Services occurred in Pennsylvania and New York.

On July 6, 2011, Plaintiff injured his right knee while working at a project in New York. Compl. at 2. After two knee surgeries, Plaintiff returned to work on August 2, 2011 with modified duties. *Id.* On August 17, 2011, Plaintiff suffered a "serious" hand injury at work causing him to undergo two additional surgeries. *Id.*[3] The hand injury also occurred in New York.

On March 27, 2012, Plaintiff was examined by "the insurance company's"[4] independent medical examiner ("IME"). *Id.* at 3. On April 9, Plaintiff received the IME report, which concluded that Plaintiff was restricted to lifting no more than twenty pounds with his right hand. *Id.* at 4. On April 18, 2012, Plaintiff informed Cable Service's human resources manager that Plaintiff had been released back to work with restricted lifting duties for his right hand. *Id.*; Fischer Supp. Cert. ¶ 29.

Plaintiff alleges that Cable Services maintained a location in Sparta, New Jersey where he could have been assigned the light duty position known as a "finger." Compl. at 9. In the Complaint, Plaintiff does not state [*4] that he ever applied for the flagger position (or any other position in Sparta) or that such a position was available. In a certification submitted in opposition to Defendants' motion, Plaintiff claims that in March 2012, he asked Defendant Karen Fischer, Cable Services' human resources manager, for the flagger position in Sparta but that she denied his request "because [he] had been laid off and not returned to [his] job [for] over one year." D.E. 5-2 ("Boswell Cert.") ¶ 4; D.E. 10-1 ("Boswell Supp. Cert.") ¶ I. Plaintiff also states that he was denied the position because Cable Services "already had flaggers" and Plaintiff was not certified as a flagger. Boswell Supp. Cert. ¶ I. According to Defendants, "Cable Services never advertised for, nor hired any candidates for a [f]lagger or other light duty position at [the Sparta] location." Fischer Supp. Cert. ¶ 17. During the relevant timeframe, Cable Services placed advertisements for only three positions in Sparta, all of which were not "light duty" and required qualifications that Plaintiff did not possess. *Id.* ¶¶ 19-20. Ultimately, Cable Services did not assign Plaintiff to another position and their employer-employee relationship ended.[5]

Plaintiff filed a Complaint alleging the following eight causes of action: (1) "Gross negligence and/or negligence in the hiring, training, retaining, supervision, and retention of the Defendant[s] Karen Fis[c]her, Joseph L. Caschera, [and] Paulette Hensler," (2) "Conspiracy to commit acts and violate Plaintiffs' [sic] rights," (3) "Fraudulent concealment/misrepresentation," (4) "Intentional and/or negligent breach of fiduciary duty," (5) "Breach of statutory duty," (6) "Claim for violation of New Jersey Law Against Discrimination, *N.J.S.A. 10:5-1, et seq.*, *42 USCA 1981*, *1983*, *1985*, *1986*, *1988*[,] ADA, Title VII," (7) "Request for punitive damages," and (8) "Breach of implied covenant[] of good faith and fair dealing, intentional interference with beneficial economic expectations." Compl. at 13-25. Defendants filed a motion to dismiss for lack of personal jurisdiction, to transfer due to improper venue, and to dismiss Plaintiffs claim under the LAD for failure to state a claim.[6] Plaintiff filed an opposition and Defendants

---

[2] Defendants' public record search indicates that Caschera and Hensler still reside in Pennsylvania. Fischer Supp. Cert. ¶ 9, 12. Plaintiff has presented no evidence to the contrary.

[3] Plaintiff also refers to contracting Hepatitis B from a co-worker, *id.* at 3, but the Complaint is vague as to how this condition is relevant to Plaintiff's claims. The Complaint is not clear as to whether this condition is supposed to be a basis for Plaintiff's claims.

[4] It is not entirely clear from the Complaint who "the insurance company" is.

---

[5] The exact date that Plaintiff officially stopped working for Cable Services is not clear. [*5] *See, e.g.*, Compl. at 18.

[6] Defendants' brief and supporting papers in support of their motion to dismiss (D.E. 4) will be referred to as "Def. Br."

replied. Plaintiff then filed a sur-reply.[7]

## III. LAW AND ANALYSIS

### A. Standard of Review

In a motion to dismiss for lack of personal jurisdiction, the plaintiff "bears the burden of demonstrating the facts that establish" jurisdiction. [*6] *Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002)*. Initially, a court "take[s] the allegations of the complaint as true." *Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996)*. However, once a defendant raises a jurisdictional defense, "a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." *Id.; see also Time Share Vacation Club v. Atl. Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984)*. Yet, in reviewing the evidence, a court must "accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992)*; *see also Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330, 51 V.I. 1219 (3d Cir. 2009)* ("[I]t is well established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed factors in favor of the plaintiff") (internal quotation marks omitted). Therefore, in determining whether personal jurisdiction exists, the Court looks beyond the pleadings to all relevant evidence and construes all disputed facts in favor of the plaintiff.

### B. Personal Jurisdiction

"[A] federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007)* (quoting Provident *Nat'l Bank v. Cal. Federal Say. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir.1987))*. In New Jersey, "courts may exercise jurisdiction over a non-resident

---

[7] Plaintiff filed the sur-reply without leave of the Court. However, the Court subsequently granted Plaintiff leave to do so. D.E. 15.

Plaintiffs submissions in opposition (D.E. 5) will be called "Pl. Opp." Defendants' reply papers (D.E. 9) will be referred to as "De f. Rep." Plaintiffs sur-reply (D.E. 10) will be known as "Pl. Sur-Rep."

---

defendant to the uttermost limits permitted by the United [*7] States Constitution." *Nicastro v. McIntyre Mach. Am., Ltd., 201 N.J. 48, 72, 987 A.2d 575 (2010)* (internal quotation marks omitted), *rev'd on other grounds sub nom., J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 131 S. Ct. 2780, 180 L. Ed. 2d 765 (2011)*. "Accordingly, in determining whether personal jurisdiction exists, we ask whether, under the *Due Process Clause*, the defendant has certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 316 (3d Cir 2007)* (internal quotation marks omitted).

Personal jurisdiction may be established by means of general jurisdiction or specific jurisdiction over a defendant. *Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011)* (noting that "opinions in the wake of the pathmarking International Shoe decision have differentiated between general or all-purpose jurisdiction, and specific or case-linked jurisdiction"). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Daimler AG v. Bauman, 134 S. Ct. 746, 760, 187 L. Ed. 2d 624 (2014)*. "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Id.* (internal quotation marks omitted). A corporation's principal place of business is where the corporation's "affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State." *Id. at 761* (internal [*8] quotation marks omitted). Once general jurisdiction is established, a defendant can be sued in that jurisdiction on any matter. This is why general jurisdiction is referred to as "all-purpose" jurisdiction.

Specific jurisdiction requires that the defendant "has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)* (internal citations and quotation marks omitted). A court's exercise of personal jurisdiction "requires some act by which the defendant *purposefully avails* itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 880, 131 S. Ct. 2780, 180 L. Ed. 2d 765 (2011)* (emphasis added) (internal quotation marks omitted). Additionally, due process requires that "maintenance of the suit does not offend

'traditional notions of fair play and substantial justice." _Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)_ (quoting _Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945))_; _see also O'Connor, 496 F.3d at 316_ (discussing three-step process in determining personal jurisdiction). Importantly, "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." _World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)_. "[A] plaintiff's residence, by itself, is insufficient **[*9]** to establish personal jurisdiction" over a defendant. _Choi v. Damul Corp., No. 12-2440, 2014 U.S. Dist. LEXIS 10448, 2014 WL 314669, at *7 (D.N.J. Jan. 27, 2014)_. Once specific jurisdiction is established, a defendant can be sued in the jurisdiction only in the matter from which the jurisdiction arises. This is why specific jurisdiction is referred to as "case-linked" jurisdiction.

In this case, Plaintiff argues that the Court has both general and specific personal jurisdiction over Defendants. Pl. Opp. at 5, 8-10. As to the individual Defendants, Plaintiff makes no showing that any are domiciled in New Jersey, so the Court does not have general jurisdiction over them. As a result, the Court does not have general jurisdiction over the individual Defendants.

As to Cable Services, it is a Pennsylvania corporation whose principal place of business is also in that state. Thus, pursuant to the Supreme Court of the United States' analysis in _Daimler_, it does not appear that the Court has general jurisdiction over Cable Services either. _See Daimler AG, 134 S. Ct. at 760_. Nevertheless, Plaintiff contends that the Court has general personal jurisdiction over Defendants by virtue of Cable Services having registered to do business in New Jersey. Unfortunately, Plaintiff provides no legal authority to support his argument. Through **[*10]** its own research, the Court has determined that despite a split of authority in the District of New Jersey, the mere fact that Cable Services is registered to do business in New Jersey and appointed an agent to receive process does not mean that it is subject to general jurisdiction in New Jersey.

In _Otsuka Pharm. Co. v. Mylan Inc._, Chief Judge Simandle addressed the issue of whether a corporation's registration to do business and appointment of a registered agent for service of process in New Jersey means that the corporation consented to personal jurisdiction in New Jersey. _106 F. Supp. 3d 456, 467 (D.N.J. 2015)_. In relying on two Supreme Court cases from the first half of the twentieth century, Chief Judge Simandle concluded that "a corporation's appointment of an agent for service of process constitutes, under certain circumstances, consent to the forum's personal jurisdiction." _Id._ (citing _Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 60 S. Ct. 153, 84 L. Ed. 167 (1939)_; _Pa. Fire Ins. Co. of Phila. v. Gold Issue Mining & Milling Co., 243 U.S. 93, 95, 37 S. Ct. 344, 61 L. Ed. 610 (1917))_. The court reasoned that "in appointing an agent, a foreign corporation 'takes the risk of the construction that will be put upon the [registration] statute and the scope of the agency by the State Court.'" _Id. at 468_ (quoting _Robert Mitchell Furniture Co. v. Selden Breck Constr. Co., 257 U.S. 213, 216, 42 S. Ct. 84, 66 L. Ed. 201 (1921))_.

Additionally, Chief Judge Simandle relied on a decision from the Third Circuit, _Bane v. Netlink, Inc._, where the Court found **[*11]** that "by registering to do business in Pennsylvania, the defendant purposefully availed itself of the privilege of conducting activities within the forum State, th[u]s invoking the benefits and protections of its laws." _Otsuka Pharm., 106 F. 3d at 468_ (quoting _Bane v. Netlink, Inc., 925 F.2d 637, 640 (3d Cir. 1991))_. Finally, the _Otsuka Pharmacy_ court concluded that the Supreme Court's decision in _Daimler_ did not preclude jurisdiction through a corporation's consent by means of registration and appointment of an agent for service of process. _Id._ In Chief Judge Simandle's view, _Daimler_ concerned non-consensual general jurisdiction over a corporation but did not "cast any doubt on the continued vitality of consent-based jurisdiction." _Id._ Therefore, the court in _Otsuka Pharmacy_ concluded that two of the defendant corporations consented to jurisdiction in New Jersey by means of registering to do business and appointing a registered agent. _Id. at 470_. _See also Senju Pharm. Co. v. Metrics, Inc., 96 F. Supp. 3d 428, 438 (D.N.J. 2015)_ (noting that "acceptance of service by a defendant registered to do business in the state establishes personal jurisdiction"); _Sadler v. Hallsmith SYSCO Food Servs., No. 08-4423, 2009 U.S. Dist. LEXIS 33682, 2009 WL 1096309, at *2 (D.N.J. Apr. 21, 2009)_ ("Because the Court finds that [the defendant corporation] consented to being sued in the courts of New Jersey, the Court need not engage **[*12]** in an analysis of [the defendant corporation's] contacts with the state.").

In another decision from this District, Judge Arleo reached the opposite conclusion. In _Display Works, LLC v. Bartley_, the court found that a corporation did not

consent to jurisdiction in New Jersey merely by registering to do business here and appointing an agent for service of process. *182 F. Supp. 3d 166, 179 (D.N.J. 2016)*. The court relied on two primary premises to support its conclusion.

First, Judge Arleo distinguished the Third Circuit's decision in *Bane*. Judge Arleo explained that in *Bane*, the Third Circuit was interpreting Pennsylvania's registration statute, which provided that by registering to do business in Pennsylvania and designating an agent for service of process, a corporation consents to personal jurisdiction there. *Id. at 173-75*. Unlike the Pennsylvania registration statute, the *Display Works* court reasoned, the New Jersey statute does not expressly state that a corporation consents to jurisdiction when it registers to do business in New Jersey. *Id. at 174-75*. Therefore, Judge Arleo concluded that "Bane compels the Court to find that the New Jersey statutory scheme does not permit [general] jurisdiction by consent by virtue of registration to do business **[*13]** here or actually doing business here." *Id. at 175*.

Second, Judge Arleo found that the early to mid-twentieth century Supreme Court decisions relied upon by the court in *Otsuka Pharmaceutical* "developed from an outmoded way of thinking about jurisdiction" and were inconsistent with the Supreme Court's recent decision in Daimler. *Id. at 176-77*. Judge Arleo reasoned that

> the sweeping interpretation that a state court gave to a routine registration statute and an accompanying power of attorney that *Pennsylvania* Fire credited as a general "consent" has yielded to the doctrinal refinement reflected in Goodyear and *Daimler* and the Court's 21st century approach to general and specific jurisdiction in light of expectations created by the continuing expansion of interstate and global business.

*Id. at 178* (quoting *Brown v. Lockheed Martin Corp., 814 F.3d 619, 639 (2d Cir. 2016))*. Therefore, Judge Arleo concluded that a corporation's registration to do business and appointment of an agent for service of process in New Jersey does not mean that the corporation consented to general personal jurisdiction in New Jersey.

The Court finds Judge Arleo's reasoning in *Display Works* persuasive. The Court agrees that *Bane* is distinguishable due to the differences in the

Pennsylvania and New Jersey corporation registration **[*14]** statutes. Importantly, the New Jersey Statute does not contain any express language to put a corporation on notice that by registering to do business in New Jersey, it is also consenting to personal jurisdiction in the state. *See N.J.S.A. 14A:1-1 et seq.; World-Wide Volkswagen, 444 U.S. at 291* ("Due process requires that the defendant be given adequate notice of the suit and be subject to the personal jurisdiction of the court." (internal citation omitted)). Moreover, the Court finds that consent by registration is inconsistent with the Supreme Court's decision in *Daimler*. *Daimler* reiterated the principal from *Goodyear* that there is general jurisdiction over a corporation in its place of incorporation and its principal place of business. *Daimler, 134 S. Ct. at 760*. *Daimler* also cautioned that older decisions addressing general jurisdiction over a corporation should be afforded limited weight. *Id. at 761 n.18* (stating that cases "decided in the era dominated by *Pennoyer's* territorial thinking should not attract heavy reliance today" (citation omitted)). In short, the Court cannot square the theory of consent to jurisdiction by mere registration and appointment of an agent for service with recent Supreme Court jurisprudence.

For these reasons, the Court concludes that Defendant Cable Service's **[*15]** registration to do business in New Jersey does not mean it consented to general jurisdiction in New Jersey. Accordingly, the Court does not have general jurisdiction over any of the Defendants.

Plaintiff alternately contends that there is specific jurisdiction because his claims arise out of Defendants' failure to hire him for the flagger position in Sparta, New Jersey. Pl. Opp. at 5, 9-10. As noted, in his Complaint, Plaintiff fails to allege that he applied for a flagger job in Sparta or that one was even available. Also, in his Complaint, Plaintiff fails to allege that any of the individual Defendants took any action in or directed at New Jersey. Even in his supplemental certification, Plaintiff still fails to assert that such a position was even available. According to Defendants, there was not a flagger position (or any other light duty position) available in Sparta and Defendants never hired anyone to fill these unavailable positions. In short, Plaintiff offers no "competent evidence" that a flagger position was even open in Sparta. *Dayhoff, 86 F.3d at 1302*. In the absence of such evidence, Plaintiffs causes of action do not arise out of any contact that Defendants had with New Jersey. In other words, **[*16]** Plaintiff cannot show specific personal jurisdiction by arguing that Defendants failed to hire him for a flagger position in New Jersey

when he has presented no competent proof that the position was available or that it even existed.[8] Therefore, Plaintiff has not met his burden of proof in establishing specific personal jurisdiction over Defendants.[9]

Plaintiff finally argues that Defendants have waived their ability to contest personal jurisdiction because they made a "general appearance," as opposed to a "special appearance." Pl. Sur-Rep. at 2. Plaintiff cites to *Orange Theatre Corp. v. Rayherstz Amusement Corp., 139 F.2d 871 (3d Cir. 1944)* to support his argument.[10] Pl. Sur-Rep. at 2. *Orange Theater,* however, stands for the exact opposite proposition than that advanced by Plaintiff. In that case, the Third Circuit explained,

> It necessarily follows that *Rule 12* has abolished for the federal courts the age-old distinction between general and special appearances. A defendant need no longer appear specially to attack the court's jurisdiction over him. He is no longer required at the door of the federal courthouse to intone that ancient abracadabra of the law, de bene esse, in order by its magic power to enable himself to remain outside even while he steps within. He may now enter openly in full confidence **[*17]** that

he will not thereby be giving up any keys to the courthouse door which he possessed before he came in. This, of course, is not to say that such keys must not be used promptly. If the defense of lack of jurisdiction of the person is not raised by motion before answer or in the answer itself it is by the express terms of *paragraph (h) of Civil Procedure Rule 12* to be treated as waived, not because of the defendant's voluntary appearance but because of his failure to assert the defense within the time prescribed by the rules.

*Id. at 874*. The abolition of the distinction between special and general appearances applies with equal force today. *See AllGood Entm't, Inc. v. Gridiron Video, No. 09-2406, 2012 U.S. Dist. LEXIS 14899, 2012 WL 395373, at *5 (D.N.J. Feb. 6, 2012)*. Here, Defendants appeared in this matter and filed a timely motion to dismiss for lack of personal jurisdiction. Defendants were not required to make a "special appearance" to do so. Therefore, Defendants have not waived their right to contest personal jurisdiction.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss for lack of personal jurisdiction is granted.[11] Plaintiff may file an amended complaint addressing the deficiencies identified herein within thirty days of this

---

[8] In his supplemental certification, Plaintiff notes that on June 23, 2016, he took a picture of a van with cable wires at the Sparta location. Pl. Sur-Rep. ¶ C(3). Plaintiff states that "[t]he cable wire evidenced linemen jobs and wherever there are linemen jobs, there have to be at least 2 flaggers on the job." *Id.* According to Plaintiff, this picture shows that there are at least two finger jobs in Sparta, New Jersey. However, the fact that two flaggers may have possibly been working in Sparta in 2016 -- more than four years after Plaintiff claims he asked for a flagger position -- is entirely irrelevant to this matter. The picture submitted by Plaintiff does not demonstrate that a flagger position was available in Sparta at the time Plaintiff was seeking the job.

[9] Plaintiff appears to imply that Defendants have the burden of demonstrating that there is no personal jurisdiction. Pl. Opp. at 10 ("[I]t is the Defendant that must present a compelling case that the presence of some other considerations would render jurisdictions [sic] unreasonable."). The Third Circuit, however, has made clear that the burden to show personal jurisdiction is on the Plaintiff. *O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 316 (3d Cir. 2007)* ("Once challenged, the plaintiff bears the burden of establishing personal jurisdiction.").

[10] Plaintiff cites to a second case, which he identifies as "*Long v. Newhouse, 57 Ohio St. 348, 49 N.E. 79*." The Court is unable to locate this case based on the citation provided.

---

[11] Because the Court is dismissing this matter for lack of personal jurisdiction, it does not reach Defendants' arguments regarding dismissal for improper venue and for failure to state a claim under the LAD. However, the Court notes two points.

First, if Plaintiff elects to file an amended complaint in New Jersey, Plaintiff should carefully review the applicable Federal Rules of Civil Procedure and legal authority governing venue. Second, the Court emphasizes that Plaintiff must *plausibly* plead his causes of action. As it currently stands, the Complaint is often confusing, not in chronological order, and difficult to follow. For example, in Count Six, Plaintiff alleges a violation of the LAD, *42 U.S.C. §§ 1981, 1983, 1985, 1986, 1988*, the Americans with Disabilities Act, and Title VII of the Civil Rights Act of 1964. However, in the succeeding paragraphs, Plaintiff alleges that his rights were violated under the New Jersey Civil Rights Act and New Jersey Constitution. Moreover, Plaintiff seeks a "demand for production pursuant to *R. 4:18-2*," which is a New Jersey Court Rule that is inapplicable in federal court. If Plaintiff files an amended complaint, he must make plausible allegations to support his claims for relief.

2017 U.S. Dist. LEXIS 100708, *17

Opinion in accordance with *Local Civil Rule 15.1*.[12] An appropriate Order accompanies this Opinion. **[*18]**

Dated: June 28, 2017

/s/ John Michael Vazquez

John Michael Vazquez, U.S.D.J.

## ORDER

### John Michael Vazquez, U.S.D.J.

For the reasons set forth in the accompanying Opinion; and for good cause shown,

IT IS on this 28th day of June, 2017,

**ORDERED** that Defendants' motion to dismiss for lack of personal jurisdiction (D.E. 4) is **GRANTED**; and it is further

**ORDERED** that within thirty days of this Order, Plaintiff may file an amended complaint addressing the deficiencies identified in the accompanying Opinion.

/s/ John Michael Vazquez

John Michael Vazquez, U.S.D.J.

---

End of Document

---

[12] Effective May 10, 2017, *Local Civil Rule 15.1* states, in part, that

> a party who files an amended pleading in response to an Order authorizing the filing of that pleading to cure a defect in its pleading shall file:
>
> (1) a copy of the amended pleading, complete with a handwritten or electronic signature; and
>
> (2) a form of the amended pleading that shall indicate in what respect(s) it differs from the pleading that it amends, by bracketing or striking through materials to be deleted and underlining materials to be added.

⚠️ Caution
As of: October 21, 2020 3:40 PM Z

# *Kubin v. Orange Lake Country Club, Inc.*

United States District Court for the District of New Jersey

October 8, 2010, Decided; October 8, 2010, Filed

Civil Action No.: 10-1643 (FLW)

**Reporter**
2010 U.S. Dist. LEXIS 107860 *; 2010 WL 3981908

TAMMI KUBIN and STEVEN A. KUBIN, Plaintiffs, v.
ORANGE LAKE COUNTRY CLUB, INC., et al.,
Defendants.

**Notice:** NOT FOR PUBLICATION

## Core Terms

phone, solicitations, registered, telephone

## Case Summary

### Overview
Florida resort owner was not subject to personal
jurisdiction in New Jersey under N.J. Ct. R. 4:4-4(b)(1)
in a personal injury suit; the fact that the owner was
registered to do business in New Jersey was not
sufficient to establish general jurisdiction, as there was
insufficient evidence that the owner was actually "doing
business" in New Jersey, and telephone solicitations
that occurred after the alleged tort and that were
unrelated to the injury did not establish specific
jurisdiction.

### Outcome
Action transferred in lieu of dismissal.

## LexisNexis® Headnotes

Civil Procedure > ... > In Rem & Personal
Jurisdiction > In Personam Actions > Long Arm
Jurisdiction

*HN1*[⬇] **In Personam Actions, Long Arm
Jurisdiction**

A federal court may assert personal jurisdiction over an
out-of-state defendant to the extent authorized by the
law of the state.

Civil Procedure > ... > Jurisdiction > In Rem &
Personal Jurisdiction > Constitutional Limits

Civil Procedure > ... > In Rem & Personal
Jurisdiction > In Personam Actions > Due Process

Civil Procedure > ... > In Rem & Personal
Jurisdiction > In Personam Actions > Long Arm
Jurisdiction

*HN2*[⬇] **In Rem & Personal Jurisdiction,
Constitutional Limits**

New Jersey's "long-arm" statute, N.J. Ct. R. 4:4-4(b)(1),
provides for personal jurisdiction over nonresident
corporations to the outtermost limits provided by the
United States Constitution. As the New Jersey long-arm
rule extends to the limits of the *Fourteenth Amendment
Due Process Clause*, the amenability to suit of a
nonresident defendant must be evaluated by *Fourteenth*

*Amendment* standards. A court is constrained only by the traditional notions of fair play and substantial justice inhering in the Due Process Clause of the Constitution.

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Due Process

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Minimum Contacts

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Substantial Contacts

### *HN3*[↓]  In Personam Actions, Due Process

In determining whether due process considerations permit the exercise of personal jurisdiction, the United States Court of Appeals for the Third Circuit has distinguished between personal jurisdiction in cases where the defendant's forum-related activities do not give rise to the claim, and personal jurisdiction in cases where the claim arises out of a specific forum-related act or series of acts.

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Minimum Contacts

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Substantial Contacts

### *HN4*[↓]  In Personam Actions, Minimum Contacts

"General jurisdiction" is established when a defendant's contacts with the forum are continuous and systematic, whether or not the defendant's forum-related activities gave rise to the underlying cause of action. The plaintiff must show that defendant had significantly more than mere "minimum contacts" with the forum state. The facts required to establish general jurisdiction must be extensive and persuasive.

Civil Procedure > ... > Jurisdiction > In Rem & Personal Jurisdiction > Constitutional Limits

Civil Procedure > ... > In Rem & Personal

Jurisdiction > In Personam Actions > Minimum Contacts

### *HN5*[↓]  In Rem & Personal Jurisdiction, Constitutional Limits

"Specific jurisdiction" is established where a plaintiff's cause of action is related to or arises out of the defendant's contacts with the forum and the defendant has constitutionally sufficient "minimum contacts" with the forum. In order to establish "minimum contacts," the defendant must have performed, at least, a deliberate act with the forum state relating to the cause of action. The inquiry into the defendant's "minimum contacts" with a particular forum is meant to determine whether the defendant reasonably anticipated being haled into court there.

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Minimum Contacts

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Purposeful Availment

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Substantial Contacts

### *HN6*[↓]  In Personam Actions, Minimum Contacts

Under both the general and specific jurisdiction standards, there must be some contact with the forum by a defendant; there must be some act by which the defendant purposefully avails itself of the privileges of conducting activities in the forum state, thus invoking the benefits and protections of its laws. The "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts.

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Doing Business

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Substantial Contacts

2010 U.S. Dist. LEXIS 107860, *107860

*HN7*[⬇] **In Personam Actions, Doing Business**

Filing a certificate to do business in New Jersey is insufficient to establish general jurisdiction, absent evidence that the defendant was actually doing business in New Jersey. Qualification to do business in a state is of no special weight in evaluating general jurisdiction. Having a license to conduct business in New Jersey is not in and of itself sufficient to establish continuous and substantial contacts.

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Doing Business

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Substantial Contacts

*HN8*[⬇] **In Personam Actions, Doing Business**

*42 Pa. Cons. Stat. § 5301* (1990), lists incorporation under or qualification as a foreign corporation under the laws of the commonwealth as one of the "relationships" that shall constitute a sufficient basis of jurisdiction to enable the tribunals of the commonwealth to exercise general personal jurisdiction over such person. However, the New Jersey statute does not have similar language. *N.J. Stat. Ann. § 14A:13-2* (2010).

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Doing Business

*HN9*[⬇] **In Personam Actions, Doing Business**

Mere solicitation of business within a state does not in itself constitute the level of "doing business" necessary to satisfy the requirements of personal jurisdiction. Rather, a foreign corporation is "doing business" within the state when its activities constitute "solicitation plus" other activities. Thus, for example, when the essential events of a contract, such as negotiation, execution, and performance, have occurred outside the forum, finding jurisdiction over the nonresident defendant would be improper. While, in isolation, telephone and mail communications may not establish a substantial connection between a nonresident and a forum, when these communications form an integral part of an ongoing business relationship, such contacts are relevant in assessing the nature and extent of defendant's conduct within a forum.

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Minimum Contacts

*HN10*[⬇] **In Personam Actions, Minimum Contacts**

There must be contacts between the transaction at issue and the forum state, as opposed to contacts between the defendant and the forum state, to warrant the forum state's assertion of jurisdiction over the controversy.

**Counsel:** [*1] For TAMMI KUBIN, Plaintiff: DENNIS J. MELOFCHIK, Fox & Melofchik, L.L.C., OCEAN, NJ.

For STEVEN A. KUBIN, Husband, Plaintiff: DENNIS J. MELOFCHIK, LEAD ATTORNEY, Fox & Melofchik, L.L.C., OCEAN, NJ.

For ORANGE LAKE COUNTRY CLUB, INC., trading as THE FAMILY OF ORANGE LAKE RESORTS, Defendant: FRANK ANTHONY LASALVIA, LEAD ATTORNEY, KENNEDY, CAMPBELL, LIPSKI & DOCHNEY, MARLTON, NJ.

**Judges:** Freda L. Wolfson, United States District Judge.

**Opinion by:** Freda L. Wolfson

# Opinion

**WOLFSON, District Judge:**

Before this Court is Defendant's motion to dismiss this action for lack of personal jurisdiction pursuant to *Federal Rules of Civil Procedure 12(b)(2)*, or alternatively, to transfer this matter to the United States

2010 U.S. Dist. LEXIS 107860, *1

District Court for the Middle District of Florida pursuant to _28 U.S.C. § 1631_ and/or _1406(a)_. Plaintiffs Tammi Kubin and Steven A. Kubin (collectively, "Plaintiffs") allege that in April of 2008, upon visiting the resort of defendant Orange Lake Country Club, Inc. ("OLCC" or "Defendant"), plaintiff Kubin sustained personal injuries on the "Hippo Waterslide" as a result of the defendant's negligence. Plaintiffs are citizens of New Jersey. Defendant is a Florida corporation with its principal place of business in Kissimmee, **[*2]** Florida.

To argue that jurisdiction is proper, Plaintiffs contend that Defendant is registered to do business under the laws of New Jersey under Charter No. 0400276166. _See Certification of Robert Kantor_. Further, Plaintiffs contend that OLCC has maintained direct contact with them in New Jersey through ten phone calls made to Plaintiffs between May and August of 2010. These phone calls, Plaintiffs claim, were solicitations inquiring as to whether Plaintiffs would like to purchase additional time shares and/or whether Plaintiffs would be interested in selling their current time share. Based on Defendant's certificate of authority to do business in New Jersey and Defendant's phone calls, Plaintiffs contend that OLCC has sufficient contacts with the State of New Jersey to justify the exercise of personal jurisdiction over it.

Defendants submit that OLCC is qualified to do business in New Jersey for the sole purpose of telephone marketing. _See Thompson's Cert. at_ ¶ 3. It has not incurred nor paid taxes in New Jersey, has no office or employees in New Jersey, does not own real estate, bank accounts, or other assets in New Jersey, is not listed in any New Jersey telephone directory, and does **[*3]** not advertise in New Jersey. _See Id._ In that regard, Defendants contend that personal jurisdiction is not proper in New Jersey.

**Personal Jurisdiction**

_HN1_[⬆] A federal court may assert personal jurisdiction over an out-of-state defendant to the extent authorized by the law of the state. _Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n, 819 F.2d 434, 436 (3d Cir. 1987)_. _HN2_[⬆] New Jersey's "long-arm" statute, _R. 4:4-4(b)(1)_ (2010), provides for personal jurisdiction over nonresident corporations "to the outermost limits provided by the United States Constitution." _Halley v. Myatt, 2010 N.J. Super. Unpub. LEXIS 950, 2010 WL 1753110 (N.J. Super. A.D., May 3, 2010), at *4_ (_citing Avdel Corporation v. Mecure, 58 N.J. 264, 268, 277_

_A.2d 207 (1971))_. As the New Jersey long-arm rule extends to the limits of the _Fourteenth Amendment_ Due Process, the amenability to suit of the nonresident defendant in this case must be evaluated by _Fourteenth Amendment_ standards. _DeJames v. Magnificence Carriers, Inc., 654 F.2d 280, 284 (3d Cir.1981)_. This court is constrained only by the "traditional notions of fair play and substantial justice" inhering in the _Due Process Clause of the Constitution_. _See International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)_.

_HN3_[⬆] ] In **[*4]** determining whether these due process considerations permit the exercise of personal jurisdiction, the Third Circuit has distinguished between "personal jurisdiction in cases where the defendant's forum-related activities do not give rise to the claim, and personal jurisdiction in cases where the claim arises out of a specific forum-related act or series of acts." _Paolino v. Channel Home Centers, 668 F.2d 721, 724 (3d Cir. 1981)_.

_HN4_[⬆] ] "General jurisdiction" is established when a defendant's contacts with the forum are "continuous and systematic," _Int'l Shoe, 326 U.S. at 317_, whether or not the defendant's forum-related activities gave rise to the underlying cause of action. _See, e.g., Provident Nat'l Bank, 819 F.2d 434_. The plaintiff must show that defendant had significantly more than mere "minimum contacts" with the forum state. _Provident Nat'l Bank, 819 F.2d at 437_. The facts required to establish general jurisdiction must be "extensive and persuasive." _Reliance Steel Prods. v. Watson, Ess, Marshall, 675 F.2d 587, 589 (3d Cir. 1982)_.

_HN5_[⬆] ] "Specific jurisdiction" is established "where the plaintiff's cause of action is related to or arises out of the defendant's contacts with the forum [and] **[*5]** the defendant has constitutionally sufficient 'minimum contacts' with the forum." _Pinker v. Roche Holdings Ltd., 292 F.3d 361 (3d. Cir. 2002)_. In order to establish "minimum contacts," defendant must have performed, at least, a deliberate act with the forum state relating to the cause of action. _Smith v. S&S Engineering Works, Ltd., 139 F. Supp. 2d 610 (D.N.J. 2001)_ (_citing United States Golf Ass'n v. United States Amateur Golf Ass'n, 690 F.Supp. 317, 320 (D.N.J.1988))_. The inquiry into defendant's "minimum contacts" with a particular forum is meant to determine whether defendant "reasonably anticipate[d] being haled into court there." _World Wide Volkswagen Corporation v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)_ (citations omitted).

_HN6_[↑] ] Under both these standards, there must be some contact with the forum by the defendant; there must be "some act by which the Defendant purposefully avails itself of the privileges of conducting activities in the forum State, thus invoking the benefits and protections of its laws." _Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)_ (quoting _Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958))._ The "purposeful availment" requirement ensures that a defendant will not **[*6]** be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated' contacts." _Burger King, 471 U.S. at 474._

**Discussion**

_1. General Jurisdiction_

Plaintiffs fail to meet their burden to establish the "continuous and systematic contacts" necessary to sustain general jurisdiction over defendant OLCC. _See Int'l Shoe, 326 U.S. at 317._ Plaintiffs contend that because OLCC is "registered to do business with the State of New Jersey," the court has personal jurisdiction over it. OLCC does not dispute that it is registered in New Jersey; however, OLCC contends that it does not do business in the State and that it is registered solely for the purpose of marketing timeshares and conducting telemarketing in New Jersey. _See Thompson Cert. at ¶_ 3. While it is registered to do business in New Jersey, OLCC has no property, bank or credit accounts, employees, officers, agents or records in New Jersey; nor has it incurred or paid taxes in the State.

_HN7_[↑] ] Filing "a certificate to do business in New Jersey [is] insufficient to establish general jurisdiction, absent evidence that [defendant] was _actually_ doing business in New Jersey." _Smith, 139 F.Supp.2d at 620, n. 6_ (emphasis in original) **[*7]** (citing _Wenche Siemer v. Learjet Acquisition Corp., 966 F.2d 179, 183 (5th Cir.1992)_ (qualification to do business in a state is "of no special weight" in evaluating general jurisdiction), _cert. denied_, 506 U.S. 1080, 113 S. Ct. 1047, 122 L. Ed. 2d 355 (1993); _Atkinson & Mullen Travel, Inc. v. New York Apple Tours Inc., 48 U.S.P.Q.2d 1377, ___ (D.N.J. 1998)_ (having a license to conduct business in New Jersey is not "in and of itself sufficient to establish continuous and substantial contacts").

Nonetheless, in _Bane v. Netlink, Inc., 925 F.2d 637 (3d_

_Cir. 1991),_ the Third Circuit held that a defendant's application for and receipt of authorization to do business in Pennsylvania was sufficient to establish personal jurisdiction over that defendant. In that case the applicable Pennsylvania statute "explicitly states that the qualification of a foreign corporation to do business is sufficient contact to serve as the basis for the assertion of personal jurisdiction." _Id. at 640._ Specifically, the statute in question, _HN8_[↑] ] _42 Pa.Cons.Stat.Ann. § 5301_ (Purdon 1990), listed "[i]ncorporation under or qualification as a foreign corporation under the laws of this Commonwealth" as one of the "relationships" that "shall constitute a sufficient **[*8]** basis of jurisdiction to enable the tribunals of this Common- wealth to exercise general personal jurisdiction over such person." _Id._ However, _Bane_ is easily distinguished, as the relevant New Jersey statute does not have similar language. _See N.J.S.A. 14A:13-2_ (2010).

Further, the ten phone calls Defendant made soliciting Plaintiffs to purchase more timeshares, or to sell their own timeshare, are insufficient to establish general jurisdiction, as _HN9_[↑] ] mere solicitation of business within a state does not in itself constitute the level of "doing business" necessary to satisfy the requirements of personal jurisdiction. _International Shoe Co., 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95._ Rather, a foreign corporation is "doing business" within the state when its activities constitute "solicitation _plus_" other activities. _A. & M. Trading Corp. v. Pennsylvania R. Co., 13 N.J. 516, 523, 100 A.2d 513 (1953)_ (emphasis added). Thus, for example, when the essential events of a contract, such as negotiation, execution, and performance, have occurred outside the forum, finding jurisdiction over the nonresident defendant would be improper. _See Electro-Catheter Corp. v. Surgical Specialties Instrument Co., Inc., 587 F. Supp. 1446 (D.N.J. 1984)_ **[*9]** ("While, in isolation, telephone and mail communications may not establish a substantial connection between a nonresident and a forum, when these communications form an integral part of an ongoing business relationship, such contacts are relevant in assessing the nature and extent of defendant's conduct within a forum.") Accordingly, in _E.E. Cruz & Co., Inc. v. Alufab, Inc., Civil Action No. 06-262, 2006 U.S. Dist. LEXIS 29706, 2006 WL 1344095, at *4 (D.N.J. May 16, 2006),_ "four phone calls...were not so numerous, continuous, or substantial to justify the exercise of this Court's jurisdiction." _See Baron & Co. v. Bank of N.J., 497 F.Supp. 534, 538 (E.D. Pa. 1980)_ (Pennsylvania court without jurisdiction over New Jersey defendant when defendant's sole contacts with the forum were

correspondence and insignificant number of telephone calls and when the contract at issue was negotiated and executed in New Jersey, where the subject matter of the contract was located); *see also Sathianathan v. Pacific Exchange, Inc., 248 Fed. Appx. 345 (3d Cir. 2007)* ("The only contacts the individual defendants made with the forum state in this case were a handful of telephone calls, e-mails, and letters. . . .Such minimal communication **[\*10]** [with] the forum state, without more, will not subject the defendant to the jurisdiction of that state's court system.") (internal citations omitted).

### 2. Specific Jurisdiction

Plaintiffs have also failed to established specific jurisdiction. The only "contacts" defendant had with New Jersey were ten telephone solicitations directed at Plaintiffs. However, the phone calls made to Plaintiffs occurred after the alleged tort. Further, the phone calls were not related to the injury; these calls were solicitations asking Plaintiffs to purchase additional timeshares. As *HN10*[⬆] "there must be contacts between the *transaction at issue* and the forum state, as opposed to contacts between the defendant and the forum state...to warrant the forum state's assertion of jurisdiction over the controversy," *Western Union Telegraph Co. v. T.S.I., Ltd., 545 F. Supp. 329 (D.N.J. 1982)* (emphasis added) (citing *Empire Abrasive Equipment v. H. H. Watson, Inc., 567 F.2d 554, 557 (3d Cir. 1977))*, Plaintiffs failed to meet their burden of establishing specific jurisdiction.

Moreover, there is no indication that Defendant performed any business transaction in New Jersey, nor is there a claim that Defendant formed a contract **[\*11]** with Plaintiffs in New Jersey. In fact, there is no indication that Plaintiff's visit to the Defendant's resort, during which the alleged injury occurred, arose out of any action by Defendant in New Jersey; plaintiffs only allege that Defendant contacted them in New Jersey *after* the injury and regarding matters unrelated to the injury. *See Kubin Cert. at ¶ 2.* Thus, the controversy does not arise out of, or relate to, Defendant's contacts with Plaintiffs, or, more importantly, with the forum state. *See Pinker, 292 F.3d 361*.

### Conclusion

Defendant does not have the continuing and systematic contacts with New Jersey that are necessary to establish general jurisdiction. Nor has defendant

"purposefully availed" itself of the privileges of conducting business in New Jersey by merely registering to do business in the state. Likewise, defendant's ten phone solicitations, unrelated to the underlying issue, which were made *after* the alleged tort are not enough to show that the defendant "purposefully availed" itself of the privileges of doing business in the state.

Based on the foregoing analysis, the Court holds that Plaintiffs have failed to meet their burden of establishing that this Court has **[\*12]** personal jurisdiction over Defendant in New Jersey. However, in lieu of dismissal, the Court will transfer this action to the United States District Court for the Middle District of Florida pursuant to *28 U.S.C. § 1406(a)*.

DATE: October 8, 2010

/s/ Freda L. Wolfson

Freda L. Wolfson, U.S.D.J.

---

**End of Document**

No *Shepard's* Signal™
As of: October 21, 2020 3:42 PM Z

## *Rampersad v. Dow Jones & Co.*

United States District Court for the District of New Jersey

January 31, 2020, Decided; January 31, 2020, Filed

Civil Action No. 19-11733 (MAS) (TJB)

**Reporter**
2020 U.S. Dist. LEXIS 18216 *; 2020 WL 529212

ROHINI RAMPERSAD, Plaintiff, v. DOW JONES & COMPANY, INC., DIANNE DECARLO, and POOJA VERMA, Defendants.

**Notice:** NOT FOR PUBLICATION

## Core Terms

termination, Partial, Reply

**Counsel:**  **[*1]** For ROHINI RAMPERSAD, Plaintiff: BRYAN L. ARBEIT, WIGDOR LLP, NEW YORK, NY.

For DOW JONES & COMPANY, INC., DIANNE DECARLO, in her individualy and professional capacities, POOJA VERMA, in her individual and professional capacities, Defendants: HARRIS SAMUEL FREIER, LEAD ATTORNEY, JUSTINE LEIGH ABRAMS, GENOVA BURNS LLC, NEWARK, NJ.

**Judges:** MICHAEL A. SHIPP, UNITED STATES DISTRICT JUDGE.

**Opinion by:** MICHAEL A. SHIPP

## Opinion

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court upon Defendants Dow Jones & Company, Inc. ("Dow Jones"), Dianne DeCarlo ("DeCarlo"), and Pooja Verma's ("Verma") (collectively, "Defendants") Partial Motion to Dismiss Plaintiff Rohini Rampersad's ("Plaintiff") Complaint. (ECF No. 16.) Plaintiff opposed (ECF No. 18), and Defendants replied (ECF No. 21). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to *Local Civil Rule 78.1*. For the reasons set forth below, the Court denies Defendants' Partial Motion to Dismiss.

## I. BACKGROUND

Plaintiff began working for Dow Jones in 2005. (Second Am. Comp1.[1] ("SAC") ¶ 26, ECF No. 25.) Plaintiff moved to Florida in 2007 and continued to work for Dow Jones, first in a "contract project manager role," **[*2]** and later in a permanent position as Senior Technical Sales Support Executive. (*Id.* ¶¶ 28-29.) She performed both roles remotely from her home. (*Id.*) Plaintiff was terminated in 2015, but her termination was rescinded later that year, and she was assigned a position within the company in which she reported to Dow Jones's Director of Partners and Alliance, Jason Malatesta ("Malatesta"), who was based in Dow Jones's Princeton, New Jersey office. (*Id.* ¶¶ 31-32.)

Plaintiff began suffering from herniated disks in 2017.

---

[1] The parties agreed that Defendants' Partial Motion to Dismiss should be applied to the SAC. (*See* ECF No. 26.)

2020 U.S. Dist. LEXIS 18216, *2

(*Id.* ¶ 39.) She went out on short-term disability and Family Medical Leave Act ("FMLA") leave from July 3 through August 21, 2017 to undergo surgery. (*Id.* ¶ 43.) Prior to her return to work, Malatesta informed Plaintiff that she would be a part of the Professional Information Business Customer Service Department in Princeton, New Jersey, and would report to DeCarlo, the Department's director. (*Id* ¶¶ 48-49.) Plaintiff, a 50-year-old woman, was assigned to the Identity and Access Support ("IAS") Team. (*Id.* ¶ 52.) In November 2017, DeCarlo hired two employees for the IAS team who were both "in their early 30s." (*Id.* ¶ 54.) From December 28, 2017 through February 8, 2018, Plaintiff **[*3]** went on short-term disability and partial FMLA leave to undergo neck surgery. (*Id.* ¶ 58.) Upon her return to work, Plaintiff continued to train her colleagues. (*Id.* ¶¶ 59, 62.) Plaintiff learned that Dow Jones had created a job posting for a supervisor position in her department but was discouraged from applying because the position could not be performed remotely. (*Id.* ¶¶ 63-64.) Plaintiff was "shocked" when she learned that Verma would be her new supervisor effective October 2018. (*Id.* ¶¶ 65-66.) Plaintiff took short-term disability and FMLA leave from November 5 through November 23, 2018 to undergo surgery for a hand infection. (*Id.* ¶¶ 67-68.)

On February 14, 2019,[2] Plaintiff was invited to a virtual meeting with DeCarlo and Sarah Goodman, a "People Specialist" at Dow Jones. (*Id* ¶ 75.) At this meeting, she was informed that her "work-at-home" position in Florida was being converted into an "in-office" position at Dow Jones's Princeton, New Jersey office and that she would be terminated with severance in thirty days unless she chose to relocate to New Jersey. (*Id.* ¶ 76.) Dow Jones relayed that it would no longer pay her $15,000 annual incentive compensation, nor would it pay for her **[*4]** relocation costs if she chose to relocate to New Jersey. (*Id.* ¶ 78.) Six days later, Plaintiff informed Dow Jones that she would not relocate. (*Id* ¶ 81.) Plaintiff alleges that after she was told that her work-at-home status was ending, Verma's behavior as her supervisor became incessantly demanding. (*See generally id.* ¶¶ 82-89.)

---

[2] Plaintiff alleges that the virtual meeting occurred on February 14, 2018, both in her SAC (SAC ¶ 75), and in her Opposition Brief (Opp'n Br. at 5, ECF No. 18). Defendants, however, assert that the virtual meeting occurred on February 14, 2019. (Answer ¶ 75, ECF No. 29.) The Court finds that the 2018 date was most likely a typographical error because both parties acknowledge that the events leading up to Plaintiff's termination, such as Plaintiff informing Dow Jones she would not relocate, occurred in 2019. (SAC ¶ 81; Answer ¶ **81.**)

Plaintiff was placed on non-working leave from March 4, 2019, through March 31, 2019, and ultimately relieved of her duties. (*Id.* ¶ 94.)

On October 28, 2019, Plaintiff filed a SAC, asserting two claims: retaliation and/or interference in violation of the FMLA against Dow Jones and DeCarlo (*id.* ¶¶ 96-101), and discrimination in violation of the NJLAD, ADA, and ADEA against all Defendants (*id* ¶¶ *102-08).*

## II. <u>LEGAL STANDARD</u>

"*Federal Rule of Civil Procedure 8(a)(2)* requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order - to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)* (quoting *Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).* On a motion to dismiss for failure to state a claim pursuant to *Federal Rule of Civil Procedure 12(b)(6),* the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005)* (citation omitted).

A district court conducts a three-part analysis **[*5]** when considering a motion to dismiss pursuant to *Rule 12(b)(6). See Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).* First, the court must "'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id* (quoting *Ashcroft v. Iqbal, 556 U.S. 662, 675, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).* Second, the court must "review[] the complaint to strike conclusory allegations." *Id.* The court must accept as true the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)* (citation omitted). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id at 211* (quoting *Iqbal, 556 U.S. at 679*). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. at 210* (quoting *Iqbal, 556 U.S. at 678*).

When deciding a question of state law, this Court is "bound to follow state law as announced by the highest court." *Edwards v. HOVENSA, LLC, 497 F.3d 355, 361, 49 V.I. 1133 (3d Cir. 2007).* When a state's high court has not answered that question, this Court "can garner

assistance from the decisions of the state's intermediate appellate courts in predicting how the state's high court would rule." *Id* (quoting *Mosley v. Wilson, 102 F.3d 85, 92 (3d Cir. 1996))*. State intermediate appellate court decisions, although not controlling, should be "attributed some weight," and should **[*6]** not be "disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Id* (internal citations and quotations omitted).

### III. <u>DISCUSSION</u>

Defendants argue that the NJLAD does not offer Plaintiff protection because she was "not employed in New Jersey." (Defs.' Moving Br. 9, ECF No. 16-1.) In their Moving Brief, Defendants cited for support several cases decided from 1989 through 2018 by the U.S. District Court for the District of New Jersey, the U.S. Court of Appeals for the Third Circuit, and the New Jersey Superior Court, Appellate Division ("Appellate Division"). (*See generally* Defs.' Moving Br.) A day after Defendants filed this motion, however, the Appellate Division issued *Calabotta v. Phibro Animal Health Corp., 460 N.J. Super. 38, 213 A.3d 210 (N.J. Super. Ct. App. Div. 2019)*, a precedential opinion that held, as a matter of first impression, that the NJLAD could apply to a non-resident who works remotely for a New Jersey employer. Defendants advanced two arguments in their Reply Brief urging this Court to decline to apply *Calabotta* here: (1) this Court is not compelled to follow *Calabotta* because the New Jersey Supreme Court has not applied the NJLAD to a non-New Jersey resident and would be unlikely to adopt **[*7]** *Calabotta's* reasoning; and (2) Plaintiff could not maintain a claim under the NJLAD because the facts of Plaintiff's case are distinguishable from *Calabotta*. (Defs.' Reply Br. 3-9.)

The *Calabotta* plaintiff was an Illinois resident and an employee of an Illinois subsidiary of a New Jersey corporation. *213 A.3d at 214*. After he was informed that the corporation was downsizing and his responsibilities would be diminished, the plaintiff sought a new position in the New Jersey offices of the corporation. *Id. at 215*. When the plaintiff was passed over for promotion and later terminated by the corporation, he brought NJLAD claims in which he alleged that the corporation and two supervisors discriminated against him "on account of his association with [his wife,] a person with a disability," in failing to consider him for the promotion and subsequently terminating his employment. *Id. at 216*.

The *Calabotta* court first determined that the text and legislative history of the NJLAD evinced "no expression of legislative intent to limit the statute's protections to job applicants who live in New Jersey, or to those employees who perform all of their employment functions in New Jersey." *Id. at 224*. The NJLAD prohibits a wide variety of discriminatory **[*8]** conduct in the workplace, and New Jersey state courts have repeatedly applied "special rules of interpretation" because of the NJLAD's "broad public policy goals." *Id at 222* (quoting *Nini v. Mercer Cty. Cnty. Coll., 202 N.J. 98, 995 A.2d 1094, 1100 (N.J. 2010)*; *Smith v. Millville Rescue Squad, 225 N.J. 373, 139 A.3d 1 (N.J. 2016))*. As such, the NJLAD must be "liberally construed" to achieve its intended effect of "eradicat[ing] the cancer of discrimination[,] protect[ing] employees, and deter[ring] employers from engaging in discriminatory practices." *Id.* (citations omitted) (second alteration in original).

This Court finds *Calabotta* instructive as to how the New Jersey Supreme Court would decide the extraterritorial reach of the NJLAD, and Defendants fail to cite any New Jersey Supreme Court authority that suggests it would construe the NJLAD differently. Although the New Jersey Supreme Court has not decided the circumstances under which an out-of-state plaintiff may bring a NJLAD claim, this Court is persuaded that it would adopt *Calabotta's* reasoning. *See Smith, 139 A.3d at 11* (urging that the NJLAD should be "liberally construed in order to advance its beneficial purposes (internal quotations omitted)); *Nini, 995 A.2d at 1100* ("[T]his Court has been scrupulous in its insistence that [the NJLAD] be applied to the full extent of its facial coverage." (quoting *Bergen Commercial Bank v. Sisler, 157 N.J. 188, 723 A.2d 944, 958 (N.J. 1999))*.

*Calabotta* outlined **[*9]** the choice-of-law analysis to determine whether the NJLAD applies to a particular out-of-state plaintiff's employment discrimination claim. First, a court must ask whether an actual conflict exists between the laws of New Jersey and another state, because if no conflict exists, then the forum state's law applies. *Calabotta, 213 A.3d at 218* (citing *In re Accutane Litig., 235 N.J. 229, 194 A.3d 503 (N.J. 2018)*.) If there is a conflict, then a court must consider whether "New Jersey public policy requires the application of [New Jersey] substantive law . . . regardless of the interest of another state." *Id. at 219* (quoting *Fairfax Fin. Holdings Ltd. v. S.A.C. Capital Mgmt., LLC, 450 N.J. Super. 1, 160 A.3d 44, 69 (N.J. Super. Ct. App. Div. 2017))*. If no such directive exists, either through "an explicit statutory directive or by a process of interpretation and construction," a court

presiding over an employment discrimination claim[3] must apply New Jersey substantive law if New Jersey has the "most significant relationship" to the matter in light of the factors set forth in the Restatement (Second) of Conflict of Laws ("Second Restatement"). *Id* (citations and internal quotation marks omitted).

Applying the Second Restatement's most-significant-relationship test, the *Calabotta* court held that the plaintiff stated a valid failure-to-promote claim under the NJLAD but remanded his wrongful termination **[*10]** claim for further factfinding on whether New Jersey had the most significant relationship to that issue. *See Calabotta, 213 A.3d at 230*. In applying the most-significant-relationship test to the plaintiff's failure-to-promote claim, the court acknowledged that it was "heavily influenced by the fact that the new position sought by plaintiff and other potential applicants was going to be located in [New Jersey]." *Id. at 227-28*. The court stressed that applying the NJLAD to discrimination for hiring decisions in New Jersey best promotes "certainty, predictability, and uniformity," as "it makes sense to have all applicants [for a position] treated under one set of state laws." *Id at 228*.

The *Calabotta* court was unable to determine whether New Jersey had the most significant relationship to the plaintiff's wrongful termination claim without further development of the factual record. *See id. at 229-30*. Unlike the failure-to-promote claim, the court reasoned, the corporation may have reasonably expected Illinois employment law to apply to claims brought by staff of its Illinois office. *Id. at 229*. The court also reasoned that the "place of injury" was more likely to be Illinois and noted that the plaintiff had sought Illinois unemployment benefits after being **[*11]** discharged. *Id.* The court acknowledged, however, that "[m]any other facts and factors may also bear upon the calculus," and a showing that the "company's decision to fire him was made or centered in New Jersey . . . would be a counterweight on the New Jersey side of the scale." *Id.*

As *Calabotta* instructs, to determine whether Plaintiff can bring an NJLAD claim, this Court must apply the Second Restatement's most-significant-relationship test. This is a highly fact-specific inquiry that depends on the weighing of at least eleven factors. The fact-specific

nature of the test is demonstrated by the different outcomes the Appellate Division reached in *Calabotta* on the plaintiffs failure-to-promote claim as compared to the wrongful termination claim, where both claims arose out of the same sequence of events. This Court, therefore, cannot determine whether the factors lean toward applying the NJLAD to Plaintiff's wrongful termination claim at this time because, as both parties acknowledge, a more fully developed factual record is necessary to determine whether the *Calabotta* choice-of-law principles justify applying the NJLAD to Plaintiff's claims. (*See* Pl.'s Opp'n Memo 19-20; Defs.' Reply **[*12]** Br. 2 (conceding, if this Court finds *Calabotta* indistinguishable, the necessity of "a further development of the facts, through discovery, as to which state had the most significant relationship with Plaintiff, in order that the decision be made at the summary judgment stage")).

## IV. CONCLUSION

The Court finds that, in light of *Calabotta*, the New Jersey Supreme Court would likely apply the NJLAD to out-of-state plaintiffs in some circumstances. The Court further finds that Defendants have not met their burden of showing that Plaintiff has failed to state an NJLAD claim. The Court, consequently, denies Defendants' Partial Motion to Dismiss Plaintiff's Complaint. The Court will enter an order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp

MICHAEL A. SHIPP

UNITED STATES DISTRICT JUDGE

Dated: January 31, 2020

## ORDER

This matter comes before the Court upon Defendants Dow Jones & Company, Inc., Dianne DeCarlo, and Pooja Verma's (collectively, "Defendants") Partial Motion to Dismiss Plaintiff Rohini Rampersad's ("Plaintiff") Complaint (ECF No. 16). Plaintiff opposed (ECF No. 18), and Defendants replied (ECF No. 21). The Court has carefully considered the parties' submissions and decides **[*13]** the matter without oral argument pursuant to *Local Civil Rule 78.1*. For the reasons set forth in the accompanying Memorandum Opinion, and other good cause shown,

---

[3] *Calabotta* was premised on the NJLAD claim's likeness to a claim of tortious conduct for choice-of-law analysis purposes, as opposed to a claim of, for example, breach of contract. *See Calabotta, 213 A.3d at 219 n.5*.

2020 U.S. Dist. LEXIS 18216, *13

**IT IS** on this 31st day of January 2020 **ORDERED** that Defendants' Partial Motion to Dismiss (ECF No. 16) is **DENIED**.

/s/ Michael A. Shipp

**MICHAEL A. SHIPP**

**UNITED STATES DISTRICT JUDGE**

---

**End of Document**

⚠ Last updated  August 24, 2020   05:43:00 pm GMT

## *McGovern v. Southwest Airlines*

United States District Court for the District of New Jersey

January 8, 2013, Decided; January 8, 2013, Filed

Civil Action No. 12-3579 (JBS/KMW)

**Reporter**

2013 U.S. Dist. LEXIS 3095 *; 118 Fair Empl. Prac. Cas. (BNA) 1783; 2013 WL 135128

BLAISE A. MCGOVERN, Plaintiff, v. SOUTHWEST AIRLINES, et al., Defendants.

## Core Terms

harassing, messages

**Counsel:  [*1]** For BLAISE A. MCGOVERN, Plaintiff: SETH N. BRODER, LEAD ATTORNEY, BRODER LAW GROUP, P.C., MOORESTOWN, NJ.

For SOUTHWEST AIRLINES, Defendant: JOHN E. MACDONALD, LEAD ATTORNEY, CONSTANGY, BROOKS & SMITH, LLP, Lawrenceville, NJ.

**Judges:** JEROME B. SIMANDLE, Chief United States District Judge.

**Opinion by:** JEROME B. SIMANDLE

## Opinion

**MEMORANDUM OPINION**

**SIMANDLE**, Chief Judge:

This matter comes before the Court on Defendant

Southwest Airlines' ("Southwest") Motion to Dismiss [Docket Item 4], which will be granted. The sole issue before the Court is whether the New Jersey Law Against Discrimination ("NJLAD") applies against Defendant. The NJLAD does not apply because Plaintiff was exclusively employed in Pennsylvania, not New Jersey, and, therefore, Plaintiff's claims must be dismissed. The Court finds as follows:

1. Plaintiff Blaise A. McGovern commenced this action by filing a Complaint [Docket Item 1, Ex. A] in the Superior Court of New Jersey, Law Division, Camden County. Defendant Southwest removed the action to this Court. The Court has jurisdiction pursuant to *28 U.S.C. § 1332(a)* because Plaintiff is a New Jersey resident, Defendant Southwest is incorporated in and has its principal place of business in Texas, and Plaintiff **[*2]** has alleged over $75,000 in damages.

2. Plaintiff began working for Defendant Southwest on April 27, 2011 as a ramp supervisor at the Philadelphia International Airport. [1] (Compl. ¶¶ 4-5.) Plaintiff alleges that he was subjected to abusive, harassing, and homophobic conduct and comments. (Compl. ¶ 6.) Plaintiff reported the harassment to his supervisors and, as a result, he began to receive threatening and harassing phone calls and text messages. (Compl. ¶ 13.) Plaintiff was terminated on August 9, 2011, after making a written complaint regarding the harassment. (Compl. ¶ 15.) Plaintiff makes claims under the New Jersey Law Against Discrimination ("NJLAD") against Southwest for harassment, hostile work environment, and unlawful termination. Plaintiff also sued John Doe and ABC Entity Defendants to reserve the right to add more named Defendants.

---

[1] As this action is before the Court on a motion to dismiss, the Court accepts as true all factual allegations in the Complaint. *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)*.

2013 U.S. Dist. LEXIS 3095, *2

3. Defendant Southwest filed a Motion to Dismiss [Docket Item 4] because Plaintiff's employment was exclusively in Philadelphia and, therefore, the NJLAD does not apply.

4. Plaintiff filed Opposition [Docket Item 8], arguing that the harassment extended beyond the place of employment, i.e., Pennsylvania, and was felt in Plaintiff's home state, i.e., **[*3]** New Jersey, because he received harassing phone calls, threats, and text messages at his home. Plaintiff argues that the facts of this case merit a choice of law analysis that results in the application of New Jersey's law because New Jersey has the most significant relationship to the facts of the case and Plaintiff has an interest and expectation in being protected from harassment while in his home in New Jersey.

5. A motion to dismiss under *Fed. R. Civ. P. 12(b)(6)* may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in light most favorable to the plaintiff, the court concludes that the plaintiff fails to set forth a claim upon which relief may be granted. *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*.

6. New Jersey courts have consistently applied the law of the state of employment to claims of workplace discrimination and, therefore, only apply the NJLAD if the claimant was employed in New Jersey. See, e.g., *Buccilli v. Timby, Brown & Timby, 283 N.J. Super 6, 10-11, 660 A.2d 1261 (App. Div. 1995)* (a New Jersey resident, employed in Pennsylvania, could not assert a claim under the NJLAD against a law firm even though it had offices **[*4]** in New Jersey); *Satz v. Taipina, 2003 U.S. Dist. LEXIS 27237, 2003 WL 22207205, at *18 (D.N.J. 2003)* (plaintiff could not assert a claim under the NJLAD where defendants had offices in New Jersey, but plaintiff worked exclusively in Pennsylvania and Delaware); *Brunner v. Allied Signal, Inc., 198 F.R.D. 612, 613-14 (D.N.J. 2001)* (the NJLAD does not apply to claims brought by a New Jersey resident against a New Jersey company when claimant was employed exclusively in Pennsylvania).

7. The rationale behind the application of the law of the state of employment is to protect employers from the potential unfairness of having to comply with several different legal regimes merely because they may have employees that reside in different states. See *Buccilli at 11* (noting that "making the rights of each of several co-workers dependent on his or her state of residence

would be an entirely unreasonable result"). In other words, "[l]ooking to the state of employment ensures that the law in the jurisdiction with the strongest interest in the outcome of the litigation controls." *Weinberg v. Interep Corp., CIV. 05-5458 (JBS), 2006 U.S. Dist. LEXIS 23746, 2006 WL 1096908, *7 (D.N.J. Apr. 26, 2006)*.

8. There are exceptions to the general rule: An out-of-state **[*5]** defendant may be held liable under the NJLAD if New Jersey's contacts to the factual scenario are sufficient. *Bowers v. Nat'l Collegiate Athletic Ass'n, 151 F. Supp. 2d 526, 531 (D.N.J. 2001)*. Cases that have applied the NJLAD to an out-of-state employer have involved non-trivial employment responsibilities in New Jersey. For example, in *McDonnell v. State of Illinois, 163 N.J. 298, 748 A.2d 1105 (2000)*, the New Jersey Supreme Court affirmed the Appellate Division's holding that the NJLAD applies to a New Jersey resident's employment claims against the State of Illinois where the New Jersey resident worked in the Illinois Department of Revenue's New Jersey field office. The McDonnell case involved full-time employment in New Jersey. In Weinberg, the Court held that a Plaintiff who was employed in Pennsylvania but conducted five percent of his sales in New Jersey could not assert NJLAD claims because his New Jersey sales were not a substantial fraction of his business and did not "transform his place of employment from Pennsylvania to his customers' locations in New Jersey." *Weinberg 2006 U.S. Dist. LEXIS 23746 at [WL]*6*. In *Karykous v. Sbarro, Inc., CIV. 06-2452 (AET), 2006 U.S. Dist. LEXIS 66900, 2006 WL 2690287 (D.N.J. Sept. 19, 2006)*, the District of New **[*6]** Jersey found that the plaintiff had not established sufficient contacts with New Jersey because "none of [plaintiff's] duties were required to be performed in New Jersey." *2006 U.S. Dist. LEXIS 66900 at [WL]*3*.

9. Essentially, there are no cases applying the NJLAD to out-of-state employers unless the Plaintiff has significant employment responsibilities in New Jersey. In this case, Plaintiff has not alleged that he had any employment responsibilities in New Jersey. He argues that the NJLAD should apply to his employer because he received harassing text messages and phone calls while he was in New Jersey, but he has cited no cases supporting an expansion of the NJLAD's reach based upon the location at which a plaintiff received discriminatory comments. In addition, expanding the NJLAD's reach based on the location where a plaintiff received harassing messages would contravene the policy articulated in *Buccilli*, namely to protect

employers from the potential unfairness of having to comply with several different legal regimes merely because they may have employees that reside in different states.

10. Plaintiff has cited several non-employment cases that do not support applying the NJLAD to these circumstances. The **[*7]** bulk of Plaintiff's opposition relies on *Blakey v. Continental Airlines, Inc., 164 N.J. 38, 751 A. 2d 538 (N.J. 2000)*, in which the New Jersey Supreme Court held that personal jurisdiction may exist in New Jersey over defendants who posted harassing comments on an internet message board that the defendant sponsored. The <u>Blakey</u> plaintiff was based in Newark, New Jersey. *Blakey* does not support the application of the NJLAD to the facts of this case, in which Plaintiff was not employed in New Jersey and in which Defendant has not challenged personal jurisdiction. [2] Plaintiff argues that an employer is responsible for harassment that occurs outside the workplace. The <u>Blakey</u> court noted that "harassment by a supervisor that takes place outside of the workplace can be actionable." *Blakey at 57*. But the issue here is not whether the harassing messages and phone calls are actionable; the issue is whether they are actionable under the NJLAD. Plaintiff's NJLAD claims must be dismissed because the NJLAD does not apply to Plaintiff's employment in Pennsylvania. [3]

11. Defendant Southwest's Motion to Dismiss is granted. Plaintiff's claims against Southwest will be dismissed. If a complaint is vulnerable to 12(b)(6) **[*8]** dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Phillips v. County of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008)*. In this case, amendment would be futile because Plaintiff acknowledged that his employment was based in Philadelphia. Plaintiff's claims are dismissed with prejudice.

12. In addition, because Plaintiff has not identified any John Doe or ABC Entity Defendants and no named Defendants remain in the action, the Court will terminate this action.

13. The accompanying Order will be entered.

<u>January 8, 2013</u>

Date

**/s/ Jerome B. Simandle**

JEROME B. SIMANDLE

Chief U.S. District Judge

---

**End of Document**

---

[2] The Court notes that <u>Blakey</u> was published in 2000, before many of the cases that the Court cites in support of the proposition that the NJLAD does not apply to out-of-state employment. <u>Satz</u> was published in 2003, <u>Brunner</u> in 2001, <u>Weinberg</u> in 2006, and <u>Karykous</u> in 2006.

[3] Plaintiff conducts a lengthy choice-of-law analysis to assert that New Jersey should supply the rule of decision. The Court finds that a choice-of-law assessment is unnecessary because, as explained **[*9]** above, there is no basis to assert New Jersey law against Plaintiff's employer when Plaintiff was exclusively employed in Pennsylvania.

 Neutral
As of: October 21, 2020 3:44 PM Z

## *Hernandez v. Office of the Comm'r of Baseball*

United States District Court for the Southern District of New York

July 11, 2019, Decided; July 11, 2019, Filed

18-CV-9035 (JPO)

**Reporter**
2019 U.S. Dist. LEXIS 115474 *; 2019 WL 3034841

ANGEL HERNANDEZ, Plaintiff, -v- THE OFFICE OF THE COMMISSIONER OF BASEBALL and MAJOR LEAGUE BASEBALL BLUE, INC., Defendants.

**Prior History:** *Hernandez v. Office of the Comm'r of Baseball, 331 F.R.D. 474, 2019 U.S. Dist. LEXIS 103492 (S.D.N.Y., June 20, 2019)*

## Core Terms

Baseball, crew, discriminatory, umpire

**Counsel:** **[*1]** For Angel Hernandez, Plaintiff: Joseph Jeffrey Landen, LEAD ATTORNEY, Murphy Landen Jones PLLC, Fort Mitchell, KY; Kevin L Murphy, Murphy Landen Jones PLLC, Ft. Mitchell, KY.

For The Office of the Commissioner of Baseball, Major League Baseball Blue, Inc., Defendants: Michael Samuel Glassman, LEAD ATTORNEY, Dinsmore & Shohl - 1, Cincinnati, OH; Neil Howard Abramson, Rachel S Philion, PRO HAC VICE, Proskauer Rose LLP (NYC), New York, NY.

**Judges:** J. PAUL OETKEN, United States District Judge.

**Opinion by:** J. PAUL OETKEN

## Opinion

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Angel Hernandez brings this action against Defendants The Office of the Commissioner of Major League Baseball and Major League Baseball Blue, Inc. (collectively, "Major League Baseball"), asserting claims for employment discrimination under *Title VII of the Civil Rights Act of 1964*, *42 U.S.C. § 2000e-2(a)(1)*; *Section 1981 of Title 42 of the U.S. Code*, *42 U.S.C. § 1981*; the *Ohio Civil Rights Act*, *O.R.C. § 4112.02*; the New York State Human Rights Law, *N.Y. Exec. Law § 296* ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 ("NYCHRL"). (Dkt. No. 35 ("Compl.") ¶¶ 106-149.

Major League Baseball now moves to dismiss Hernandez's claims asserted under Ohio law. (Dkt. No. 38.) For the reasons that follow, the motion to dismiss **[*2]** in part is granted.

### I. Background

The following facts are taken from the Amended Complaint and are assumed true for the purposes of this opinion.

Hernandez is a professional baseball umpire and resident of Florida. (Compl. ¶ 1.) The Defendants' principal places of business are located in New York, New York. (Compl. ¶¶ 2-3.) Hernandez does not allege that he is a citizen or resident of Ohio. (*See* Compl. ¶¶ 1, 9.) Neither of the Defendants is alleged to be a citizen of the State of Ohio. (*See* Compl. ¶¶ 2-3.)

In sum and substance, Hernandez alleges that since the arrival of Joe Torre in the Office of the Commissioner of Baseball in 2011, Major League Baseball has discriminated against him on the basis of race, color, or national origin. (Compl. ¶¶ 31, 66, 107.) In support, Hernandez points to changes in his performance ratings following the installment of Torre in the Office (Compl. ¶¶ 29, 39, 53, 58); Major League Baseball's failure to promote him or any non-white umpires to crew chief since 2011 (Compl. ¶¶ 85-90); and Major League Baseball's assignment of almost exclusively white umpires to World Series crews since 2011, and its failure to select Hernandez for those crews despite his qualifications [*3] (Compl. ¶¶ 68-71). According to Hernandez, by not being promoted, "he is being discriminated against in many cities around the United States, including in the city of Cincinnati, Ohio and in the City of New York, New York." (Compl. ¶ 102.)

Hernandez initiated this action on July 3, 2017 in the United States District Court for the Southern District of Ohio. (Dkt. No. 1.) In his original complaint, Hernandez asserted claims under *Title VII*, *Section 1981*, and the Ohio Civil Rights Act. (Dkt. No. 1 ¶¶ 106-135.) On September 30, 2018, the presiding judge in the Southern District of Ohio determined that that court lacked personal jurisdiction over the Defendants and, in lieu of dismissal, transferred the case to this District pursuant to *28 U.S.C. § 1406(a)*. (Dkt. No. 15 at 8, 10-11). Hernandez subsequently filed the operative Amended Complaint on November 27, 2018, adding new claims under the NYSHRL and the NYCHRL. (Compl. ¶¶ 136-149.)

## II. Legal Standard

To survive a motion to dismiss for failure to state a claim upon which relief may be granted, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*. In considering such a motion, a court must accept the factual allegations in the plaintiff's [*4] complaint as true and draw all inferences in the plaintiff's favor. *See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006)*.

## III. Discussion

Major League Baseball moves to dismiss Hernandez' claims brought under the Ohio Civil Rights Act on two grounds. First, Major League Baseball argues that the Act cannot be applied extraterritorially to the employment practices alleged in the Amended Complaint. (Dkt. No. 39 at 5-7.) Second, Major League Baseball argues that Hernandez cannot seek relief under conflicting laws of distinct states for an alleged injury caused by the same set of discrete acts. (Dkt. No. 39 at 8-11.) Because Major League Baseball's motion can be resolved on the second issue, the Court need not address the first.

Major League Baseball takes the position that Hernandez's attempt to bring claims under both Ohio and New York state laws should be approached as a choice of law question, and one state law should be applied to the exclusion of the other. (Dkt. No. 39 at 8.) Hernandez responds that he should nonetheless be permitted to assert claims under both states' laws due to the unusual circumstances of his job. (Dkt. No. 41 at 5.) He points to the transitory nature of his job to argue that he is discriminated against—and [*5] feels the effects of that discrimination—in every state in which he works. (Dkt. No. 41 at 6-7.) From this, Hernandez concludes that he should be permitted to bring claims in both New York and Ohio and effectuate the shared purpose of these states' laws: protecting employees from the discriminatory conduct of their employers. (Dkt. No. 41 at 7.)

Hernandez's argument might have force if he sought to challenge one set of allegedly unlawful employment practices under New York law and a distinct set of discriminatory conduct under Ohio law. But instead, Hernandez seeks to challenge the *same acts* under both laws: Major League Baseball's failure to promote him to crew chief and failure to assign him to World Series umpire crews. (Compl. ¶¶ 127-132, 139-140.) It is well established that where a plaintiff challenges a single course of employer conduct under the laws of two different states, such circumstances present a choice of law question. *See, e.g., Shamley v. ITT Corp., 869 F.2d 167, 171-72 (2d Cir. 1989)*; *Guzman v. Macy's Retail Holdings, No. 09 Civ. 4472, 2010 U.S. Dist. LEXIS 29544, 2010 WL 1222044, at *9 (S.D.N.Y. Mar. 29, 2010)*; *Coraggio v. Time Inc. Magazine Co., No. 94 Civ. 5429, 1995 U.S. Dist. LEXIS 5399, 1995 WL 242047, at *3-4 (S.D.N.Y. Apr. 26, 1995)*. Hernandez makes no attempt to reconcile his claims with this doctrine, nor does he cite any authority for the proposition that the Court can simply ignore a conflict between Ohio and New York law here. Accordingly, the Court approaches [*6] this issue through the choice of law

framework.[1]

"A federal trial court sitting in diversity jurisdiction must apply the law of the forum state to determine the choice-of-law." *Fieger v. Pitney Bowes Credit Corp., 251 F.3d 386, 393 (2d Cir. 2001)*. Moreover, where a case is transferred pursuant to *28 U.S.C. § 1406(a)*, the transferee court must apply the choice of law rules "of the state in which it sits." *Gerena v. Korb, 617 F.3d 197, 204 (2d Cir. 2010)*. "Under New York choice of law rules, the first inquiry in a case presenting a potential choice of law issue is whether there is an actual conflict of laws on the issues presented." *Fed. Ins. Co. v. Am. Home Assur. Co., 639 F.3d 557, 566 (2d Cir. 2011)*. If a court determines that there is an actual conflict, it then "appl[ies] choice-of-law principles and resolve[s] which state's law applies." *Benefield v. Pfizer Inc., 103 F. Supp. 3d 449, 457 (S.D.N.Y. 2015)*.

## A. Conflict Between New York and Ohio Laws

Hernandez alleges that Major League Baseball has discriminated against him on the "basis of his race, color and/or national origin" under both the Ohio Civil Rights Act, *O.R.C. § 4112.02*, (Compl. ¶ 127), and the NYSHRL, *N.Y. Exec. Law § 296*. (Compl. ¶ 140.) The Court first assesses whether these two state laws can be applied without actual conflict.[2]

The Ohio Civil Rights Act permits plaintiffs to recover punitive damages in employment discrimination actions.

---

[1] Though it opposes the application of this framework, Hernandez's response brief makes no attempt to refute Major League Baseball's arguments regarding the proper resolution of the conflict of law inquiry. (Dkt. No. 41 at 5-7.) Through his silence on the matter, the Court could deem Hernandez to have conceded the existence of a conflict and the outcome of Major League Baseball's choice of law analysis. *See Blessinger v. City of New York, No. 17 Civ.108, 2017 U.S. Dist. LEXIS 142397, 2017 WL 3841873, at *3 (S.D.N.Y. Sept. 1, 2017)*. In any event, Major League Baseball's analysis is correct.

[2] Major League Baseball argues that the Ohio Civil Rights Act conflicts with both the State and City's human rights laws. (Dkt. No. 39 at 9.) But under similar circumstances, other courts in this Circuit have only considered whether there was a conflict between state laws. *See Beebe v. New York Times Co., 666 F. Supp. 2d 321, 330 (E.D.N.Y. 2009)*; *Robins v. Max Mara, U.S.A., Inc., 923 F. Supp. 460, 464-65 (S.D.N.Y. 1996)*. The Court takes that same approach here.

*See Rice v. CertainTeed Corp., 84 Ohio St. 3d 417, 1999- Ohio 361, 704 N.E.2d 1217, 1221 (Ohio 1999)*. And both punitive and compensatory damages in employment discrimination [*7] actions under the Act are subject to certain statutory caps. *See Luri v. Republic Servs., Inc., 193 Ohio App. 3d 682, 2011- Ohio 2389, 953 N.E.2d 859, 864, (Ohio Ct. App. 2011)* (citing *O.R.C. §§ 2315.18*, *2315.21*), *rev'd on other grounds*, *132 Ohio St. 3d 316, 2012- Ohio 2914, 971 N.E.2d 944 (Ohio 2012)*. In contrast, punitive damages are not available for employment discrimination actions under the NYSHRL. *See Jackson v. Scotts Co., No. 08 Civ. 1064, 2008 U.S. Dist. LEXIS 32710, 2008 WL 1700224, at *2 (S.D.N.Y. Mar. 27, 2008)*; *see also N.Y. Exec. Law § 297(4)(c)(iv)*. But there is no cap on compensatory damages under the NYSHRL. *See Caravantes v. 53rd St. Partners, LLC, No. 09 Civ. 7821, 2012 U.S. Dist. LEXIS 120182, 2012 WL 3631276, at *21 (S.D.N.Y. Aug. 23, 2012)*.

When two state "statutes differ in the remedies available to successful litigants," courts in this Circuit have determined that the statutes are in conflict. *Robins, 923 F. Supp. at 464*. Specifically, as relevant here, courts have held that state laws are in conflict if one state permits punitive damages but the other does not, *see id.*, or if one state caps available damages but the other does not limit recovery, *see Deutsch v. Novartis Pharms. Corp., 723 F. Supp. 2d 521, 524 (E.D.N.Y. 2010)*. Accordingly, because the remedies available for employment discrimination claims differ under the applicable New York and Ohio laws, those laws are in actual conflict and the Court must employ New York choice of law principles to determine which to apply.

## B. State Interest Analysis

"New York's choice of law rules apply the state interest test in employment discrimination cases." *Guzman, 2010 U.S. Dist. LEXIS 29544, 2010 WL 1222044, at *9*. "Under that test, controlling effect is given 'to the law of the jurisdiction which, because of its relationship [*8] or contact with the occurrence or the parties has the greatest concern with the specific issue raised in the litigation.'" *Robins, 923 F. Supp. at 465* (quoting *Babcock v. Jackson, 12 N.Y.2d 473, 481, 191 N.E.2d 279, 240 N.Y.S.2d 743 (1963))*. In employment discrimination cases, factors that courts consider in determining which state has the greater interest include the residency of the plaintiff, the principal place of business of the defendant, and the location of the alleged discriminatory acts. *See id.*; *Coraggio, 1995*

*U.S. Dist. LEXIS 5399, 1995 WL 242047, at \*4*.

On several occasions, courts in this District have applied the "state interest test" in employment discrimination suits in which plaintiffs asserted claims under both the New York State Human Rights Law and another state's employment discrimination laws. In *Guzman v. Macy's Retail Holdings*, for example, the court used the "state interest" analysis to determine whether to apply New York or New Jersey law in an employment discrimination and retaliation suit. *2010 U.S. Dist. LEXIS 29544, 2010 WL 1222044, at \*8-9*. Because the conduct at issue occurred in New York, the plaintiff was a resident of New York, and the employer was headquartered in New York, the court determined that New York was "intimately concerned with the outcome of [the] litigation" whereas New Jersey had "no interest" in its resolution. *2010 U.S. Dist. LEXIS 29544, [WL] at \*9* (citation omitted). Moreover, in at **[\*9]** least two other cases, courts have found New York to have the greater interest when the employer's principal place of business was located in New York and the alleged discriminatory acts were perpetrated in New York. *See Robins, 923 F. Supp. at 465*; *Coraggio, 1995 U.S. Dist. LEXIS 5399, 1995 WL 242047, at \*4*.

In this case, it is clear that New York's concern for the issues raised in the pleadings outweighs Ohio's. Both Defendants have a principal place of business in New York (Compl. ¶¶ 2-3), a factor that gives New York a strong interest in the outcome of this suit. *See Guzman, 2010 U.S. Dist. LEXIS 29544, 2010 WL 1222044, at \*9*; *Robins, 923 F. Supp. at 465*; *Coraggio, 1995 U.S. Dist. LEXIS 5399, 1995 WL 242047, at \*4*. By comparison, Ohio's interest is limited to Hernandez's allegation that by not being made "crew chief, he is being discriminated against in many cities . . . including the city of Cincinnati, Ohio." (Compl. ¶ 102; *see id.* ¶ 1 (noting that Hernandez is not a resident of Ohio).) What Hernandez means, however, is that the "effects of the Defendants' discriminatory conduct" have been felt in Ohio, as they have been in New York and numerous other states. (Dkt. No. 41 at 7.) Importantly, Hernandez does not allege that "Defendants' decision[s] to not select him for: (1) crew chief, and (2) to umpire the World Series . . . were made in Ohio." (Dkt. No. 15 at 7.) The locus of these challenged employment **[\*10]** decisions—which is often crucial in a determination of state interest, *see Robins, 923 F. Supp. at 465*—has not been alleged here.

Thus, Ohio has no particular interest in this suit, especially compared to New York, which has a strong interest in enforcing employment law with respect to organizations headquartered within its boundaries. *Cf. Shamley, 869 F.2d at 172*. Following New York's "state interest" test, it is evident that New York has both a stronger interest in disputes involving employers operating principally within its boundaries and far more contacts to the parties involved. Therefore New York's employment discrimination law, not Ohio's, applies in this case. The claims asserted by Hernandez under the Ohio Civil Rights Act must be dismissed.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss in part is GRANTED, and Plaintiff's claims under the Ohio Civil Rights Act are hereby dismissed.

The Clerk of Court is directed to close the motion at Docket Number 38.

SO ORDERED.

Dated: July 11, 2019

New York, New York

/s/ J. Paul Oetken

J. PAUL OETKEN

United States District Judge

ⓘ Cited
As of: October 21, 2020 3:45 PM Z

# *Laverty v. Cox Enters.*

United States District Court for the District of New Jersey

January 29, 2019, Decided; January 29, 2019, Filed

Civil Action No. 18-1323 (FLW) (TJB)

**Reporter**
2019 U.S. Dist. LEXIS 13588 *; 2019 WL 351905

MARY LAVERTY, Plaintiff, v. COX ENTERPRISES, INC., et al., Defendants.

**Notice:** NOT FOR PUBLICATION

# Core Terms

subsidiary, discovery, ego, automotive, website, retaliation

**Counsel:** **[*1]** For MARY LAVERTY, Plaintiff: FERNANDO I. RIVERA, CONSOLE MATTIACCI LAW, LLC, MOORESTOWN, NJ.

For COX ENTERPRISES, INC., COX AUTOMOTIVE, INC., doing business as AUTOTRADER.COM, INC., Defendants: LINDSAY MICHELLE SORIN, LEAD ATTORNEY, LITTLER MENDELSON, NEWARK, NJ; RACHEL ANNE SEATON, LEAD ATTORNEY, LITTLER MENDELSON PC, NEWARK, NJ.

**Judges:** Hon. Freda L. Wolfson, United States District Judge.

**Opinion by:** Freda L. Wolfson

# Opinion

**WOLFSON, United States District Judge**:

Before the Court is a motion to dismiss filed by Defendant Cox Enterprises, Inc. ("CEI"), seeking dismissal of Plaintiff Mary Laverty's ("Plaintiff") Complaint for lack of personal jurisdiction, pursuant to *Federal Rule of Civil Procedure 12(b)(2)*. Plaintiff brought suit against CEI and its alleged subsidiary Cox Automotive, Inc. d/b/a Autotrader ("CAI") (collectively, with CEI, "Defendants"), for employment discrimination, asserting the following claims: (1) discrimination and retaliation based on age in violation of the *Age Discrimination in Employment Act*, as amended, *29 U.S.C. § 621, et seq.* ("ADEA"); (2) discrimination and retaliation based on sex in violation of *Title VII of the Civil Rights Act of 1964*, as amended, *42 U.S.C. § 2000e, et seq.* ("Title VII"); (3) discrimination and retaliation based on disability, age, and sex in violation **[*2]** of the *New Jersey Law Against Discrimination*, as amended, N.J.S.A. 10:-5-1, *et seq.* ("NJLAD"); and (4) retaliation in violation of the *Family and Medical Leave Act, 29 U.S.C. § 2601, et seq.* ("FMLA").

For the following reasons, the Court lacks personal jurisdiction over CEI, and, therefore, its motion to dismiss is granted, and all claims against CEI are dismissed.

# I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is a New Jersey resident who worked remotely for CAI from her home office in New Jersey, before

2019 U.S. Dist. LEXIS 13588, *2

being terminated in February 2017.[1] Compl. at ¶¶ II.1, 3, 64. CAI is a Delaware corporation with a principal place of business in Atlanta, GA, *id.* at ¶ II.5, and is a wholly-owned subsidiary of CEI, which is also a Delaware corporation with its principal place of business in Atlanta. *Id.* at ¶ II.6. Plaintiff brings suit against Defendants for wrongful termination due to a pattern of discrimination and retaliation based on a Plaintiff's sex, age, and for exercising her right to protected medical leave. *Id.* at ¶ I.1.

Although Plaintiff never worked for CEI, she attempts to establish personal jurisdiction over the company by contending that CAI is a mere instrumentality of CEI and that both companies share and exercise control over [*3] the work and/or working conditions of CAI's employees, including Plaintiff. *Id.* at ¶¶ II.8, 10. In support, Plaintiff attaches as exhibits to her opposition brief screenshots of the following pages from CEI's website:[2] 1) The "About Us" and "History" sections of the website, stating, "[t]hrough our major divisions—Cox Communications, Cox Automotive and Cox Media Group—we lead in the communications, automotive and media industries," and that "Cox Enterprises employs approximately 55,000 employees in 300 separate businesses," ECF No. 15, Ex. A; 2) The front page of the CAI's website, which includes marketing language regarding CAI's automotive business, *id.*, Ex. B; 3) A short biography of the President and CEO of CEI, Alex Taylor, which states that "he is responsible for the company and its three major subsidiaries: Cox Communications, Cox Automotive and Cox Media Group," *id.*, Ex. C; 4) A "Jobs at Cox" page that indicates that CEI and its affiliates share some hiring policies, *id.*, Ex. D; and 5) A web page indicating that applicants can apply to jobs at New Jersey Cox affiliates, including CAI, through CEI's website. *Id.*, Ex. E.[3]

---

[1] CEI contends that Plaintiff misunderstands the corporate structure of the entities named in the Complaint. According to CEI, CAI and Autotrader are two separate companies, and Plaintiff, in fact, worked for Autotrader, and not CAI. However, at the motion to dismiss stage, I am bound by the allegations in the Complaint, and so will accept that Plaintiff was employed by CAI.

[2] Although Plaintiff has failed to attach these exhibits to an affidavit or declaration, which violates the Federal Rules of Civil Procedure, the Court will nonetheless consider the proffered evidence, since dismissal is warranted even based on these submissions.

[3] Defendant also includes affidavits and exhibits in support of

Plaintiff brought this employment discrimination suit on [*4] January 30, 2018, asserting one count each under the ADEA, Title VII, the NJLAD, and the FMLA. On June 28, 2018, Autotrader, Inc. answered the Complaint, asserting that Plaintiff had misidentified it as CAI, but not contesting this Court's jurisdiction. On the same day, CEI filed the present motion to dismiss due to lack of personal jurisdiction.

## II. LEGAL STANDARD

To withstand a motion to dismiss for lack of personal jurisdiction under *Federal Rule of Civil Procedure 12(b)(2)*, a plaintiff bears the burden of establishing the court's personal jurisdiction over the moving defendant by a preponderance of the evidence. *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009)*; *see Cerciello v. Canale, 563 F. App'x 924, 925 n.1 (3d Cir. 2014)* (noting that the plaintiff "'bears the burden to prove, by a preponderance of the evidence,' that personal jurisdiction is proper.") (citation omitted). "However, when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004)*. Still, to meet its burden, the plaintiff must establish "jurisdictional facts through sworn affidavits or other competent evidence. . . . [A]t no point may a plaintiff rely on [*5] the bare pleadings alone in order to withstand a defendant's *Rule 12(b)(2)* motion to dismiss for lack of in personam jurisdiction." *Id. at 101* (citation and internal quotation marks omitted). If the plaintiff meets this burden, "the burden shifts to the defendant to establish the presence of other considerations that would render the exercise of personal jurisdiction unreasonable." *Display Works, LLC v. Bartley, 182 F. Supp. 3d 166, 172 (D.N.J. 2016)*; *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino, 960 F.2d 1217, 1226 (3d Cir. 1992)*.

"A district court sitting in diversity may assert personal jurisdiction over a nonresident defendant to the extent

---

its argument that jurisdiction is lacking. However, since the Court did "'not hold an evidentiary hearing ..., the plaintiff[ ] need only establish a prima facie case of personal jurisdiction,'" so the Court is bound only to consider Plaintiff's Complaint and supporting evidence. *O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 316 (3d Cir. 2007)* (quoting *Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004)*).

allowed under the law of the forum state." *Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330, 51 V.I. 1219 (3d Cir. 2009)*; see *Fed. R. Civ. P. 4(e)*. In assessing whether personal jurisdiction exists, the Court's analysis is twofold: "[t]he court must first determine whether the relevant state long-arm statute permits the exercise of jurisdiction; if so, the court must then satisfy itself that the exercise of jurisdiction comports with due process." *Display Works, 182 F. Supp. 3d at 172*. "Since New Jersey's long-arm statute allows 'the exercise of personal jurisdiction to the fullest limits of due process,' [the Court must] 'look to federal law for the interpretation of the limits on in personam jurisdiction.'" *Malik v. Cabot Oil & Gas Corp., 710 F. App'x 561, 563 (3d Cir. 2017)* (quoting *IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998))*.

"The *Due Process Clause of the Fourteenth Amendment* sets the outer boundaries of a state tribunal's authority to proceed against a defendant." *Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 923, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011)*. In *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945)*, the Supreme Court held **[*6]** that a state may authorize its courts to exercise personal jurisdiction over a nonresident defendant if that defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id. at 316* (citation omitted). "Following *International Shoe*, 'the relationship among the defendant, the forum, and the litigation . . . became the central concern of the inquiry into personal jurisdiction.'" *Daimler AG v. Bauman, 571 U.S. 117, 126, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014)* (quoting *Shaffer v. Heitner, 433 U.S. 186, 204, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977))*.

## III. DISCUSSION

Plaintiff argues that this Court has both general and specific jurisdiction over CEI. With regard to general jurisdiction, Plaintiff contends that CEI, although neither incorporated nor headquartered in New Jersey, has "continuous and systematic contacts" with the state, or, in the alternative, has an alter ego relationship with CAI, which does not contest jurisdiction. With regard to specific jurisdiction, Plaintiff argues that because CAI engaged in suit-related conduct in New Jersey, CEI, as an alter ego, is also subject to jurisdiction.

### A. General Jurisdiction

"There are two distinct theories under which personal jurisdiction can arise: general and specific." *Allaham v. Naddaf, 635 F. App'x 32, 37-38 (3d Cir. 2015)* (citing *Grimes v. Vitalink Commc'ns Corp., 17 F.3d 1553, 1559 (3d Cir. 1994))*. For a corporation, **[*7]** the "paradig[m] ... bases for general jurisdiction" are its place of incorporation and principal place of business. *Daimler AG, 571 U.S. at 137* (internal quotations omitted). However, while a corporation may also be subject to general jurisdiction in a forum other than where it is incorporated or has its principal place of business, such circumstances are "exceptional" and only appropriate when the following condition is met: the corporation's "affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State." *Id. at 122* (quoting *Goodyear, 564 U.S. at 919*).

As an initial matter, CEI, which is undisputedly incorporated in Delaware with its principal place of business in Georgia, fails to meet the paradigmatic basis for general jurisdiction under *Daimler*. In order to establish general jurisdiction, then, Plaintiff first argues that this is an "exceptional case" due CEI's supposedly extensive contacts with New Jersey that render it at home in the state. In support of this argument, Plaintiff has proffered evidence from CEI's website that, at most, shows CEI and its subsidiaries, including CAI, employ an undisclosed portion of their over 50,000 nationwide employees in New Jersey, **[*8]** and that it "targets and solicits" potential employees in the state. These limited employment relations that Plaintiff cites, standing alone, fall far short of the "continuous and systematic" affiliations with New Jersey required to find that CEI is subject to general jurisdiction in New Jersey. *See, e.g., Oliver v. Funai Corp., Inc., No. 14-4532, 2015 U.S. Dist. LEXIS 169998, 2015 WL 9304541, at *8 (D.N.J. Dec. 21, 2015)* (concluding that the presence of a employees of a large corporation in New Jersey and funneling of products through New Jersey was not enough to convey general jurisdiction); *E. Coast Test Prep, LLC v. Allnurses.com, Inc., No. 15-3202, 2015 U.S. Dist. LEXIS 194027, 2015 WL 12781605, at *3 n.3 (D.N.J. Aug. 28, 2015)* (finding that presence of employees in New Jersey was insufficient to confer general jurisdiction); *McCourt v. A.O. Smith Water Prods. Co., No. 14-221, 2015 U.S. Dist. LEXIS 110111, 2015 WL 4997403, at *3 (D.N.J. Aug. 20, 2015)* (finding no general jurisdiction over corporation that leased two office spaces in New Jersey and had a small percentage of New Jersey

employees). *See also Corcoran v. CVS Health Corp., 169 F. Supp. 3d 970, 980-81 (N.D. Cal. 2016)* (finding no general jurisdiction despite plaintiff's contentions that pharmacy chain "solicits employees in California"). As *Daimler* cautioned, "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler AG, 571 U.S. at 139 n.20*. Yet, taken to its logical conclusion, Plaintiff's argument would subject CEI to general jurisdiction in each state in which one of its subsidiaries operates, which, according to Plaintiff's own evidence, is close to, **[*9]** if not all 50 states. ECF No. 15, Ex. E at 18-19 (listing states in which CEI entities have available jobs). CEI, therefore, does not have "continuous and systematic" contacts sufficient to render it at home in New Jersey.

Plaintiff next attempts to show that general jurisdiction is appropriate under an alter ego theory.[4] Whether the exercise of jurisdiction over a parent corporation is proper under the alterego theory depends upon the details of the unique relationship between the parent corporation and its subsidiary. "The parent-subsidiary relationship itself is not sufficient to establish in personam jurisdiction over the parent entity." *In re Enter. Rent-A-Car Wage & Hour Emp't Practices Litig., 735 F. Supp. 2d 277, 317 (W.D. Pa. 2010)*, aff'd, *683 F.3d 462 (3d Cir. 2012)*; *see also Lucas v. Gulf & W. Indus., Inc., 666 F.2d 800, 805-06 (3d Cir. 1981)* (remarking on factors relevant for jurisdictional analysis between a parent and a subsidiary), *abrogated on other grounds, EF Operating Corp. v. Am. Bldgs., 993 F.2d 1046 (3d Cir. 1993)*; *Carfagno v. Ace, Ltd., No. 04-6184, 2005 U.S. Dist. LEXIS 12614, 2005 WL 1523530, at *6 (D.N.J. June 28, 2005)* (same). In New Jersey, a subsidiary will be deemed to be the alter ego or "mere instrumentality" of its parent if "the parent so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent." *State, Dep't of Envtl. Prot. v. Ventron Corp., 94 N.J. 473, 468 A.2d 150, 164 (N.J. 1983)* (citations omitted). "It is patently clear since *Ventron* that in New Jersey even the exercise of significant control by the parent over the subsidiary will not suffice to pierce **[*10]** the corporate veil." *Craig v. Lake Asbestos of Quebec, Ltd., 843 F.2d 145, 150 (3d Cir. 1988)*.

Courts consider factors such as: "(1) the level of capitalization of the subsidiary; (2) who the subsidiary does business with other than the parent; (3) the day-to-day involvement of the parent's directors, officers and personnel with the subsidiary; and (4) the payment of the subsidiary's salaries and expenses by the parent." *Seltzer v. I.C. Optics, Ltd., 339 F. Supp. 2d 601, 610 (D.N.J. 2004)* (citations omitted); *see also Dewey v. Volkswagen AG, 558 F. Supp. 2d 505, 513 (D.N.J. 2008)* (citations omitted). Liability generally requires that the parent corporation "abused the privilege of incorporation by using the subsidiary to perpetuate a fraud or injustice, or otherwise to circumvent the law." *Patent Incentives, Inc. v. Seiko Epson Corp., No. 88-1407, 1988 U.S. Dist. LEXIS 9933, 1988 WL 92460, at *6 (D.N.J. Sept. 6, 1988)*, aff'd, 878 F.2d 1446 (Fed. Cir. 1989) (citing *Ventron, 468 A.2d at 164*).

Rather than addressing these factors, Plaintiff again merely points to the same website printouts which, according to Plaintiff, show that CEI "funnels" its entire automotive business through CAI; that CEI is responsible for the corporate functions of the Cox Family Entities, including CAI; that it employs some of its over 50,000 employees, including CAI employees, in New Jersey; and that CEI recruits prospective employees on behalf of CAI for employment in New Jersey. The website language that Plaintiff relies on, however, plainly fails to show that CEI is the alter ego of **[*11]** CAI. The page purportedly showing that CEI "funnels" its automotive business through CAI— whatever that may mean—consists of banal marketing language about CAI's automotive business; but that CAI is CEI's automotive subsidiary does not show that CEI has any involvement in the business. Nor do any of the exhibits show that CEI is "responsible" for the corporate functions of CAI. In support of this argument, Plaintiff merely attaches a short biography of CEI's president, Alex Taylor, stating that *he* is responsible for the company and its three major subsidiaries. But sharing of officers or directors amongst parents and subsidiaries is not sufficient to establish that CAI is an alter ego of CEI. *See Leo v. Kerr—McGee, No. 93-1107, 1996 U.S. Dist. LEXIS 6698, 1996 WL 254054, at *6 (D.N.J. May 10, 1996)* (citing *Patent Incentives, 1988 U.S. Dist. LEXIS 9933, 1988 WL 92460, at *7*) (noting that even "[a] significant degree of overlap between directors and officers of a parent and its subsidiary does not establish an alter ego relationship"). Finally, Plaintiff has cited no case holding that a parent company having some vague involvement in a subsidiary's employment decisions has

---

[4] As CAI is likewise neither incorporated nor headquartered in New Jersey, it is unlikely that general jurisdiction exists over CAI sufficient to render the alter ego theory applicable. Neither party has briefed the issue, however. Regardless, even were CAI subject to general jurisdiction, as discussed below, the alter ego theory clearly fails.

2019 U.S. Dist. LEXIS 13588, *11

an alter ego relationship with its subsidiary.[5] In sum, Plaintiff relies on general corporate and marketing statements that vaguely touch on the relationship between CEI and [*12] CAI. As a court in this district has noted in a similar context, "[a]ccepting Plaintiffs' position would extend the alter ego doctrine, such that entities utilizing the same brand, website, and policies would be imputed as alter egos, without demonstrating" that any of the *Seltzer* factors support a finding of an alter ego relationship. *Horowitz v. AT&T Inc., No. 17-482, 2018 U.S. Dist. LEXIS 69191, 2018 WL 1942525, at *9 (D.N.J. Apr. 25, 2018)*. Accordingly, because Plaintiff has not shown that CEI "so dominated [CAI] that it had no separate existence but was merely a conduit for the parent," her alter ego theory must fail. *Seltzer, 339 F. Supp. 2d at 610* (citing *Ventron, 468 A.2d at 164*).

Thus, because CEI is not "at home" in New Jersey, and because CAI is not an "alter ego" of CEI, this Court lacks general jurisdiction over CEI.

## B. Specific Jurisdiction

In the absence of general jurisdiction, a plaintiff may rely on specific jurisdiction where the cause of action is related to, or arises out of, the defendant's contacts with the forum. *IMO Indus., Inc., 155 F.3d at 259* (citation omitted). In that connection, establishing specific jurisdiction under the *Due Process Clause* requires satisfaction of a three-part test. *O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 317 (3d Cir. 2007)*. First, the defendant must have "purposefully directed [its] activities" at the forum. *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)* (quotation marks omitted). Second, the litigation [*13] must "arise out of or relate to" at least one of those activities. *Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 418, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)*. And third, if the prior two

requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" *O'Connor, 496 F.3d at 316* (quoting *Int'l Shoe, 326 U.S. at 320*).

Plaintiff's argument in support of specific jurisdiction rests on the supposed alter ego relationship between CEI and CAI: because CAI, by allegedly wrongfully terminating Plaintiff in New Jersey, engaged in suit-specific conduct in the forum state, so too did CEI, which allegedly controls CAI's operations. However, as set forth above, the relationship between CEI and CAI is not, as Plaintiff contends, so "integral and intertwined" as to render CEI Plaintiff's employer. In that regard, Plaintiff has not sufficiently alleged that CAI is an alter ego of CEI such that CAI's actions can be imputed onto its parent company. There are, therefore, no allegations that the suit arises out of, or relates to, any activities of CEI in New Jersey. Accordingly, the Court also lacks specific jurisdiction over CEI.

## C. Jurisdictional Discovery

In an effort to avoid dismissal of CEI, Plaintiff, at the conclusion of her brief, tacks on a request for jurisdictional [*14] discovery in order to determine the full extent of CEI's contacts with New Jersey. The Supreme Court has advised that "where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." *Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 n. 13, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978)*. In general, courts within the Third Circuit permit jurisdictional discovery "unless the plaintiff's claim is 'clearly frivolous.'" *Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003)* (quoting *Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 107 F.3d 1026, 1042 (3d Cir. 1997)*). Additionally, the Third Circuit has instructed that "jurisdictional discovery [is] particularly appropriate where a defendant is a corporation." *Rocke v. Pebble Beach Co., 541 Fed.Appx. 208, 212 (3d Cir. 2013)*. Nonetheless, jurisdictional discovery is not warranted unless the plaintiff "presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state ....'" *Toys "R" Us, 318 F.3d at 456* (quoting *Mellon Bank, 960 F.2d at 1223*). Thus, a plaintiff may not "undertake a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery." *Eurofins Pharma US Holdings v. BioAlliance Pharma SA, 623 F.3d 147, 157 (3d Cir. 2010)*; *see Lincoln Ben.*

---

[5] The case that Plaintiff does cite—*Williams v. Ranger Am. of the V.I. Inc., 14-0017, 2016 U.S. Dist. LEXIS 172585, 2016 WL 7238805 (D.V.I. Dec. 13, 2016)*—is not controlling and is distinguishable. There, the court found that an alter ego relationship existed when the plaintiff provided evidence sufficient to infer that the parent corporation actually *controlled* the hiring and firing decisions of its subsidiary. *2016 U.S. Dist. LEXIS 172585, [WL] at *3*. Here, Plaintiff merely presents evidence that applicants can apply to jobs at CAI through CEI's website, a fact immaterial to whether CEI controls CAI's employment decisions.

Life Co. v. AEI Life, LLC, 800 F.3d 99, 108 n. 38 (3d Cir. 2015) ("[J]urisdictional discovery is not available merely because the plaintiff requests it.").

Here, Plaintiff has not presented factual allegations that warrant jurisdictional discovery. To that end, the Court has already found that the only forum contacts **[*15]** identified by Plaintiff (some vague involvement in CAI's employment decisions in New Jersey) fall woefully short of the sort of continuous and systematic contacts needed to deem CEI "at home" in New Jersey, and are unrelated to the claims at issue in this suit. And, while Plaintiff argues generally that, "[w]ithout the benefit of formal discovery, Plaintiff is unable to fully uncover the extent of CEI's contacts with New Jersey," ECF No. 15 at 6, Plaintiff concedes that CEI is a Delaware corporation with its principal place of business in Georgia, and has not alleged any other specific facts demonstrating that CEI may have additional contacts in New Jersey. Accordingly, because Plaintiff has failed to allege with any particularity facts suggesting that either general or specific personal jurisdiction may exist over CEI with respect to the claims at issue in this case, the Court finds that jurisdictional discovery would be futile, and Plaintiff's request is denied. *See Malik, 710 Fed.Appx. at 565* (affirming the District Court's denial of jurisdictional discovery, where the plaintiff "did not present factual allegations that suggested with reasonable particularity the possible existence of the requisite contacts **[*16]** between appellees and the forum state to warrant jurisdictional discovery"); *Barth v. Walt Disney Parks & Resorts U.S., Inc., 697 Fed.Appx. 119, 120 (3d Cir. 2017)* (affirming denial of request for jurisdictional discovery, where "jurisdictional discovery would have been futile.").

**D. Leave to Amend**

As with her request for jurisdictional discovery, Plaintiff makes a last-ditch effort to avoid dismissal of CEI by including a bare, conclusory request for leave to amend at the end of her brief. ECF No. 15 at 11 ("[I]*n lieu of* a dismissal of CEI for lack of personal jurisdiction, the Court should grant Plaintiff leave to amend her Complaint because justice so requires that Plaintiff be afforded the opportunity to correct any deficiencies contained therein as may be determined by the Court."). This request, "lacking a statement for the grounds for amendment and dangling at the end of [her] memorandum, [does] not rise to the level of a motion for leave to amend."' *Ramsgate Court Townhome Ass'n v. W. Chester Borough, 313 F.3d 157, 161 (3d Cir. 2002)*

(quoting *Calderon v. Kansas Dep't of Soc. & Rehab. Servs., 181 F.3d 1180, 1187 (10th Cir. 1999))*.

Without having been provided a proposed amended complaint or at least a description of how amendment would confer personal jurisdiction, this Court has "nothing upon which to exercise its discretion" to permit a curative amendment. *See id.* (citing *Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000))*; *see also Pervasive Software Inc. v. Lexware GmbH & Co. KG, 688 F.3d 214, 232 (5th Cir. 2012)* (finding no error in the district court's decision **[*17]** to deny Plaintiff's motion to amend its complaint where it "made only a general request for leave to amend and did not identify how amendment would confer personal jurisdiction over [the defendant]"). Therefore, Plaintiff's last-gasp request for leave to amend is denied.

**IV. CONCLUSION**

For the foregoing reasons, as this Court lacks personal jurisdiction over CEI, CEI's motion to dismiss is granted, and CEI is dismissed from the case.

Dated: January 29, 2019

/s/ Freda L. Wolfson

Hon. Freda L. Wolfson

United States District Judge

**ORDER**

**THIS MATTER** having been opened to the Court by Rachel A. Seaton, Esq., counsel for Defendant Cox Enterprises, Inc. ("Defendant" or "CEI") on a motion to dismiss for lack of personal jurisdiction pursuant to *Federal Rule of Civil Procedure 12(b)(2)*; it appearing that Plaintiff Mary Laverty ("Plaintiff"), through her counsel Fernando I. Rivera, Esq., has opposed Defendant's motion; the Court having considered the submissions of the parties, pursuant to *Federal Rule of Civil Procedure 78*; for the reasons set forth in the Opinion filed on this date, and for good cause shown,

**IT IS** on this 29th day of January, 2019,

**ORDERED** that the Defendant's motion to dismiss (Dkt. No. 13) is **GRANTED** and all claims against CEI are **DISMISSED**.

/s/ Freda L. **[*18]** Wolfson

2019 U.S. Dist. LEXIS 13588, *18

The Honorable Freda L. Wolfson

United States District Judge

---

**End of Document**