**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SAMBIT PATTANAYAK,<br><br>           Plaintiff,<br>vs.<br><br>MASTERCARD INTERNATIONAL<br>INCORPORATED,<br><br>           Defendant. | **Case No. 21-cv-02657-GBD** |

---

**PLAINTIFF SAMBIT PATTANAYAK'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT MASTERCARD INTERNATIONAL INCORPORATED'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT**

---

**PIRO, ZINNA, CIFELLI, PARIS & GENITEMPO, L.L.C.**

Alan Genitempo, Esq.
360 Passaic Avenue
Nutley, New Jersey 07110


ATTORNEYS FOR PLAINTIFF
SAMBIT PATTANAYAK

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................... 1

COUNTER-STATEMENT OF FACTS ..................................................................... 2

PROCEDURAL HISTORY ........................................................................................ 7

LEGAL ARGUMENT ................................................................................................. 8

    STANDARD ............................................................................................................. 8

    POINT ONE ............................................................................................................. 9

        PLAINTIFF FILED A FIRST AMENDED COMPLAINT AS A MATTER OF COURSE, PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 15(a)(1)(B) ...................................................................................................... 9

    POINT TWO ........................................................................................................... 11

        PLAINTIFF'S FIRST AMENDED COMPLAINT SETS FORTH VIABLE CLAIMS UPON WHICH RELIEF CAN BE GRANTED ................................................. 11

        a.   Plaintiff's First Amended Complaint Establishes a Prima Facie Case of Race and National Origin Discrimination. ............ 11

        b.   Plaintiff's First Amended Complaint Establishes a Prima Facie Case of Retaliation. ..................................................... 15

        c.   Plaintiff's First Amended Complaint Establishes a Prima Facie Case of the Creation of a Hostile Work Environment. ....... 17

        d.   Plaintiff's First Amended Complaint Establishes a Prima Facie Case of Disability Discrimination. ............................. 21

    CONCLUSION ....................................................................................................... 24

**TABLE OF AUTHORITIES**

**Cases**

Arbaugh v. Y&H Corp., 546 U.S. 500, (2006).................... 11

Ashcroft v. Iqbal, 556 U.S. 662, (2009)......................... 9

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, (2007).......... 9

Bowen-Hooks v. City of New York, 13 F. Supp. 3d 179, (E.D.N.Y.
2014) ...................................................... 16

Feingold v. New York, 366 F.3d 138, (2d Cir.2004)............. 12

Fox v. Costco Wholesale Corp., 918 F.3d 65, (2d Cir. 2019).... 18

Harvin v. Manhattan and Bronx Surface Transit Operating Auth.,
767 F. App'x 123, (2d Cir. 2019) ........................ 18, 19

Hayut v. State Univ. of N.Y., 352 F.3d 733, (2d Cir.2003)..... 19

Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.,
716 F.3d 10, (2d Cir.2013) ............................... 16

McDonnell Douglas v. Green, 411 U.S. 792 (1973)............... 15

Patane v. Clark, 508 F.3d 106, (2d Cir.2007).................. 19

Raniola v. Bratton, 243 F.3d 610, (2d Cir. 2001).............. 18

Rivera v. Rochester Genesee Reg'l Transp. Auth., 702 F.3d 685,
(2d Cir.2012) ............................................ 19

Robinson v. Harvard Prot. Servs., 495 Fed.Appx. 140, (2d
Cir.2012) ............................................... 19

Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, (2d Cir. 1998).... 22

Streit v. Bushnell, 424 F. Supp. 2d 633, (S.D.N.Y. 2006)....... 9

Summa v. Hofstra Univ., 708 F.3d 115, (2d Cir.2013).......... 15

Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, (1981). 10

Viruet v. City of New York, No. 16 Civ. 8327 (JGK), 2019 WL
1979325, at *17 (S.D.N.Y. May 3, 2019) ..................... 18

Williams v. Geiger, 447 F. Supp. 3d 68, (S.D.N.Y. 2020)... 18, 22

**Statutes**

§ 2000e-5(f)(3)............................................... 10

28 U.S.C. § 1331............................................. 10

28 U.S.C. § 1367............................................. 11

28 U.S.C. § 1367(a)......................................... 11

42 U.S.C. § 12101........................................ 2, 10, 11

42 U.S.C. § 12102(a)......................................... 22

42 U.S.C. § 12112(a)......................................... 21

42 U.S.C. § 2000e........................................ passim

42 U.S.C.A. § 12101........................................... 1

N.J.S.A. 10:5-1......................................... 1, 10

N.Y. Exec. Law § 290............................... 1, 2, 10, 11

**Rules**

Fed. R. Civ. P. 12(b)(6)................................. passim

Fed. R. Civ. P. 15(a)(1)(b)............................... 1, 10

Fed. R. Civ. P. 15(a)(1)(B)................................. 10

## PRELIMINARY STATEMENT

Plaintiff, Sambit Pattanayak ("Plaintiff"), submits this legal brief in opposition of Defendant MasterCard International Incorporated's ("Defendant") motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiff's Complaint was initially filed on August 13, 2020 in the Superior Court of New Jersey, Hudson County, and therefore sets forth causes of action pursuant to the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. Shortly thereafter, on September 14, 2020, the matter was removed to the District of New Jersey, and ultimately transferred to the United States District Court, Southern District of New York on March 29, 2021.

Accordingly, pursuant to Fed. R. Civ. P. 15(a)(1)(b), Plaintiff amended his pleading as a matter of course within twenty-one (21) days after service of a motion under Rule 12(b), setting forth causes of action arising under Federal and New York State law, specifically under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., The Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C.A. § 12101 et seq., and the New York State Human Rights Law (the "Human Rights Law"), N.Y. Exec. Law § 290 et seq.

Plaintiff's First Amended Complaint sets forth a *prima facie* case of unlawful discrimination, retaliation, disparate treatment, and the unlawful creation of a hostile work environment under Title

VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., The Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., and the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq.

As a result, Plaintiff respectfully requests Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) be denied.

<u>**COUNTER-STATEMENT OF FACTS**</u>

In or around September of 2012, Plaintiff was hired as Vice President of Product Management in Defendant MasterCard's New York Offices. See, Dkt. No. 28 at ¶12[1]. Approximately three years later, in October of 2015, Plaintiff was transferred to Defendant's Singapore Branch, but continued reporting to his existing manager, Mr. Richard Crum, based in Defendant's New York offices. Id. at ¶¶13-15.

Plaintiff's wife, who was a Vice President at Defendant MasterCard working in the same division as Plaintiff, was also transferred to Singapore. Id. at ¶14. In 2016, Plaintiff's wife was terminated by Defendant after raising concerns of discrimination and retaliation against her which began in New York, prior to the Singapore transfer, in mid-2015. Id. at ¶23. Plaintiff's wife was terminated with a settlement agreement in October 2016 following her own allegations. Id. at ¶94.

---

[1] Plaintiff's First Amended Complaint, Dkt. No. 28, is attached hereto as **<u>Exhibit A</u>**.

In April 2017, Plaintiff commenced a new role as Vice President ("VP") of Client Services within Defendant MasterCard Singapore to establish and lead the new Applied Predictive Technologies ("APT") division in Southeast and South Asia. Id. at ¶15. Equivalent leads of international divisions for APT were at a Senior Vice President ("SVP") level but Plaintiff, of Indian national origin, was at a lower VP level. Id. at ¶57

Throughout his employment Plaintiff executed his job duties and responsibilities, received strong performance reviews, and reached key revenue achievements. Id. at ¶19. Despite Plaintiff's strong performance and accomplishments, Defendant subjected Plaintiff to continuous discrimination and harassment for nearly two and a half years (from 2016 through 2018). Id. at ¶21.

Plaintiff's superior, Mr. Peraino, in March 2016 cursed at Plaintiff using extremely abusive, foul language, humiliated, and threatened Plaintiff in front of his manager, executive leader (Mr. Sachin Mehra), peers and subordinates. Id. at ¶¶25-27. Subsequently, Mr. Peraino, in a one-on-one session, stated, "I am going to come after you". Id. at ¶30. On numerous occasions, Plaintiff complained to his manager, Mr. Crum, regarding Mr. Peraino's behavior and threats, yet Mr. Peraino's conduct was never investigated or any actions taken. Id. at ¶¶31-32.

After filing his complaint with his manager, Mr. Crum, Plaintiff's position was changed, mid-year in 2016, to a completely

different role, and Plaintiff was given a "sales target" which was not given to any other employee within his division, including the sales team. Id. at ¶¶33-36.

In late 2016, during the annual review meeting held by managers, Mr. Peraino explicitly pushed for, and ensured, a poor year-end performance review for Plaintiff, just as he had threatened to do in the March 2016 incidents in New York. Id. at ¶¶38-39. While Plaintiff received "Meets Expectations" as his performance rating, many of his accomplishments were ignored in the performance review, and the review included negative written feedback with no concrete examples or proof. Id. at ¶40. As a result, Plaintiff received a severely reduced annual bonus compared to prior years and below the set target, and was informed that he would not receive an annual equity grant which he had previously received for multiple years in the same role. Id. at ¶42.

In February 2017, Plaintiff, after not getting any support from his manager, Mr. Crum, about his complaints, again reported multiple instances of retaliation, harassment, and discrimination, this time to Defendant's Human Resources and Employee Relations groups based in New York. Id. at ¶44. Rather than conducting an investigation, Plaintiff was asked to "move forward." Id. at ¶45. Further, Defendant's Employee Relations repeatedly asked Plaintiff

what *he* would do to not be a target of harassment and discrimination. Id. at ¶45.

Subsequently, while at the APT division, Plaintiff informed his Manager, Mr. Setrakian, and APT Human Resources, Ms. Cathy Baker, both based in the United States in mid-2017 that he required a medical leave of absence, and provided Defendant, as required, with a doctor's note confirming a diagnosis of dysthymia, a long-term form of chronic depression. Id. at ¶48. Plaintiff's was informed that employees may take up to two months paid leave and an additional four months of unpaid medical leave, yet Plaintiff's additional four month unpaid extension request was denied by Mr. Setrakian, unlike a coworker in a similar situation. Id. at ¶¶49-50.

After returning from his medical leave, Plaintiff was informed by a superior, Mr. Ed Lee, SVP of the APT Division, that the APT Division had decided to hold back moving allocated resources to Plaintiff due to Plaintiff's health issues and potentially non-existent long-term career at the company, a decision made directly in response to Plaintiff's disability. Id. at ¶51.

Defendant's six equivalent international regional teams were staffed with approximately six to twelve consultants and salespeople. Id. at ¶55. These international teams also had administrative and clerical support. Id. Comparatively, Plaintiff

was the only employee covering his region as a one-person team without administrative and clerical support. Id. at ¶56. Staffing was delayed and blocked, particularly after the disclosure of his medical condition. Id. at ¶57. As a result, Plaintiff's dotted-line manager, Eric Schneider, on multiple occasions, referred to Plaintiff as being treated by his division's leadership as the "red-headed stepchild" of the division. Id. at ¶59.

Plaintiff again raised concerns to his manager, Mr. Setrakian, superiors and Defendant's Human Resources Department regarding the continued lack of hiring or moving of support staff, as well as Plaintiff's reduced bonus for the year 2017 (paid in February 2018). Id. at ¶61. In response, Mr. Setrakian severely limited communications with Plaintiff, began making decisions about Plaintiff's work and projects in his scope without consulting him, and became more distant and uninterested in Plaintiff's work after his complaint. Id. at ¶¶62-63.

In July 2018, while suffering continued medical issues, in-part due to Plaintiff not receiving accommodations or resources, Plaintiff spoke with his manager, Mr. Setrakian, about a role change and transfer to another division. Id. at ¶66. However, this conversation was not well received. Id. Plaintiff followed up regarding his transfer with his superiors in Singapore, Mr. Schneider, and senior Defendant executives including Asia-Pacific Head, Mr. Ari Sarker. Id. at ¶67. While these conversations were

well received at the time, and plans for formed for moving Plaintiff to another role, multiple meetings were postponed without explanation. Id.

Ultimately, on August 16, 2018, Plaintiff's manager, Mr. Setrakian, and Defendant's Human Resources personnel, Ms. Wadhera (HR for Plaintiff's previous division and not the current APT Division where Plaintiff was working), informed Plaintiff that Defendant was terminating him without cause, and presented for review a grossly inadequate separation agreement which included releasing Defendant of any liability. Id. at ¶68. Shortly thereafter, on or around August 26, 2018, Plaintiff was officially terminated without cause. Id. at ¶71.

## PROCEDURAL HISTORY

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or around January 29, 2019. The matter went to mediation, and the EEOC's efforts to mediate the claims were unsuccessful. Plaintiff was issued a Notice of Right to Sue on or around August 8, 2020.

On August 13, 2020, Plaintiff filed a Complaint and Jury demand in the Superior Court of New Jersey, Hudson County. See, Dkt. No. 1. On or around September 14, 2020, Plaintiff received notice that Defendant removed the matter to the District Court of New Jersey. See, Dkt. No. 2.

Subsequently, Defendant moved to dismiss this matter for lack of personal jurisdiction. See, Dkt. No. 6. Defendant's motion was granted on or around March 12, 2021. See, Dkt. No. 14. Within the District Court's Opinion, the Hon. Kevin McNulty, U.S.D.J. afforded the parties the opportunity to submit letter submissions stating their positions as to whether the action should be dismissed without prejudice or transferred, and if transferred, to which district. See, Dkt. No. 14. On March 23, 2021, Defendant submitted its request to transfer the matter to the Southern District of New York. See, Dkt. No. 15.

On March 24, 2021, Plaintiff submitted its request to transfer the matter to the United States District Court for the Southern District of New York. See, Dkt. No. 16. Ultimately, on March 29, 2021, the matter was transferred to this Court. See, Dkt. No. 17.

On April 26, 2021, Plaintiff filed a First Amended Complaint. See, Dkt. No. 27. However, due to a "Filing Error" Plaintiff resubmitted his First Amended Complaint on April 28, 2021. See, Dkt. No. 28.

## LEGAL ARGUMENT

### STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to seek dismissal based upon a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss for failure to state a claim may only be

granted if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 <u>U.S</u>. 544, 570 (2007). "A court must accept all well-pleaded factual assertions in the Complaint as true and draw all reasonable inferences in favor of the plaintiff. <u>Streit v. Bushnell</u>, 424 F. Supp. 2d 633, 638 (S.D.N.Y. 2006)

At motion-to-dismiss stage of proceeding, it is not the role of the Court "to choose summarily who is right or wrong, to sift through a meager record and decide which litigant is acting in good or bad faith, or which claims or defenses are meritorious and worthy of final judgment." <u>Streit</u>, 424 F. Supp. at 638. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009).

At the summary judgment stage, the burden a plaintiff must meet is "not onerous" and has been described as de minimis. <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981).

<b><u>POINT ONE</u></b>

<b><u>PLAINTIFF FILED A FIRST AMENDED COMPLAINT AS A MATTER OF COURSE, PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 15(a)(1)(B)</u></b>

On August 13, 2020, Plaintiff filed a Complaint and Jury demand in the Superior Court of New Jersey, Hudson County. <u>See</u>, Dkt. No. 1. Therefore, Plaintiff set forth causes of action

pursuant to the New Jersey Law Against Discrimination, <u>N.J.S.A.</u> 10:5-1 <u>et</u> <u>seq</u>. Approximately eight months after the filing of Plaintiff's initial Complaint, this matter was transferred to the United States District Court for the Southern District of New York. <u>See</u>, Dkt. No. 17.

Pursuant to Fed. R. Civ. P. 15(a)(1)(b), a party may amend its pleading once as a matter of course within 21 days after service of a motion under Rule 12(b). Fed. R. Civ. P. 15(a)(1)(B). Accordingly, Plaintiff filed a First Amended Complaint setting forth claims arising under Federal and New York State law, specifically under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et</u> <u>seq</u>., The Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., and the New York State Human Rights Law, N.Y. Exec. Law § 290 <u>et</u> <u>seq</u>. <u>See</u>, Dkt. No. 28.

Undoubtedly, this Court has subject matter jurisdiction to hear and adjudicate claims arising out of Title VII, the ADA, and the Human Rights Law. "[T]he Judicial Code gives federal courts subject-matter jurisdiction over all civil actions "arising under" the laws of the United States. <u>Arbaugh v. Y&H Corp.</u>, 546 U.S. 500, 503 (2006), citing 28 U.S.C. § 1331.

Title VII of the Civil Rights Act of 1964's jurisdictional provision empowers federal courts to adjudicate civil actions "brought under" Title VII. § 2000e-5(f)(3). Federal district

courts also inherently have jurisdiction over claims brought under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.

Moreover, the supplemental jurisdiction statute, 28 U.S.C. § 1367, provides that once a district court has "original jurisdiction" over an action in a case, it may also adjudicate all other claims that form "part of the same case or controversy." 28 U.S.C. § 1367(a). Thus, Plaintiff's claims arising out of the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq., may be adjudicated by this Court.

Accordingly, Plaintiff's First Amended Complaint is sufficient on its face to invoke federal jurisdiction.

**POINT TWO**

**PLAINTIFF'S FIRST AMENDED COMPLAINT SETS FORTH VIABLE CLAIMS UPON WHICH RELIEF CAN BE GRANTED**

Plaintiff's First Amended Complaint sets forth a *prima facie* case of unlawful discrimination, retaliation, disparate treatment, and the unlawful creation of a hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., The Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., and the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq.

As a result, Plaintiff respectfully requests Defendant's motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), be denied.

**a. Plaintiff's First Amended Complaint Establishes a Prima Facie Case of Race and National Origin Discrimination.**

Title VII of the Civil Rights Act of 1964 provides, "It shall be an unlawful employment practice for an employer. . .to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2.

A plaintiff must demonstrate 1) that he belonged to a protected class; 2) that he was qualified for the position he held; 3) that he suffered an adverse employment action; and 4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination, (citing Feingold v. New York, 366 F.3d 138, 152 (2d Cir.2004)).

Here, Plaintiff's First Amended Complaint sets forth a prima facie case of race and national origin discrimination. Plaintiff is of Indian national origin, and is therefore a member of a protected class. See, Dkt. No. 28 at ¶10. Plaintiff was qualified for the position he held, and received strong performance reviews and reached key revenue achievements. Id. at ¶19. Nonetheless, Plaintiff was unlawfully terminated by Defendant on or around August 24, 2018. Id. at ¶68 and ¶71.

The circumstances surrounding Plaintiff's unlawful termination undoubtedly give rise to an inference of discrimination. Plaintiff was the only employee junior to the

harassers that was of Indian national origin. Id. at ¶28. On one occasion, despite the fact that Plaintiff was working collaboratively on a project with his managers and other supervisory employees, Mr. Peraino, singled out Plaintiff, cursed at him using extremely abusive, foul language, humiliated him, and threatened him. Id. at ¶¶25-27.

Shortly after that March meeting, Mr. Peraino cursed at Plaintiff and explicitly threatened Plaintiff in a one-on-one session by stating, "I am going to come after you". Id. at ¶30. Subsequently, Plaintiff's job duties and responsibilities were changed to an entirely different role. Id. at ¶33. In his new role, Plaintiff was again singled out, and was the only employee within his division that was given a sales target. Id. at ¶35.

Moreover, Plaintiff was informed by a superior, Jason Fryer, that Mr. Peraino pushed for a poor year-end performance review of Plaintiff. Id. at ¶¶38-39. As a result of Plaintiff's performance rating, he received a significantly reduced bonus as compared to prior years. Plaintiff also did not receive any equity, unlike his peers, which Plaintiff has received regularly in prior years. Id. at ¶42. Additionally Plaintiff was asked to seek other employment, to make this his highest priority, by his manager, Mr. Crum and Mr. Crum's manager, Mr. Mehra. Id. at ¶43.

Plaintiff was also treated much differently than a colleague in Defendant's Singapore office who requested leave due to a

health/personal condition. Id. at ¶¶49-50. Plaintiff was informed a colleague was given approximately one year off work to focus on her personal situation, and all her benefits and accrued compensation were preserved, yet Plaintiff did not receive the same treatment. Id.

Nor did Plaintiff receive the same support as his non-Indian coworkers. Id. at ¶53. Plaintiff's six equivalent international regional team leads were staffed with approximately six to twelve consultants and salespeople, as well as administrative and clerical support. Id. at ¶55. Comparatively, Plaintiff was the only employee covering his region as a one-person team without administrative and clerical support. Id.

Notably, Plaintiff's dotted-line manager based in Singapore, on several occasions, referred to Plaintiff as being treated by Defendant's leadership as the "red-headed stepchild" of the division, meaning Plaintiff was not treated on par with others at his level. Id. at ¶59. Ultimately, Plaintiff suffered an adverse employment action and was unlawfully terminated on or around August 16, 2018. Id. at ¶68.

While these examples are numerous, they are in no way exhaustive.  Accepting all well-pleaded factual assertions in the complaint as true, and drawing all reasonable inferences in favor of the plaintiff, Plaintiff has pled sufficient facts to state a claim to relief that is plausible on its face. Accordingly,

Plaintiff respectfully requests Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) be denied.

### b. Plaintiff's First Amended Complaint Establishes a Prima Facie Case of Retaliation.

Retaliation claims under Title VII and the New York State Human Rights Law are assessed using the McDonnell Douglas v. Green, 411 U.S. 792 (1973), burden-shifting framework. Summa v. Hofstra Univ., 708 F.3d 115, 125 (2d Cir.2013). In order to establish a prima facie case of retaliation, a plaintiff must establish, "(1) he engaged in protected activity; (2) the employer was aware of this activity; (3) the employee suffered a materially adverse employment action; and (4) there was a causal connection between the alleged adverse action and the protected activity." Bowen-Hooks v. City of New York, 13 F. Supp. 3d 179, 221 (E.D.N.Y. 2014), (citing Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 14 (2d Cir.2013)).

Here, Plaintiff engaged in a protected activity by filing several formal and informal complaints against his supervisors and superiors. See, Dkt. No. 28 at ¶¶31, 34, 44, 61. Shortly after Plaintiff filed one of these complaints against his superior, Mr. Peraino, Plaintiff was informed that his job responsibilities and performance objectives were being changed, mid-year, to an entirely different role. Id. at ¶33. In addition to the new role,

plaintiff was given a sales target, which no other employee was given. Id. at ¶35.

On another occasion, Plaintiff reported multiple instances of harassment, discrimination, and retaliation, which had been ongoing since early 2016, to his manager and Defendant's Human Resources and Employee Relations groups based in New York. Id. at ¶44. Rather than conduct an investigation, Defendant simply told Plaintiff to "move forward." Id. at ¶45. Moreover, Defendant's Employee Relations repeatedly asked Plaintiff what he would do to not be a target of harassment and discrimination, essentially lying blame on Plaintiff. Id.

Subsequently, at the APT Division, , Plaintiff was provided less support than given to peers with similar responsibilities as well as to subordinates two levels below him. Id. at ¶53. In March of 2018, Plaintiff again raised concerns to his supervisors, Human Resources, and superiors regarding the continued lack of hiring or moving of support staff, as well as Plaintiff's reduced bonus for the year 2017, despite Plaintiff's strong performance. Id. at ¶61. In response, Plaintiff's manager at the APT Division, Mr. Setrakian, limited communication with him, made decisions about Plaintiff's work and projects without consulting him, and became distant and uninterested in Plaintiff's achievements and career. Id. at ¶¶62-63.

Furthermore, Plaintiff's wife was terminated in 2016 after having raised concerns of discrimination and retaliation against her which began in New York in approximately mid-2015. Id. at ¶23. Plaintiff's wife was terminated with a settlement agreement in 2016 following her own allegations, and upon information and belief, Plaintiff was also retaliated against as a result of his wife's grievances against the very same division and human resources personnel, Mary Sexton and Meena Wadhera. Id. at ¶94. Ultimately, Plaintiff suffered a materially adverse employment action, and was unlawfully terminated. Id. at ¶68.

Accepting all well-pleaded factual assertions in the complaint as true, and drawing all reasonable inferences in favor of the Plaintiff, Plaintiff has pled sufficient factual allegations to demonstrate a causal connection between the alleged adverse action and the protected activity. Accordingly, Plaintiff respectfully requests Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) be denied.

**c. Plaintiff's First Amended Complaint Establishes a Prima Facie Case of the Creation of a Hostile Work Environment.**

Under Title VII, a hostile work environment is one form of disparate treatment on the basis of "race, color, religion, sex, or national origin." Raniola v. Bratton, 243 F.3d 610, 617 (2d Cir. 2001), (citing 42 U.S.C. § 2000e-2(a)(1)). Whereas other disparate treatment claims may scrutinize discrete harms such as hiring or

discharge, a hostile work environment claim analyses a workplace environment as a whole to discover whether it is "abusive." Raniola, 243 F.3d at 617.

The Second Circuit recently held that hostile work environment claims are also cognizable under the ADA. Williams v. Geiger, 447 F. Supp. 3d 68, 80 (S.D.N.Y. 2020); also see, Fox v. Costco Wholesale Corp., 918 F.3d 65, 73-74 (2d Cir. 2019); Harvin v. Manhattan and Bronx Surface Transit Operating Auth., 767 F. App'x 123, 128 (2d Cir. 2019) (concluding that "hostile work environment claims are cognizable under the ADA" applying "the standards applicable to claims under Title VII of the Civil Rights Act") (citing Fox, 918 F.3d at 74); Viruet v. City of New York, No. 16 Civ. 8327 (JGK), 2019 WL 1979325, at *17 (S.D.N.Y. May 3, 2019) ("In the recent case Fox v. Costco Wholesale Corp., the court determined that [hostile work environment] claims can be asserted under the ADA"). Accordingly, "the standards applicable to claims under [Title VII] are applicable to hostile work environment claims based on disability. Harvin, 767 F. App'x at 128.

In order to establish a hostile work environment claim, a plaintiff must produce evidence "that the complained of conduct

> (1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's" protected characteristic.

Robinson v. Harvard Prot. Servs., 495 Fed.Appx. 140, 141 (2d
Cir.2012) (quoting Patane v. Clark, 508 F.3d 106, 113 (2d
Cir.2007)).

"In considering whether a plaintiff has met this burden,
courts should 'examin[e] the totality of the circumstances,
including: the frequency of the discriminatory conduct; its
severity; whether it is physically threatening or humiliating, or
a mere offensive utterance; and whether it unreasonably interferes
with the victim's [job] performance.'" Rivera v. Rochester Genesee
Reg'l Transp. Auth., 702 F.3d 685, 693 (2d Cir.2012), (quoting
Hayut v. State Univ. of N.Y., 352 F.3d 733, 745 (2d Cir.2003)).

Here, Plaintiff was subject to a severe and pervasive hostile
work environment that altered the conditions of his employment.
Plaintiff has sufficiently pled factual allegations linking the
Defendant's unlawful conduct to his race, national origin, and
disability. Plaintiff's First Amended Complaint sets forth
numerous examples of the hostile work environment he endured daily.

Plaintiff was singled out, cursed at using extremely abusive,
foul language, humiliated and threatened by his manager, Mr.
Peraino. See, Dkt. 28 at ¶25. Mr. Peraino threatened Plaintiff by
stating, "I am going to come after you," and ultimately succeeded.
Id. at ¶30. Mr. Peraino pushed for a poor year-end performance
review of Plaintiff despite Plaintiff's excellent work

performance. Id. at ¶38. Plaintiff was told by his supervisors to seek new employment in Singapore and to make that his "highest priority," hoping Plaintiff would voluntarily leave Defendant MasterCard. Id. at ¶43.

Plaintiff had a leave request denied by Defendant, and was treated differently than coworkers who applied. Id. at ¶50. When he returned from a short leave, Plaintiff was informed he would not be receiving allocated resources given Plaintiff's health issues and potentially non-existent long-term career at the company. Id. at ¶52. Plaintiff had numerous accommodation and assistance requests denied. Id. at ¶53.

Further, Plaintiff was provided with significantly less support than that given to his peers. Id. at ¶55. Plaintiff did not receive the administrative and clerical support that every regional team received. Id. at ¶¶55-56. Plaintiff repeatedly told his managers and superiors that he was struggling with the immense work load of being the sole employee in his division, which was greatly impacting his health. Id. at ¶66.

Despite Defendant's behavior, and Plaintiff's numerous complaints and pleas to remedy the hostile work environment, Plaintiff was told to "move forward" without an investigation into the complaints made. Id. at ¶45. Not a single complaint was taken seriously, Plaintiff's annual bonus was severely reduced, no equity was given unlike previous years and to peers, and Plaintiff

was asked to seek other employment. As a result, Plaintiff interviewed at and joined the APT Division, and subsequently, at the APT Division, Plaintiff's dotted-line manager, Mr. Schneider, noticed the biased treatment of Defendant MasterCard, and identified Plaintiff as the "red-headed stepchild" of the division. Id. at ¶59.

Indisputably, viewing the totality of the circumstances, Plaintiff has set forth a *prima facie* case of hostile work environment. Defendant created and fostered an environment that a reasonable person would find hostile or abusive, and Plaintiff subjectively perceived it as such. Defendant's abusive conduct simply came as a result of Plaintiff's protected characteristics, namely, his race, national origin, and disability.

Accordingly, Plaintiff respectfully requests Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) be denied.

### d. Plaintiff's First Amended Complaint Establishes a Prima Facie Case of Disability Discrimination.

The ADA prohibits an employer from discharging an employee because of his disability. 42 U.S.C. § 12112(a). To establish a prima facie case of discriminatory discharge under the ADA, a plaintiff must show that:

> "(1) [his] employer is subject to the ADA; (2) [he] suffers from a disability within the meaning of the ADA; (3) [he] could perform the essential functions of her job with or without reasonable accommodation [i.e., that [he] is a 'qualified individual' under the statute];

and (4) [he] was fired because of [his]
disability."

Williams v. Geiger, 447 F. Supp. 3d 68, 81 (S.D.N.Y. 2020),

(quoting Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 869-70 (2d

Cir. 1998)).

Here, there is no dispute Defendant is subject to the ADA.
Moreover, under the ADA, the term "disability" means, with respect
to an individual, a physical or mental impairment that
substantially limits one or more major life activities of such
individual. 42 U.S.C. § 12102(a). Plaintiff suffers from a
disability within the meaning of the ADA, as he suffers from
dysthymia, a long-term form of chronic depression. See, Dkt. 28 at
¶48.

As a result of Plaintiff's disability, he required a medical
leave of absence, and took a two month medical leave from September
2017 until the end of October 2017. Id. at ¶48. While additional
unpaid leave of up to four months was in the Defendant's policy,
and offered to Plaintiff at the start of his medical leave, this
additional leave was then denied by Mr. Setrakian, unlike in the
circumstances of a coworker who sought similar leave. Id. at ¶¶48-
50.

When Plaintiff returned from medical leave he was informed by
Mr. Ed Lee ("Mr. Lee"), SVP of APT Division, that the APT Division
decided to hold back moving allocated resources to Plaintiff given

Plaintiff's health issues and potentially non-existent long-term career at the company. Id. at ¶52. Staffing was delayed and blocked, particularly after the disclosure of Plaintiff's medical condition. Id. at ¶57.

Plaintiff raised concerns to his supervisors, Human Resources, and superiors regarding the continued lack of hiring or moving of support staff after he returned from his disability leave. Id. at ¶61. In response, Defendant severely limited communications with him, and began making decisions about Plaintiff's work and projects in his scope without consulting him. Id. at ¶62.

Despite these hurdles, Plaintiff was able to exceed 2018's full-year sales targets within just the first six months of 2018, all while exacerbating his medical condition. Id. at ¶64. Thus, Plaintiff could perform the essential functions of his job with or without reasonable accommodation.

In July of 2018, due to suffering continued medical issues, Plaintiff spoke with his manager, Mr. Setrakian, about a role change and transfer to another division. Id. at ¶66. This conversation was not received well. Id. Plaintiff then reached out to another superior in Singapore, Mr. Schneider, and senior Defendant executives including Asia-Pacific Head, Mr. Ari Sarker, about a potential transfer. Id. at ¶67. While the conversation was well received at the time, Plaintiff's meetings with the hiring

executives were subsequently postponed without explanation. Id. at ¶67. Shortly thereafter, Plaintiff was informed by his manager Mr. Setrakian, and Defendant's Human Resources personnel, Ms. Wadhera (HR for Plaintiff's previous division and not Plaintiff's current APT division), that he was being terminated without cause. Id. at ¶68.

The circumstances of this matter suggest Plaintiff was terminated due to his disability. Accepting all well-pleaded factual assertions in the complaint as true, and drawing all reasonable inferences in favor of the plaintiff, Plaintiff has pled sufficient factual allegations to demonstrate a causal connection between the alleged adverse action and the protected activity.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) be denied.

**PIRO, ZINNA, CIFELLI,**
**PARIS & GENITEMPO, LLC**
Attorneys for Plaintiff,
Sambit Pattanayak


BY:**/s/Alan Genitempo, Esq.**
        ALAN GENITEMPO, ESQ.

Dated: May 4, 2021