USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: FEB 2 4 2022

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SAMBIT PATTANAYAK,

                    Plaintiff,

     -against-

MASTERCARD INC.,

                    Defendant.

MEMORANDUM DECISION
AND ORDER

21 Civ. 2657 (GBD)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GEORGE B. DANIELS, United States District Judge:

Plaintiff Sambit Pattanayak brings this action against his former employer Defendant Mastercard International Incorporated for race and national origin discrimination, hostile work environment, retaliation, and disability discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C.A. § 12101 et seq., and the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. (the "HRL") (First Amended Complaint ("FAC"), ECF No. 28, 1.)

Before this Court is Defendant's motion to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Notice of Motion to Dismiss FAC, ECF No. 22.) Defendant's motion to dismiss the FAC is GRANTED.

## I. FACTUAL BACKGROUND[1]

Plaintiff Sambit Pattanayak is a resident of New Jersey, and of Indian national origin. (FAC at 9, 10.) Defendant Mastercard International Incorporated is an international company with its headquarters in Westchester, New York. (*Id.* at 7.) Defendant hired Plaintiff in 2012 to work in its New York office. (*Id.* at 12.) Plaintiff reported to Richard Crum. (*Id.* at 13.) In

---

[1] The following facts are taken from the First Amended Complaint.

October 2015, Plaintiff was transferred to Defendant's Singapore office. (*Id.* at 13.) Following his transfer, Plaintiff continued reporting to Crum. (*FAC* at 15.) In March 2017, Scott Setrakian became Plaintiff's manager. (*Id.* at 17).

Plaintiff alleges several incidents of discrimination, retaliation, and hostile work environment from March 2016 through his termination in August 2018. At a group meeting at Defendant's New York office in March 2016, David Peraino, Plaintiff's superior, "singled out Plaintiff, cursed at him using extremely foul language, humiliated him, and threatened him." (*Id.* at 25.) Following that meeting, Peraino met with Plaintiff individually in Peraino's office and stated "I am going to come after you." (*Id.* at ¶ 30.)

In May 2016, Plaintiff attended a "calibration meeting" with Sachin Mehra, the head of Plaintiff's department. (*Id.* at 38.) At this meeting, Mehra informed Plaintiff that his job responsibilities would include selling financial products. (*Id.* at 33.) The new responsibilities required him "to do the work of dozens of personnel in a compressed timeframe." (*Id.* at 33.) At the same meeting, Plaintiff received "a much poorer performance review compared to prior years in the same group" because of Peraino. (*Id.* at 38.)

In February 2017, at his performance review with Richard Crum, Plaintiff received a performance rating of "Meets Expectations." (*Id.* at 40.) At this meeting, Plaintiff's annual bonus was reduced and he was informed that he would not receive an annual equity grant. (*Id.*) Following his performance review meeting, in February 2017, Plaintiff "reported multiple instances of harassment, discrimination, and retaliation, which had been ongoing since 2016 to Defendant's Human Resources and Employee Relations group based in New York." (*Id.* at 42.)

Several months later, in July 2017, Plaintiff informed Setrakian and the head of human resources in his department, Cathy Baker, that he required a medical leave of absence in connection

with a medical diagnosis of dysthymia. (FAC at 47-48.) Plaintiff's request was granted and he took paid medical leave from September 2017 through October 2017. (*Id.*) Plaintiff requested an extension of his medical leave, but that request was denied by Setrakian. (*Id.* at 49.) Plaintiff alleges that another employee in Defendant's Singapore office, outside of Plaintiff's protected class, "was given approximately one year off work to focus on her personal situation, and all her benefits and accrued compensation were preserved." (*Id.* at 50.)

Before and after he returned from his medical leave in October 2017, Plaintiff requested "accommodations based upon his chronic medical condition and as well as the resources he was told would be hired when he started his new job at the APT division," but his requests were not granted. (*Id.* at 51, 53.) After speaking with Plaintiff's manager, Ed Lee, a colleague informed Plaintiff that his division "decided to hold back moving allocated resources to Plaintiff given Plaintiff's health issues and potentially non-existent long-term career at the company." (*Id.* at 52.) Plaintiff also alleges that "staffing was delayed and blocked, particularly after the disclosure of his medical condition." (*Id.* at 57.)

In March of 2018, Plaintiff complained to his supervisors, human resources, and superiors regarding "the continued lack of hiring or moving of support staff, as well as Plaintiff's reduced bonus for the year of 2017." (*Id.* at 59.) Plaintiff did not receive a response, and because of his complaint, Setrakian "severely limited communications with him and began making decisions about Plaintiff's work and projects in his scope without consulting him." (*Id.* at 62.) Several months later, in July 2018, Plaintiff requested a role change and division transfer from Setrakian after "suffering continued medical issues," which was denied. (*Id.* at 66.)

In a meeting with Setrakian and Meena Wadhera from Human Resources on August 16, 2018, Plaintiff was told that he would be terminated without cause and was

3

presented with a "grossly inadequate separation agreement." (FAC at 68.) A week later, Plaintiff

informed human resources that he retained counsel and had legal claims against Defendant under

U.S. Equal Employment Opportunity laws. (*Id.* at 71). Plaintiff was terminated on August 26,

2018, the separation agreement originally offered was rescinded. (*Id.* at 71.)

Plaintiff filed his charge of discrimination with the EEOC on February 25, 2019.

(Transcript of Oral Argument ("OA Transcript"), ECF No. 47, 13:17-14:1 and 18:13-16.)

## II.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is

plausible on its face "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at

678.

On a motion to dismiss, courts must "accept all factual allegations as true and draw all

reasonable inferences in the plaintiff's favor." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104,

110-11 (2d Cir. 2010) (citations omitted). However, "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice" to defeat

a motion to dismiss. *Iqbal*, 556 U.S. at 678. Furthermore, "[w]here a complaint pleads facts that

are 'merely consistent with' a defendant's liability it 'stops short of the line between possibility

and plausibility of 'entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation omitted). Where a

plaintiff fails to plead factual allegations sufficient to "nudge[] their claims across the line from

conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570. A

complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Id.* at 558.

In deciding a motion to dismiss, the district court first identifies allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court then considers whether the plaintiff's remaining well-pleaded factual allegations, which are assumed to be true, "plausibly give rise to an entitlement to relief." *Id.* The issue for the court to decide is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002). For claims under Title VII, "[t]he facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). Instead, "[t]hey need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 311.

## III.    CLAIMS BEFORE MAY 2018 TIME-BARRED UNDER TITLE VII AND ADA

Plaintiff claims that he was subject to discrimination and retaliation in violation of Title VII and the ADA from March 2016 through his August 2018 termination. Defendant argues that discriminatory acts alleged before May 1, 2018 are outside the statute of limitations, and therefore cannot support a claim for relief under the statutes. (Defendant's Memorandum of Law in Support of Motion to Dismiss ("Defendant's Brief"), ECF No. 33, at 8, 12-13.) In opposition, Plaintiff argues that the discriminatory acts occurring outside the statutory period are nonetheless actionable

because they relate to discriminatory acts that took place within the statutory period. (OA Transcript at 18:17-19.)

For a claim of discrimination to be timely under Title VII, a plaintiff suing in New York must file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the discriminatory act. 42 U.S.C. § 2000e–5(e)(1); 29 U.S.C. § 626(d)(1); *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002); *Thomson v. Odyssey House*, No. 14 Civ. 3857 (MKB), 2015 WL 5561209, at \*6 (E.D.N.Y. Sept. 21, 2015), *aff'd,* 652 F. App'x 44 (2d Cir. 2016). The same statutory period applies for claims under the ADA. *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999) (dismissing ADA claim where subject injury occurred over 300-days before plaintiff filed an EEOC charge). Acts of discrimination occurring outside the statutory period "are untimely [ ] and no longer actionable." *Morgan*, 536 U.S. at 110. A discriminatory or retaliatory act occurs on the day that it happened. *Id.* at 115.

Plaintiff's claims that accrued before May 1, 2018 are untimely. Plaintiff filed his EEOC charge on February 25, 2019. Three hundred days prior to the filing date is May 1, 2018. Therefore, any claims that accrued before May 1, 2018 are not timely under Title VII or the ADA.

Plaintiff argues that his untimely allegations relate to discriminatory acts that occurred within the statutory period and therefore his allegations are still actionable under the continuing violation doctrine. (OA Transcript at 37:4-16). The continuing violation doctrine states that when "a plaintiff has experienced a continuous practice and policy of discrimination . . . commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Washington v. Cnty. at Rockland*, 373 F.3d 310, 317 (2d. Cir. 2004). However, the doctrine does not apply to discrete employment actions, which include "termination, failure to promote,

6

denial of transfer, or refusal to hire." *Morgan,* 536 U.S. at 112. As the only timely claims in the FAC concern Plaintiff's request for a transfer or role change in July 2018, and his termination in August 2018, the continuing violation doctrine is inapplicable. Plaintiff's allegations of discrimination prior to May 1, 2019 are not actionable.

## IV.   PLAINTIFF'S CLAIMS UNDER TITLE VII ARE DISMISSED

Plaintiff alleges that Defendant discriminated against him because of his race or national origin, subjected him to a hostile work environment, and retaliated against him in violation of Title VII. Plaintiff has failed to allege facts supporting the elements of his claims under Title VII.

### A. Plaintiff Has Not Stated a Claim for Race or National Origin Discrimination

Plaintiff claims that Defendant discriminated against him on the basis of race and national origin. Defendant argues that Plaintiff's claim fails because FAC does not show that Plaintiff suffered any adverse employment actions because of his race or national origin. (Defendant's Brief at 8.) In opposition, Plaintiff argues that the allegations in the FAC sufficiently show that Plaintiff received less favorable treatment compared to coworkers outside of his protected status. (Plaintiff's Opposition to Defendant's Motion to Dismiss ("Opposition Br."), ECF No. 30, at 6.)

To establish a *prima facie* case of discrimination under Title VII, Plaintiff must show that "(1) []he is a member of a protected class; (2) []he is qualified for h[is] position; (3) []he suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Maynard v. Montefiore Med. Ctr.*, 2021 U.S. Dist. LEXIS 21570, at *12 (S.D.N.Y. Feb. 4, 2021). At the pleadings stage, however, plaintiff does not need to plead factual allegations supporting a *prima facie* claim to survive dismissal. *Littlejohn*, 795 F.3d at 311. Instead, "what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at

7

least minimal support for the proposition that the employer was motivated by discriminatory intent." *Id.*

A plaintiff may show that an employer was motivated discriminatory animus, or that the circumstances of plaintiff's adverse employment action give rise to a reasonable inference of discrimination, based on "the employer's criticism of plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn*, 795 F.3d at 312.

Here, the FAC alleges one act of race discrimination within the statutory period under Title VII: Plaintiff's termination in August 2018. Specifically, the FAC alleges that on August 16, 2018, in a meeting with Setrakian and Wadhera, Plaintiff was informed that Defendant was terminating him without cause and presented him with a "grossly inadequate separation agreement."

Plaintiff's allegations are insufficient to support an inference that he experienced adverse employment action due to his race or national origin. The FAC does not identify any statements about Plaintiff's race or national origin by Setrakian, Wadhera, or any other person who worked with Plaintiff. *Rolle v. Educ. Bus Transp., Inc*. 2014 U.S. Dist. LEXIS 45587, at *15 (E.D.N.Y. Feb. 11, 2014) (dismissing the plaintiff's amended complaint where plaintiff failed to "plead any facts to plausibly suggest that Defendant's misconduct was motivated by animus towards her race, color, sex, age or any other legally protected trait"). Nor does Plaintiff identify any employee that received more favorable treatment than him. *Xu v. City of New York*, 2020 U.S. Dist. LEXIS 250821, at *98 (S.D.N.Y. Dec. 22, 2020) ("[B]eing the only member of a protected class in a department does not give rise to an inference of discrimination.")

8

Plaintiff argues that Peraino's use of intimidating and threatening language against Plaintiff during and after a March 2016 meeting, Peraino's efforts to secure a poor performance review for Plaintiff, and Defendant's failure to give Plaintiff the same support as his peers give rise to an inference of discrimination by Defendant. However, Plaintiff's allegations are untimely under Title VII. *Supra* III. Moreover, even if timely, Plaintiff has not identified any statements by Peraino or anyone else that suggest that Plaintiff was targeted for mistreatment due to any discriminatory animus against Plaintiff on the basis of his race or national origin. Accordingly, Plaintiff does not state a claim for race or national origin discrimination.

## B. Plaintiff Has Not Stated a Claim for Retaliation

Plaintiff claims that Defendant retaliated against him after he complained about discrimination to his manager, Human Resources, and supervisors. Defendant argues that Plaintiff's claim fails because the FAC does show that he complained to Defendant about discrimination prior to his termination. Defendant also argues that the FAC does not show a causal connection between Plaintiff's complaints and any adverse employment action. (Defendant's Reply Memorandum of Law in Support of Motion to Dismiss ("Defendant's Reply Br."), ECF No. 44, at 9.) In opposition, Plaintiff argues that he complained to management on numerous occasions. (Opposition Br. at 10.) Plaintiff also argues that the temporal proximity between Plaintiff's complaints and his adverse employment action sufficiently pleads causation. (OA Tr. at 41:6-8.)

To state a claim for retaliation under Title VII, a plaintiff must show that "(1) []he engaged in protected activity; (2) the employer was aware of this activity; (3) the employer took adverse action against the employee; and (4) a causal connection exists between the protected activity and the adverse action." *Xiang v. Eagle Enters.*, LLC, 2020 U.S. Dist. LEXIS 7909, at *25 (S.D.N.Y.

9

Jan. 16, 2020). Protected activity includes internal complaints to company management under Title VII. *Qorrolli v. Metro. Dental Assocs., D.D.S. - 225 Broadway, P.C.*, No. 18CV6836 (DLC), 2021 WL 6064520, at *4 (S.D.N.Y. Dec. 22, 2021) (citing *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 65 (2d Cir. 1992)). A complaint that is so generalized that the employer "could not reasonably have understood that [plaintiff] was complaining of conduct prohibited by Title VII" does not rise to the level of protected activity. *Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 107-08 (2d Cir. 2011) ("Implicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's [complaint] was directed at *conduct prohibited by Title VII.*") (emphasis in original).

The FAC alleges that in July 2018, Plaintiff requested a division transfer and role change, Plaintiff's manager denied this request. The FAC also alleges that Plaintiff was notified that he would be terminated for cause on August 16, 2018, and that eight days later, Plaintiff told Human Resources that he had retained legal counsel and that he had claims against Defendant under U.S. Equal Employment Opportunity laws. The FAC further alleges that two days later, Plaintiff was terminated without cause and Defendant rescinded the initial separation package offered at the August 16 meeting.

Plaintiff's allegations do not plausibly plead that Plaintiff engaged in protected activity. Plaintiff has not shown that his communication with Setrakian requesting a transfer was made for the purpose of opposing conduct prohibited by Title VII. In fact, the FAC states that Plaintiff's request was due to his "suffering continued medical issues." *Cruz v. City of New York*, No. 21CV1999 (DLC), 2021 WL 5605139, at *8 (S.D.N.Y. Nov. 30, 2021) (request for transfer did not qualify as protected activity where plaintiff did not show she was complaining about an

employment practice,) Similarly, Plaintiff's statements to Human resources are too general for Defendant to have reasonably understood that Plaintiff's statement was a complaint opposing conduct by Defendant that was prohibited by Title VII. *Rojas*, 660 F.3d at 107-08.

Plaintiff argues that his complaint to Human Resources in February 2017 "regarding harassment, discrimination, and retaliation that had been going on since March 2016" constitutes protected activity. However, Plaintiff's allegations are untimely, and too general to support an inference that Defendant received notice of any conduct prohibited by Title VII. *Rojas*, 660 F.3d at 107-08. As the FAC does not show that Plaintiff engaged in protected activity before he suffered any adverse employment action, Plaintiff has not stated a claim for retaliation under Title VII.

## C. Plaintiff Has Not Stated a Claim for Hostile Work Environment

Plaintiff claims that Defendant subjected Plaintiff to a hostile work environment due to Plaintiff's race and national origin. Defendant argues that Plaintiff's claim fails because the FAC does not allege that Defendant engaged in conduct that was sufficiently severe and pervasive. (Defendant's Brief at 11.) In opposition, Plaintiff argues that Defendant's conduct substantially interfered with Plaintiff's work performance and disturbed his psychological well-being. (Opposition Br. at 7-8.)

To state a claim for hostile work environment under Title VII, a plaintiff must demonstrate that the workplace exhibits "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" and that this conduct is tied to the employee's race, gender, religion, or national origin. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002) ("[M]any bosses are harsh, unjust, and rude. It is therefore important . . . to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed

11

ground of discrimination.") Whether an environment is hostile or abusive depends on "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 21. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Id.* Likewise, "conduct [that] has not actually altered the conditions of the victim's employment" does not support a claim for hostile work environment under the statute. *Id.*

The FAC alleges that Plaintiff complained to Defendant regarding the lack of hiring or moving of support staff to assist the Plaintiff in March 2018. After his complaint, the FAC alleges that Plaintiff's manager severely limited communications, began making decisions about Plaintiff's work and projects in his scope without consulting him, and locked Plaintiff out of some of his responsibilities.

Plaintiff's allegations do not rise to the level of severe and pervasive conduct. The allegations do not reflect conduct that was threatening or humiliating. Nor does the FAC show that Defendant's conduct unreasonably interfered with Plaintiff's work performance. In fact, the FAC reflects that "despite these hurdles, Plaintiff was able to exceed his 2018 full-year sales targets within just the first six months of 2018." (FAC at 64.) *See Alexander v. New York City Dep't of Educ.*, No. 19-CV-7023 (AJN), 2020 WL 7027509, at \*8 (S.D.N.Y. Nov. 30, 2020) (being given an excessive workload compared to other employees does not support hostile work environment claim).

Plaintiff argues that Peraino's conduct at the March 2016 meeting constitutes severe and pervasive conduct. However, Plaintiff's allegations are time-barred under Title VII. *Supra* III.

12

Moreover, even if timely, Peraino's conduct was not sufficiently continuous and concerted to be deemed pervasive. *Davis–Molinia v. Port Auth. of N.Y. & N.J.,* No. 08 CV 7586(GBD), 2011 WL 4000997, at *11 (S.D.N.Y. Aug. 19, 2011) (being yelled at in front of staff and told to get out when plaintiff showed up at meetings did not constitute severe or pervasive conduct, either in isolation or when viewed as a whole). First, the conduct occurred only once in 2016. Second, the FAC does not allege that Peraino disparaged Plaintiff on the basis of any protected status during his outburst. As Plaintiff's has not shown that Defendant subjected Plaintiff to conduct that was severe or pervasive, Plaintiff has failed to state a claim for hostile work environment.

## V.    PLAINTIFF'S CLAIMS UNDER THE ADA ARE DISMISSED

Plaintiff claims that Defendant discriminated against him and subjected him to a hostile work environment due to his disability. Defendant argues that Plaintiff's claim fails because withholding resources does not constitute an adverse employment action, and because Plaintiff has not shown that he was given less support because of his disability. (Defendant's Brief at 9.) Defendant argues that Plaintiff fails to state a claim for hostile work environment because allegations of strenuous workloads and lack of resources do not constitute sufficiently severe or pervasive conduct. (Defendant's Reply Br. at 7-8.) In opposition, Plaintiff argues that he was terminated after his two-month medical leave, the denial of additional resources on four separate occasions, the rejection of his request for a role change, and his manager's limiting communication with him, and that this is sufficient to give rise to an inference of discrimination. (Opposition Br. at 7.) Plaintiff also argues that Defendant subjected him to a hostile work environment by discriminating against him on the basis of his disability. (*Id.* at 7-8.)

To establish a *prima facie* case of disability discrimination under the ADA, Plaintiff must show by a preponderance of the evidence that "(1) his employer is subject to the ADA; (2) he was

13

disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without a reasonable accommodation; and (4) he suffered adverse employment action because of his disability." *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020). An ADA plaintiff does not need to plead a *prima facie* case of discrimination to survive dismissal. *Dooley v. JetBlue Airways Corp.*, No. 15-1356-CV, 2015 WL 1514955 (S.D.N.Y. Apr. 1, 2015), *aff'd*, 636 F. App'x 16, 21 (2d Cir. 2015) (citing *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015)). Instead, a plaintiff must plead facts demonstrating he "suffered an adverse employment action under circumstances giving rise to an inference of discriminatory intent." *Dooley*, 636 F. App'x at 21.

To plausibly allege an adverse employment action, the employment action "must be more disruptive than a mere inconvenience or alteration of job responsibilities." *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 71 (2d Cir. 2019). To sufficiently allege an inference of discriminatory intent, "a plaintiff need only give plausible support to a minimal inference of discriminatory motivation at the pleading stage." *Vega*, 801 F.3d at 84. *See e.g. Beaton v. Metro. Transp. Auth. New York City Transit*, No. 15 Civ. 8056 (ER), 2016 WL 3387301, at \*5 (S.D.N.Y. June 15, 2016) (denying dismissal of ADA claim where plaintiff alleged he was terminated one month after he was suspended for conduct caused by medication for his disability); *Kelly v. N. Shore–Long Island Jewish Health Sys.*, 166 F. Supp. 3d 274, 287 (E.D.N.Y. 2016) (denying dismissal of ADA claim where plaintiff alleged she was placed on administrative leave 2 hours after disclosure of her disability). A plaintiff may show discriminatory motive by pointing to "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus, as well as preferential treatment given to employees outside the protected class." *Murtha*

*v. N.Y. State Gaming Commission*, 17 Civ. 10040 (NSR), 2019 WL 4450687, at *6 (S.D.N.Y. Sept. 17, 2019) (citing *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996).)

Plaintiff's allegations do not show that he suffered adverse employment action due to his disability. The FAC does not allege that Setrakian or Wadhera, or anyone else employed by the Defendant, made statements referencing Plaintiff's disability, either in connection with the denial of his transfer request, his termination, or at any other time. Nor does the FAC allege that Plaintiff was treated less well than colleagues who did not have a disability.

Plaintiff argues, for the first time at oral argument, that the temporal proximity between the denial of his requests for clerical staff and his termination supports an inference of discrimination on the basis of his disability. However, Plaintiff's requests for staff were denied before May 1, 2018, and therefore are time-barred. *Supra* III. Moreover, even if timely, the temporal proximity between Plaintiff's staff requests in March 2018 and this termination in August 2018, without more, is insufficient to support an inference of disability discrimination. *Powell v. Merrick Acad. Charter Sch.*, No. 16-CV-5315 (NGG) (RLM), 2018 WL 1135551, at *6 (E.D.N.Y. Feb. 28, 2018) (finding temporal proximity insufficient to demonstrate causal nexus between disability and termination absent evidence of discriminatory animus). As Plaintiff has failed to plead disability discrimination, Plaintiff's claim for hostile work environment under the ADA based Defendant's alleged discrimination against Plaintiff on the basis of his disability also fails. *See Harvin v. Manhattan & Bronx Surface Transit Operating Auth.*, 2016 U.S. Dist. LEXIS 28152, at *34-35 (E.D.N.Y. Mar. 3, 2016) (finding that the plaintiff failed to state a claim for a hostile work environment under the ADA where she complained that "she was assigned a heavy workload; denied proper trainings, resources, and assistance to perform her work; and was treated unfairly.")

## VI. PLAINTIFFS NYSHRL CLAIMS ARE DISMISSED

A district court's exercise of supplemental jurisdiction is governed by 28 U.S.C. § 1367(a), which provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Subsection (c) provides that a district court "may decline to exercise supplemental jurisdiction over a claim" if the court has dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity— will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 349–50 (1988)). Here, Plaintiff's claims under Title VII and the ADA have been dismissed. Accordingly, judicial economy, fairness, convenience and comity will be served best by declining to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. Plaintiffs' NYSHRL claims are DISMISSED without prejudice.

## VII. CONCLUSION

Defendant's motion to dismiss, (ECF No. 22), is GRANTED. The Clerk of Court is directed to close the motions accordingly.

16

Plaintiff may seek leave to amend by letter application, attaching a proposed amended complaint on or before March 31, 2022, if such an amendment would not be futile.

Dated: February 24, 2022
New York, New York

SO ORDERED.

George B. Daniels

GEORGE B. DANIELS
United States District Judge