UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x

SAMBIT PATTANAYAK,

                         Plaintiff,

-against-

MASTERCARD INC.,

                        Defendant.

------------------------------------- x

MEMORANDUM DECISION
AND ORDER

21 Civ. 2657 (GBD)

GEORGE B. DANIELS, United States District Judge:

      Plaintiff Sambit Pattanayak brought this action against his former employer, Mastercard International Incorporated, for race and national origin discrimination, hostile work environment, retaliation, and disability discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Americans with Disabilities Act of 1990, 42 U.S.C.A. § 12101 *et seq.* ("ADA"), and the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"). (First Amended Complaint ("FAC"), ECF No. 28.) Following oral argument, this Court dismissed the FAC as time-barred, and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (February 24, 2022 Memorandum Decision and Order on Defendant's Motion to Dismiss ("Order"), ECF No. 53.) Plaintiff was permitted to seek leave to amend if amendment would not be futile. (*Id.* at 17.) Plaintiff subsequently submitted to this Court a proposed second amended complaint ("PSAC"). (ECF No. 54.) Defendant opposes Plaintiff's application for leave to amend on the ground that the proposed amendment adding additional claims is futile. (ECF No. 55.)

      Plaintiff's proposed amended complaint cannot withstand a motion to dismiss for failure to state a claim, and fails to cure the deficiencies identified by this Court in its February 24, 2022 Order. Plaintiff's request for leave to amend is therefore DENIED.

1

## I. LEGAL STANDARD

The decision whether to grant or deny a motion for leave to amend a complaint is within "the sound discretion of the court", *see, e.g., O'Hara v. Weeks Marine, Inc.*, 294 F.3d 55, 70 (2d Cir. 2002) (citation omitted), though leave to amend should be "freely give[n] when justice so requires," Fed. R. Civ. P. 15(a). In determining whether leave to amend should be granted, the court should consider the futility of the proposed amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Grace v. Rosenstock*, 228 F.3d 40, 53 (2d Cir. 2000). "An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must demonstrate "more than a sheer possibility that a defendant has acted unlawfully"; stating a facially plausible claim requires the plaintiff to plead facts that enable the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The factual allegations pled must therefore "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

## II. PLAINTIFF'S PRE-MAY 2018 ALLEGATIONS REMAIN TIME-BARRED UNDER TITLE VII AND THE ADA

As this Court already held, Plaintiff's allegations of misconduct pre-dating May 2018 are time-barred. (Order at 5-7.) Plaintiff does not dispute this point. Rather, Plaintiff argues that the PSAC includes new and timely allegations of race-based discrimination that establish a "pattern of discriminatory conduct" with the time-barred acts sufficient to support a continuing violations

2

theory. (Plaintiff's Letter Reply in Support of Application to Amend ("Pl.'s App."), ECF No. 56, at 2-4.) Specifically, Plaintiff newly alleges that he was given less support than his peers because of his "Indian national origin" (PSAC ¶ 198), and that he was unlawfully terminated after a superior asked him whether he was an Indian citizen (PSAC ¶ 158).

These new allegations, even if sufficient to state a claim under Title VII or the ADA,[1] do not trigger the continuing violations doctrine, either with respect to Plaintiff's discrimination and retaliation claims, or Plaintiff's hostile work environment claims. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002) (differentiating discriminatory and retaliatory acts from hostile work environment claims and holding that applicability of the doctrine "varies with the practice"). With respect to retaliation and discrimination claims, where the alleged acts are discrete and easy to identify—as Defendant's alleged decisions to terminate Plaintiff and deny him additional resources are here—"[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separable actionable 'unlawful employment practice.'" *Id.* at 114. It is not sufficient to say only that a set of separate acts were all motivated by the same animus. *Id.* at 113 ("Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."). The continuing violation doctrine cannot save Plaintiff's time-barred discrimination and retaliation claims, both of which remain predicated on a series of discrete acts.

In contrast, the continuing violation doctrine may be invoked in hostile work environment claims because, unlike discrete acts, "their very nature involves repeated conduct." *Id.* at 115. In

---

[1] The withholding of resources, without more, does not constitute an "adverse employment action" for purposes of a discrimination or retaliation claim. *See Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 71 (2d Cir. 2019) ("adverse employment action 'must be more disruptive than a mere inconvenience or an alteration of job responsibilities'" (quoting *Patrolmen's Benevolent Ass'n of City of N.Y. v. City of New York*, 310 F.3d 43, 51 (2d Cir. 2002))).

3

this context, timely acts must be "sufficiently related to acts preceding the limitations period" to constitute a continuing violation. *Staten v. City of New York*, 653 F. App'x 78, 80 (2d Cir. 2016). Here, the pre-May 2018 acts forming the basis of Plaintiff's hostile work environment claim differ significantly from the acts that took place after May 1, 2018. Prior to May 2018, Plaintiff alleges that Defendant made repeat comments to Plaintiff that he was unable to "do his job effectively from Singapore," (PSAC ¶ 218), that he was subject to threats and constant rebukes, (PSAC ¶¶ 219-222) and that Defendant assigned Plaintiff "work outside his job description," (PSAC ¶ 222). Within the statute of limitations, Plaintiff's allegations primarily concern his heavy workload and lack of resources. (PSAC ¶¶ 223-25, 230-31.) Accordingly, the two sets of allegations are qualitatively different from one another, and Plaintiff's claims arising from pre-May 2018 acts are not timely. *See Kimball v. Vill. of Painted Post*, 737 F. App'x 564, 568 (2d Cir. 2018) (untimely acts of "screaming" and offensive name-calling insufficiently related to timely allegations of "overtime" and "discipline" to invoke continuing violation doctrine); *Staten*, 653 F. App'x at 80 (time-barred derogatory comments and unjust punishment claims unrelated to timely complaints about specific job assignments and orders Plaintiff disagreed with); *cf. James v. Van Blarcum*, 782 F. App'x 83, 85 (2d Cir. 2019) (allegations sufficiently related where time-barred and timely acts involved "same or similar" derogatory comments about plaintiff's race).

Plaintiff's pre-May 2018 allegations therefore remain time-barred. The remainder of this Court's analysis considers only those allegations post-dating May 1, 2018.

### III. PLAINTIFF CONTINUES TO FAIL TO STATE ANY CLAIM UNDER TITLE VII

#### A. The PSAC Does Not State a Claim for Race or National Origin Discrimination

The PSAC fails to remedy the deficiencies in Plaintiff's Title VII discrimination claim. Under Title VII, a plaintiff establishes a plausible case of discrimination by showing that (1) he

4

belonged to a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *Holcomb v. Iona College*, 521 F.3d 130, 138 (2d Cir. 2008). To support an inference of discriminatory intent, a Title VII plaintiff must allege facts supporting his claim that his "race, color, religion, sex, or national origin was a motivating factor in the employment decision" about which he complains. *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). "[T]he 'ultimate issue' in an employment discrimination case is whether the plaintiff has met [his] burden of proving that the adverse employment decision was motivated at least in part by an 'impermissible reason,' *i.e.*, a discriminatory reason." *Id.* (quoting *Stratton v. Dep't for the Aging for N.Y.*, 132 F.3d 869, 878 (2d Cir. 1997)). A plaintiff may meet this burden either through direct evidence of intent to discriminate or "by indirectly showing circumstances giving rise to an inference of discrimination." *Id.* One way of raising an inference of discrimination is through a "showing of disparate treatment—that is, a showing that an employer treated plaintiff less favorably than a similarly situated employee outside [his] protected group." *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010) (quotation omitted). A plaintiff attempting to show discrimination through disparate treatment "must allege that []he was similarly situated in all material respects to the individuals with whom []he seeks to compare [him]self." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (citation omitted).

Plaintiff's proposed amendments to his race-based discrimination claim do not include any factual allegations, timely or untimely, that would support an inference of discriminatory intent. Although Plaintiff alleges an adverse employment action within the limitations period, (*see* PSAC ¶ 169 (alleging unlawful termination)), Plaintiff still fails to link that purported adverse

employment action to any race-based discriminatory motive. Instead, the PSAC continues to rely on the mere conclusory allegation that, because Plaintiff believes he was treated differently than some of his non-Indian colleagues, his employer must have discriminated against him on the basis of his race. (*See e.g.,* PSAC ¶ 198.) The PSAC still does not identify any derogatory statements about Plaintiff's race or national origin by any person who worked with Plaintiff. (Order at 8 (citing *Rolle v. Educ. Bus Transp, Inc.*, No. 11-CV-3855 SJF AKT, 2014 WL 1330568, at *6 (E.D.N.Y. Mar. 31, 2014) (dismissing complaint where plaintiff failed to "plead any facts to plausibly suggest that Defendant's misconduct was motivated by animus towards her race, color, sex, age or any other legally protected trait")).) Although the PSAC makes vague accusations that Plaintiff's treatment was inferior to that afforded to unidentified comparators, (*see* PSAC ¶¶ 190-91, 198, 223), there are no allegations beyond that sufficient to establish the comparators as "similarly situated" to Plaintiff "in all material respects." *Brown*, 756 F.3d at 230. Finally, Plaintiff's allegations that he was, in certain instances, the only employee of Indian national origin, (*see e.g.*, PSAC ¶¶ 40, 191), are alone insufficient. *Xu v. City of New York*, No. 08-cv-11339, 2020 WL 8671952, at *34 (S.D.N.Y. Dec. 22, 2020) ("[B]eing the only member of a protected class in a department does not give rise to an inference of discrimination."). Therefore, the proposed amendments alleging race-based discrimination are futile for failure to cure the pleading deficiencies.

**B.     The PSAC Fails to Remedy the Deficiencies in Plaintiff's Retaliation Claim**

Plaintiff's amendments to his retaliation claim are likewise futile. To state a claim for retaliation under Title VII, a plaintiff must show that (1) he engaged in protected activity; (2) the employer was aware of this activity; (3) the employer took adverse action against the employee; and (4) a causal connection exists between the protected activity and the adverse action. *Rivera v.*

*Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2012). Protected activity includes internal complaints to company management under Title VII. *Qorrolli v. Metro. Dental Assocs., D.D.S. - 225 Broadway, P.C.*, No. 18-cv-6836, 2021 WL 6064520, at *4 (S.D.N.Y. Dec. 22, 2021) (citing *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 65 (2d Cir. 1992)). A complaint that is so generalized that the employer "could not reasonably have understood that [plaintiff] was complaining of conduct prohibited by Title VII" does not rise to the level of protected activity. *Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011) (citation omitted). "Implicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's [complaint] was directed at *conduct prohibited by Title VII.*" *Id.* at 107-08 (emphasis in original).

This Court previously held that Plaintiff failed to plausibly plead that he engaged in any protected activity for which some post-May 2018 adverse action was taken against him. (Order at 9-11.) Plaintiff's proposed amendments do not remedy this deficiency. The PSAC continues to allege that the only adverse action taken within the limitations period—Plaintiff's termination—was an act of retaliation after Plaintiff requested a division transfer and role change the month prior. (PSAC ¶ 210.) As this Court explained in its Order, however, Plaintiff's transfer request was not made for the purpose of opposing conduct prohibited by Title VII, and thus does not establish a retaliation claim.[2] (Order at 10-11.) And although Plaintiff vaguely alleges that he

---

[2] Plaintiff's letter application also alleges that he was terminated two days after he informed Defendant's human resources department that he had retained counsel to pursue claims against Defendant under U.S. Equal Employment Opportunity laws. (Pl.'s App. at 6.) As alleged in the PSAC, however, Plaintiff received notice of his termination (and even received a proposed separation agreement) eight days *before* he threatened to pursue EEOC claims, not after, (PSAC ¶ 165), so his termination could not have been in retaliation for his EEOC threat as his letter application claims.

7

made complaints about discrimination in March 2016 and February 2017, (PSAC ¶¶ 42-44, 68-74), he does not identify any non-time-barred adverse employment action taken against him because of those complaints.[3] As such, Plaintiff's application for leave to amend as to his Title VII retaliation claim is denied as futile.

## C.   Plaintiff's Hostile Work Environment Claim is Futile

This Court's prior analysis of Plaintiff's hostile work environment claim applies still to the PSAC. A plaintiff alleging a hostile work environment claim must demonstrate that his workplace was "permeated with discriminatory intimidation, ridicule, and insult[] [] sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Rivera*, 743 F.3d at 20 (quotation omitted). The test objectively assesses whether the offending actions have created this environment, and subjectively assesses whether the plaintiff perceived the environment to be abusive. *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002). Courts consider the "totality of the circumstances," including the frequency and severity of the discriminatory conduct at issue, to determine whether a plaintiff has met its burden under this standard. *Rivera*, 743 F.3d at 20 (quotation omitted); *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). To establish a hostile work environment, a plaintiff must also demonstrate that the discriminatory conduct occurred because of his race or a disability. *Alfano*, 294 F.3d at 374.

---

[3] In his application to amend, Plaintiff alleges that his superiors took a number of actions against him, including that they "severely limited communications with Plaintiff, made decisions about Plaintiff's work and projects...without consulting Plaintiff, delayed personnel support to Plaintiff, transferred temporarily personnel to Plaintiff's region who did not...follow Plaintiff's directions, and tried to change Plaintiff's performance criteria," after Plaintiff submitted a "written complaint" alleging discrimination. (Pl.'s App. at 6 (citing to PSAC ¶¶ 115-17, 127, 129-130, 138-141, 143, 146).) Even if any of these alleged responses constituted "adverse employment actions," this claim is at odds with the PSAC. Plaintiff's "written complaint," the exact language of which is set forth in the PSAC, does not reference discrimination, or any other conduct prohibited by Title VII. (PSAC ¶ 124 (setting forth Plaintiff's grievances relating to lack of resources, compensation, and authority).)

The PSAC fails to amplify Plaintiff's allegations in any way that would show that he was subjected to an objectively hostile work environment. Excluding time-barred allegations, Plaintiff's primary allegation in support of his claim is that his division was understaffed and overworked compared to similarly situated departments. (PSAC ¶¶ 223-25.) This Court has already determined these allegations insufficient to state a claim for hostile work environment. (*See* Order at 12 (citing *Alexander v. New York City Dep't of Educ.*, No. 19-CV-7023 (AJN), 2020 WL 7027509, at *8 (S.D.N.Y. Nov. 30, 2020) (being given an excessive workload compared to other employees does not support hostile work environment claim))). Plaintiff's only new claim— that Defendant "ensured that the employees" who worked under Plaintiff "refused to cooperate with him, instead seeking direction from" Plaintiff's superiors, (PSAC ¶ 235)—describes a "mere inconvenience," *Fox*, 918 F.3d at 71, that falls far short of establishing a workplace "severely permeated with discriminatory intimidation, ridicule, and insult," *Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, 586 F. App'x 739, 745 (2d Cir. 2014). Plaintiff's largely unchanged claim is futile.

## II. PLAINTIFF CONTINUES TO FAIL TO STATE ANY CLAIM UNDER THE ADA

As in the FAC, the PSAC's ADA claims deal primarily with Plaintiff's allegations that he was overworked and his division was grossly understaffed, and that he was terminated after voicing concerns about these issues. (PSAC ¶¶ 230-35.) To establish a *prima facie* case of disability discrimination under the ADA, Plaintiff must show by a preponderance of the evidence that "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without a reasonable accommodation; and (4) he suffered adverse employment action because of his disability." *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020). As with a Title VII discrimination

9

claim, a plaintiff alleging discrimination under the ADA may show discriminatory motive by pointing to "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus," or "preferential treatment given to employees outside the protected class." *Murtha v. N.Y. State Gaming Commission*, 17 Civ. 10040, 2019 WL 4450687, at *6 (S.D.N.Y. Sept. 17, 2019) (citing *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996)).

The PSAC barely augments Plaintiff's ADA discrimination claims. There remains no claim that anyone with whom Plaintiff worked made statements referencing his disability, or that Plaintiff was treated less favorably than his colleagues without disabilities. (Order at 15.) And as this Court has already held, the temporal proximity between the denial of Plaintiff's requests for additional resources and his termination, without more, is insufficient to support an inference of disability discrimination. (*Id.*) The Court therefore finds that Plaintiff's ADA discrimination claim as pled is futile.

As noted above, *supra* Section II.C, Plaintiff's hostile work environment claim remains largely the same. The Court has already held that Plaintiff's allegations regarding his workload and lack of resources do not rise to the level of a race-based hostile work environment or under the ADA, (Order at 15 (citing *Harvin v. Manhattan & Bronx Surface Transit Operating Auth.*, No. 14-CV-05125, 2016 WL 11318241, at *10 (E.D.N.Y. Mar. 3, 2016), report and recommendation adopted, No. 14-CV-5125, 2018 WL 1603872 (E.D.N.Y. Mar. 30, 2018), *aff'd*, 767 F. App'x 123 (2d Cir. 2019))), and Plaintiff's only new claim concerning his perceived lack of authority is insufficient for the reasons discussed above, *supra* Section II.C.

For these reasons, Plaintiff's application to amend is denied as to his ADA claims.

10

### III. THIS COURT DECLINES TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S NYSHRL LAW CLAIMS

Having deemed futile the Title VII and ADA claims over which this Court has original jurisdiction, this Court declines to exercise supplemental jurisdiction over Plaintiff's claims under the New York State Human Rights Law.

### IV. CONCLUSION

Plaintiff's request for leave to amend his complaint is DENIED as futile. The Clerk of the Court is directed to close this case.

Dated: June 6, 2022
New York, New York

SO ORDERED.

GEORGE B. DANIELS
United States District Judge